UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

YARON KWELLER,

              Plaintiff,

   - against -

THE COUNTY OF BROOME, THE CITY OF
BINGHAMTON, THE BROOME COUNTY DISTRICT
ATTORNEY'S OFFICE, DISTRICT ATTORNEY
MICHAEL A. KORCHAK, CHIEF ASSISTANT
DISTRICT ATTORNEY MARK LOUGHRAN,
ASSISTANT DISTRICT ATTORNEY ALYSSA
CONGDON, ASSISTANT DISTRICT ATTORNEY
AMANDA CRONIN, DISTRICT ATTORNEY
INVESTIGATOR JEFF J. WAGNER, BINGHAMTON
POLICE DEPARTMENT CHIEF JOSEPH ZIKUSKI,
BINGHAMTON POLICE DEPARTMENT CAPTAIN
CORY MINOR, BINGHAMTON POLICE
DEPARTMENT INVESTIGATOR AMANDA
MILLER, all in their individual capacities, and JOHN
DOES 1-10, representing Broome County District
Attorney's Office and Police Department Employees
Whose Names Are Currently Unknown, HAILEY
DEMKOVICH, and SAMANTHA HERCEG,

              Defendants.

Case No. 3:24-cv-01328-ECC-ML

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS THE
CITY OF BINGHAMTON, BINGHAMTON POLICE CHIEF
JOSEPH ZIKUSKI, BINGHAMTON POLICE DEPARTMENT
CAPTAIN CORY MINOR, BINGHAMTON POLICE
DEPARTMENT INVESTIGATOR AMANDA MILLER, AND
UNNAMED POLICE DEPARTMENT JOHN DOES #1-10'S
MOTION TO DISMISS**

WHITEMAN OSTERMAN & HANNA LLP
*Attorneys for the City and BPD Defendants*
One Commerce Plaza
Albany, New York 12260
Telephone: (518) 487-7600

*of Counsel:*
  William S. Nolan, Esq.
  Gabriella R. Levine, Esq.
  Conor Lynch, Esq.

## TABLE OF CONTENTS

Page:

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS .................................................................................... 3

The Alleged Rape Incident ................................................................................ 3

The BPD's Investigation .................................................................................... 4

The County Defendants' Decision to Charge .......................................................... 5

The Text Messages and the Criminal Court's Denial of Plaintiff's Attempts to Obtain Them Pre-Arrest and Post-Arrest ...................................................................... 5

This Proceeding ............................................................................................... 7

ARGUMENT ..................................................................................................... 7

I.     PLAINTIFF FAILS TO PLEAD A § 1983 MONELL CLAIM ............................. 7

II.    PLAINTIFF'S § 1983 CLAIMS FAIL TO ADEQUATELY PLEAD PERSONAL INVOLVEMENT OF ANY BPD DEFENDANTS. ...................... 10

III.   THE COMPLAINT FAILS TO STATE ANY COGNIZABLE CLAIM AGAINST THE CITY OR BPD DEFENDANTS. ......................................... 16

       A.    Plaintiff Has Not Properly Alleged a Claim for False Arrest Against the BPD Defendants. ................................................... 16

       B.    Plaintiff Has Not Properly Alleged Claims for Malicious Prosecution Against the BPD Defendants. ................................. 18

             i.    The Complaint Fails to Allege That Any BPD Defendant Commenced or Continued a Criminal Proceeding. ............ 19

             ii.   The Complaint Fails To Allege The Absence of Probable Cause or Actual Malice. ........................................... 20

       C.    Plaintiff Fails to Plead a Federal Due Process Claim against the BPD Defendants. ..................................................... 22

             i.    Plaintiff's Fair Trial Due Process Claim Fails. ................. 22

             ii.   Plaintiff's Due Process Claim Based on the Alleged Failure to Conduct a Constitutionally Adequate Investigation Fails. ....... 23

i

iii.    Plaintiff's Due Process Claim Premised on The Failure to Disclose Exculpatory Evidence Fails.............................................. 24

D.    Plaintiff's State Law Due Process Claim Fails. ........................................ 25

E.    Plaintiff's Failure to Intervene Claim Fails. ............................................ 26

F.    Plaintiff's Supervisory Liability Claim Fails............................................ 26

G.    Plaintiff's § 1983 Conspiracy Claim Fails................................................ 27

H.    Plaintiff's Intentional, Reckless, or Negligent Infliction of Emotional Distress Claims Fail. .................................................................. 29

i.    Intentional Infliction of Emotional Distress ................................. 29

ii.    Negligent Infliction of Emotional Distress................................... 30

I.    Plaintiff's Abuse of Process Claim Fails. ................................................. 30

J.    Plaintiff's Respondeat Superior Claim Fails.............................................. 32

K.    All State Law Claims Premised on Allegations of Negligence Are Barred by Plaintiff's Failure to Allege a Special Duty and by the Doctrine of Government Immunity. ........................................................ 33

CONCLUSION.................................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s):**</u>

### <u>Cases</u>

*A.M.P. v. Benjamin*, 201 A.D.3d 50 (3d Dept. 2008) ..................................................... 30

*Agosto v. N. Y. C. Dept. of Educ.*, 982 F.3d 86 (2d Cir. 2020) ..................................... 7

*Aguirre v. City of New York*, 2017 WL 4236552 (E.D.N.Y. 2017) ............................. 22

*Alwan v. City of New York*, 311 F. Supp. 3d 570 (E.D.N.Y. 2018).............................. 25

*Ambrose v. City of New York*, 623 F.Supp.2d 454 (S.D.N.Y. 2009)............................ 24

*Ametco, Ltd v. Beltchev*, 5 A.D.2d 631 (1st Dep't 1958) ............................................ 31

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994) ....................................................... 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009 ............................................................... 11, 21

*Baram v. Doe*, No. 2024 WL 232319 (S.D.N.Y.2024)................................................ 32

*Barnville v. Mimosa Cafe*, 2014 WL 3582878 (S.D.N.Y. 2014) ................................ 32

*Barone v. United States*, 2014 WL 4467780 (S.D.N.Y. 2014)..................................... 19

*Barzee v. Wison*, 2024 WL 4751552 (N.D.N.Y. 2024)............................................... 11

Bd. of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom
    Teachers Ass'n, 38 N.Y.2d 397 (1975) ................................................................ 31

*Bell v. Miller*, 164 A.D.3d 728 (2d Dept. 2018), <u>lv denied</u> 32 N.Y.3d 911 (2018) ..... 18

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703 (S.D.N.Y. 2012)......................... 28

*Bovee v. Auburn Police Dep't*, 2024 WL 4600030 (N.D.N.Y. 2024), <u>report and
    recommendation adopted</u>, 2024 WL 4834214 (N.D.N.Y. 2024)......................... 9, 10

*Brook v. Ruotolo*, 2024 WL 3912831 (2d Cir. 2024)................................................... 28

*Bruno v. City of New York*, 2019 WL 690340 (S.D.N.Y. 2019)................................... 22

*Bryant v. Ciminelli*, 267 F. Supp. 3d 467 (W.D.N.Y. 2017)........................................ 34

*Buari v. City of New York*, 530 F. Supp. 3d 356 (S.D.N.Y. 2021)............................... 14

*Burroughs v. Mitchell*, 325 F. Supp. 3d 249 (N.D.N.Y. 2018) .................................... 34

Cameron v. City Of New York, 598 F.3d 50 (2d Cir. 2010) ....................................... 19

Campbell v. Giuliani, No. 99 Civ. 2603, 2000 WL 194815 (E.D.N.Y. 2000) ........................... 23

Cannistraci v. Kirsopp, 2012 WL 1801733 (N.D.N.Y. 2012) ....................................... 24

Carvajal v. Dominguez, 542 F.3d 561 (7th Cir. 2008) .................................................. 25

Ciambriello v. Cnty. of Nassau, 292 F.3d 307 (2d Cir. 2002) .................................... 27

City of Canton v. Harris, 489 U.S. 378 (1989) .......................................................... 8

City of Okla. v. Tuttle, 471 U.S. 808 (1985) ........................................................... 8

Connick v. Thompson, 563 U.S. 51 (2011) ........................................................ 9, 10

Curiano v. Suozzi, 63 N.Y.2d 113 (1984) ......................................................... 30, 31

De'Bey v. City of N.Y., 2021 WL 8013765 (S.D.N.Y. 2021), adopted by, 2022 WL
    909790 (S.D.N.Y. 2022) ....................................................................... 33

DiMeo v. Rotterdam Emergency Medical Services, Inc., 110 AD3d 1423 (3d Dept. 2013) ....... 34

Doe by and through Doe v. E. Irondequoit Cent. School Dist., 2018 WL 2100605
    (W.D.N.Y. 2018) ............................................................................. 11

Doe v. Abdulaziz Bin Fahd Alsaud, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) .................. 33

Doe v. City of New York, 2013 WL 796014 (S.D.N.Y. 2013) ................................... 32

Donas v. City of New York, 2008 WL 293038 (Sup. Ct. N.Y. Cnty. 2008), aff'd, 62
    A.D.3d 504 (1st Dep't 2009) .................................................................. 25

Drawbridge v. Schenectady County Dept. of Social Services, 2024 WL 1152524 (2d Cir
    Mar. 18, 2024)................................................................................. 10

Dunlop v. City of New York, 2008 WL 1970002 (S.D.N.Y. 2008)............................... 28

Dzwonczyk v. Syracuse City Police Dept., 710 F Supp 2d 248 (N.D.N.Y. 2008)....................... 16

Ehrens v. Lutheran Church, 385 F.3d 232 (2d Cir. 2004) ........................................... 32

Everett v. Dean, 2021 WL 765762 (N.D.N.Y. 2021), report and recommendation
    adopted, 2021 WL 3046801 (N.D.N.Y. 2021) ........................................... 22

Fischer v. Maloney, 43 N.Y.2d 553 (1978) ........................................................ 29

Flores v. Satz, 137 F.3d 1275 (11th Cir.1998)..................................................... 24

Gabriel v. City of New York, 89 A.D.3d 982 (2d Dept. 2011) ...................................................... 35

Gallop v. Cheney, 642 F.3d 364 (2d Cir. 2011) ........................................................................... 27

Garnett v. Undercover Officer C0039, 838 F.3d 265 (2d Cir. 2016) ........................................... 22

Gerasimou v. Cillis, 2022 WL 118748 (E.D.N.Y. 2022) .............................................................. 26

Gil v. County of Suffolk, 590 F. Supp. 2d 360 (E.D.N.Y. 2008) .................................................. 20

Graber v Bachman, 27 AD3d 986 ( 3d Dept. 2006) ..................................................................... 30

Guadagni v. N.Y.C. Trans. Auth., 2009 WL 1910953 (E.D.N.Y. 2009) ...................................... 17

Guerrero v. City of N.Y., 2013 WL 673872 (S.D.N.Y. 2013) ........................................................ 8

Harasz v. Katz, 239 F. Supp. 3d 461 (D. Conn. 2017) ................................................................ 23

Harrington v. Cty. of Suffolk, 607 F.3d 31 (2d Cir. 2010) ..................................................... 14, 23

Hernandez v. State, 228 AD2d 902 (3d Dept. 1996) .................................................................... 18

Hernandez v. United States, 939 F.3d 191 (2d Cir. 2019) ............................................................ 10

Hicks v. Marchman, 719 Fed. App'x 61 (2d Cir. 2018) ............................................................... 14

Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) ............................................................................. 14

James v Flynn, 132 AD3d 1214 ( 3d Dept. 2015) ........................................................................ 30

Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501 (S.D.N.Y. 2008), aff'd, 461 Fed. App'x
   18 (2d Cir. 2012) ....................................................................................................................... 26

Jett v. Dallas Independent School Dist., 491 U.S. 701 (1989) ....................................................... 8

Jorgensen v. County of Suffolk, 558 F Supp 3d 51 (E.D.N.Y. 2021) ........................................... 18

Kee v. City of New York, 12 F.4th 150 (2d Cir. 2021) .................................................................. 18

King v. Crossland Sav. Bank, 111 F.3d 251 (2d Cir. 1997) ......................................................... 17

Lauer v. City of New York, 95 NY3d 95 (2000) ........................................................................... 34

Lewis v. Franklin County, NY, 2024 WL 1888169 (N.D.N.Y. 2024), report and
   recommendation adopted, 2024 WL 3354920 (N.D.N.Y. 2024) ............................................... 34

Longo v. Ortiz, 2016 WL 5376212 (S.D.N.Y. 2016) .................................................................... 21

Lopez v. City of New York, 901 F.Supp. 684 (S.D.N.Y. 1995) ..................................................... 31

Lord v. Tashjian, 2023 WL 8105956 (N.D.N.Y. 2023)..................................................... 12

Lyles v. State, 2 A.D.3d 694 (2d Dept. 2003), aff'd, 3 NY3d 396 (2004) ........................ 25

MacLaren v. Chenango County Police, 2024 WL 4728884 (N.D.N.Y. 2024)..................... 13

Maldovan v. Cnty. of Erie, 39 N.Y.3d 166 (2022), reargument denied, 39 N.Y.3d 1067
    (2023)............................................................................................................................ 34

Mayzick v. County of Nassau, 32 F. Supp. 3d 399 (E.D.N.Y. 2014)................................ 17

McCaffrey v. City of New York, 2013 WL 494025 (S.D.N.Y. Feb. 7, 2013) ..................... 24

McGee v. Dunn, 940 F. Supp. 2d 93 (S.D.N.Y. 2013).................................................... 20

McLean v. City of New York, 12 N.Y.3d 194 (2009)................................................ 33, 34

Minasion v. Lubow, 49 A.D.3d 1033 (3d Dep't 2008).................................................... 31

Mitchell v. Victoria Home, 434 F. Supp. 2d 219 (S.D.N.Y. 2006) ................................. 19

Mon v. City of New York, 78 N.Y.2d 309 (1991)...................................................... 33, 34

Monell v. Dept. of Soc. Serv. of the City of N. Y., 436 U.S. 658 (1978)........................... passim

Morgan v. City of Utica, 2021 WL 2036680 (N.D.N.Y. 2021)........................................... 8

Morgan v. Gertz, 166 F.3d 1307 (10th Cir. 1999) ........................................................ 24

Myers v. Moore, 326 F.R.D. 50 (S.D.N.Y. 2018) ......................................................... 21

Nardelli v. Stamberg, 44 N.Y.2d 500 (1978)................................................................ 20

Nelson v. City Of New York, 2019 WL 3779420 (S.D.N.Y. 2019).................................... 19

New York State Properties, Inc. v. Clark, 183 A.D.2d 1003 (3d Dep't 1992) .................. 30

Newton v. City of New York, 566 F. Supp. 2d 256 (S.D.N.Y. 2008).................................. 23

Ostroski v. Town of Southold, 443 F. Supp.2d 325 (E.D.N.Y. 2006)................................ 17

Outlaw v. City of Hartford, 884 F.3d 351 (2d Cir. 2018)................................................. 10

Pinter v. City of New York, 2013 WL 5597545 (S.D.N.Y. 2013) .................................... 31

Ramirez v. County of Los Angeles, 397 F.Supp.2d 1208 (C.D. Cal. 2005)...................... 24

Rentas v. Ruffin, 816 F.3d 214 (2d Cir. 2016) ............................................................. 18

Reyes v. Faillace, 2014 NY Slip Op 30049(U) (Sup. Ct. N.Y. Cnty. 2014) ................... 29

Rodriguez v. City of N.Y., 623 F. Supp. 3d 225 (S.D.N.Y. 2022) ................................. 25

Roe v. City of Waterbury, 542 F.3d 31 (2d Cir. 2008) ........................................................ 8

Rys v. Grimm, 2021 WL 827671 (N.D.N.Y. 2021) .......................................................... 11

Salmon v. Blesser, 802 F.3d 249 (2d Cir. 2015) ................................................................ 29

Santoro v. Town of Smithtown, 40 A.D.3d 736 (2d Dept. 2007) ...................................... 33

Santos v. New York City, 847 F.Supp.2d 573 (S.D.N.Y.2012) ............................................ 9

Savino v. City of N.Y., 331 F.3d 63 (2d Cir. 2003) .................................................... 17, 20

Schultes v Kane, 50 AD3d 1277 ( 3d Dept. 2008) ........................................................... 30

Schweitzer v. Brunstein, 2016 WL 4203482 (E.D.N.Y. Aug. 9, 2016) ........................... 24

Seltzer v. Baye, 272 A.D.2d 263 (1st Dept. 2000) ........................................................... 29

Simms v. City of New York, 2011 WL 4543051 (E.D.N.Y. 2011) aff'd, 480 F. App'x
    627 (2d Cir. 2012) ........................................................................................................ 8

Simons v. New York, 472 F. Supp. 2d 253 (N.D.N.Y. 2007) ........................................... 31

Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir.1995), cert. denied, 517 U.S. 1189
    (1996) ......................................................................................................................... 17

Smulley v. Liberty Mut. Holding Co., 2023 WL 2494098 (2d Cir. 2023) ...................... 27

Solano v. New York, 2021 WL 4134793 (N.D.N.Y. 2021) .............................................. 12

Sotak v. Bertoni, 501 F. Supp. 3d 59 (N.D.N.Y. 2020) ................................................... 19

Spence v. City of N.Y., WL 4537946 (S.D.N.Y. 2022) .................................................... 32

Stokes v. City of New York, 2007 WL 1300983 (E.D.N.Y. 2007) .................................... 14

Strickler v. Greene, 527 U.S. 263 (1999) ........................................................................ 24

Strong v. City of Syracuse, 2020 WL 137250 (N.D.N.Y. 2020) ........................................ 8

Suarez v. Bakalchuk, 66 AD3d 419 (1st Dept. 2009) ...................................................... 29

Talavera v. Arbit, 18 A.D.3d 738 (2d Dep't 2005) .......................................................... 32

Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020) ................................................. 11, 27

*Townes v. New York State Metropolitan Transp. Auth.*, 2011 WL 4443604 (Sup. Ct. Nassau Cnty. 2011) ........................................................................................................ 25

*Turczyn ex rel. McGregor v. City of Utica*, 2014 WL 6685476 (N.D.N.Y. 2014) ...................... 9

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014) .................................................... 29

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) .................................................................... 24

*Valdez v. City of New York*, 18 N.Y.3d 69 (2011) ........................................................................ 33

*Waddlington v. City of New York*, 971 F. Supp. 2d 286 (E.D.N.Y. 2013) ................................. 23

*Ware for DP v. Doe*, 2024 WL 3874773 (N.D.N.Y. 2024) ........................................................ 12

*Watson v. United States*, 865 F.3d 123 (2d Cir. 2017) .................................................................. 21

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) ................................................................................ 17

*Wieder v. City of New York*, 569 Fed. App'x 28 (2d Cir. 2014) ................................................ 26

*Williams v. Carpenter*, 214 F. Supp. 3d 197 (W.D.N.Y. 2016) ............................................ 16, 21

*Williams v. City of Syracuse*, 2020 WL 3574643 (N.D.N.Y. 2020) .............................. 19, 21, 22

*Williams v. Williams*, 23 N.Y.2d 592 (1969) .............................................................................. 31

*Willis v. Rochester Police Dep't*, 2018 WL 4637378 (W.D.N.Y. 2018) .................................... 21

*Wilson v. County of Onondaga*, 2022 WL 3141764 (N.D.N.Y. 2022), *report and recommendation adopted*, 2022 WL 2965584 (N.D.N.Y. 2022) ............................................ 8, 9

*Worrell v. City of N.Y.*, 2014 WL 1224257 (E.D.N.Y. Mar. 24, 2014) ........................................ 9

*Wright v. Orleans Cnty.*, 2015 WL 5316410 (W.D.N.Y. 2015) .................................................... 22

*Wright v. Orleans County*, 2015 WL 5316410 (W.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. 2015) ............................................ 18

*Yennard v. Boces*, 2017 U.S. Dist. LEXIS 226898 (N.D.N.Y. 2017) ........................................ 33

## Statutes

42 U.S.C. § 1983 ...................................................................................................... *passim*

New York Penal Law § 130.25(d) ..................................................................................... 1

**<u>Rules</u>**

Fed. R. Civ. Procedure 12(b)(6)..................................................................................... 1

**Constitutional Provisions**

U.S. Const. amend. IV ............................................................................................ 17

U.S. Const. amend. XIV ......................................................................................... 25

N.Y. Constitution Article I § 6............................................................................... 25

N.Y. Constititution Article I § 12 ..................................................................... 25, 26

## PRELIMINARY STATEMENT

Defendants the City of Binghamton (the "City"), Binghamton Police Department Chief Joseph Zikuski ("Chief Zikuski"), Binghamton Police Department Captain Cory Minor ("Captain Minor"), Binghamton Police Department Investigator Amanda Miller ("Detective Miller") and unnamed police department John Does #1-10 (collectively, the "BPD Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Yaron Kweller's ("Plaintiff") Complaint pursuant to Fed. R. Civ. Procedure 12(b)(6).

In November 2021, two young women, Defendants Hailey Demkovich and Samantha Herceg, filed reports alleging that Plaintiff, together with his brother, Leor Kweller, and his business partner, Jordan Rindgen, raped them. The Binghamton Police Department ("BPD") investigated the reports for several months. In February 2022, Defendant Assistant District Attorney Alyssa Congdon ("Defendant Congdon") decided to charge Plaintiff with Rape in the Third Degree in violation of New York Penal Law section 130.25(d). Following a trial in October 2023, Plaintiff was acquitted of all charges. Plaintiff now alleges that he was unlawfully arrested, charged, indicted and prosecuted. All claims against the City and BPD Defendants should be dismissed.

The crux of this case has nothing to do with the City or the BPD. Plaintiff alleges that counsel for Defendants Demkovich and Herceg made an electronic file available to individuals from the Broome County District Attorney's Office (the "County Defendants") – *not the City or the BPD* – in or around January 2022 (Compl., ¶ 117). The file, referred to by Plaintiff as the "Saitta Folder," allegedly contained text messages from Defendant Demkovich, in which she questioned whether she "got raped" because she "didn't say no" (Compl., ¶ 68(o)). According to the Complaint, the County Defendants failed to expeditiously retrieve this file, but it was

eventually obtained by Plaintiff by judicial subpoena in July 2023, after he was charged and indicted (Compl., ¶ 119(e)). Plaintiff relied on these text messages at trial to argue his innocence. While the Complaint fails to provide any factual detail as to what specific evidence was allegedly fabricated or falsified by any defendant in this case, Plaintiff also claims that Defendant Congdon – *not the City or the BPD* – instructed Defendants Demkovich and Herceg to delete their social media accounts (Compl., ¶ 112).

The 72-page Complaint does not contain a single allegation to establish that the City or the BPD Defendants were involved in any of this alleged conduct. It does not allege that the City or any BPD Defendants were aware of the Saitta Folder or its contents, that they were in possession of exculpatory text messages exchanged by the alleged victims, or that they concealed or fabricated any evidence. Instead, the Complaint alleges that Defendants Demkovich and Herceg repeatedly refused the BPD's efforts to perform a consensual search of their phones until August 2022, at which time the BPD imaged the phones and turned over the results to prosecutors (Compl., ¶¶ 164-165). There are no allegations that anyone from the City or the BPD Defendants engaged in any bad faith conduct that could render them liable for any of the state or federal claims brought in this case.

Plaintiff instead resorts to accusing the BPD Defendants of failing to perform what he believes would have been a better investigation. Plaintiff, for instance, would have preferred that the BPD obtain a search warrant to search the phones of the alleged rape victims prior to Plaintiff's arrest – something he does not even attempt to suggest is standard in rape investigations. Plaintiff also would have preferred if the BPD obtained a search warrant for Plaintiff's DNA pre-arrest. At best, Plaintiff's allegations against the BPD Defendants allege a negligent police investigation, a theory which is not cognizable under New York state or federal law.

The Complaint against the City and the BPD Defendants should be dismissed because it: (1) fails to plead any facts sufficient to render the City liable under <u>Monell v. Dept. of Soc. Serv. of the City of N. Y.</u>, 436 U.S. 658, 694 [1978]); (2) fails to allege that any of the BPD Defendants committed any specific acts that violated Plaintiff's constitutional rights, and thus fails to establish the BPD Defendants' personal involvement under 42 U.S.C. § 1983; (3) is largely premised on theories of a negligent police investigation, which cannot form the basis of any legal claim against the City or BPD, and (4) otherwise fails to state a viable cause of action.

## <u>STATEMENT OF FACTS</u>[1]

### <u>The Alleged Rape Incident</u>

On the night of November 26, 2021, Plaintiff, his brother Leor Kweller and his business partner Jordan Rindgen visited several bars and restaurants throughout the City (Compl., ¶ 23-28). In the early hours of the morning on November 27, 2021, Plaintiff, Leor Kweller and Mr. Rindgen began drinking at a bar with Defendant Herceg (<u>Id.</u> ¶ 27). The group then purchased more alcohol at a separate establishment and walked to Plaintiff's office location on Washington Street (<u>Id.</u> ¶ 29). Defendant Demkovich joined the group at Plaintiff's office (<u>Id.</u> ¶ 34). Although the Complaint does not identify Defendants Herceg and Demkovich's age as of November 2021, it alleges that they were engaged in a group text message, the title of which referred to Union-Endicott High School (<u>Id.</u> ¶ 30).

Thereafter, all individuals left the office and returned to a bar, where more alcohol was consumed (<u>Id.</u> ¶¶ 38-39). Mr. Rindgen began engaging in physical and sexual contact with Defendants Herceg and Demkovich (<u>Id.</u> ¶ 39). At approximately 3:00 a.m., the group returned to

---

[1] The facts set forth herein are taken from the Complaint and are assumed to be true solely for the purposes of this motion. Upon information and belief, many of the facts asserted in the Complaint are contradicted by sworn 50-H deposition testimony taken of Plaintiff, Leor Kweller and Mr. Rindgen. Defendants accordingly reserve the right to contest all allegations should this motion be denied.

Plaintiff's office (Id. ¶¶ 41). Upon their return to the office, Mr. Rindgen and Defendants Herceg and Demkovich did cocaine, with Mr. Rindgen snorting it off their bodies (Id. ¶ 46). Plaintiff and Mr. Rindgen then engaged in physical and sexual contact with Defendants Herceg and Demkovich (Id. ¶¶ 47-49).

On November 27, 2021, Defendants Herceg and Demkovich reported to the New York State Police that they had been sexually assaulted (Id. ¶¶ 69-70). The report was then referred to the BPD for investigation (Id. ¶ 70).

### The BPD's Investigation

The BPD's investigation commenced as of November 28, 2021. Detective Miller was assigned to investigate the allegations of sexual assault (Id., ¶ 70). She was supervised by Captain Minor who, in turn, reported to Chief Zikuski (Id., ¶ 70).

The Complaint rarely mentions Captain Minor and Chief Zikuski. According to the Complaint, Captain Minor performed routine investigatory tasks with Detective Miller (none of which are alleged to have caused any constitutional violations) (Compl. ¶¶ 70, 82, 92, 106). There is no mention of any specific acts undertaken by Chief Zikuski during the investigation. With respect to Detective Miller, the Complaint similarly alleges that she undertook routine and innocuous investigatory tasks, such as interviewing witnesses and the alleged victims, collecting evidence from the alleged victims and executing a search warrant at Plaintiff's office (see, e.g., id. ¶¶ at 71, 72, 79-80, 82, 106, 107).

Plaintiff claims that Defendant Demkovich told unidentified members of the BPD that she was "questioning" whether she was raped because she "didn't say no." (Id. ¶ 68(o)). He charges Detective Miller with negligence for allegedly failing to "record" this statement during her investigation (absent any specific allegation that the "statement" was ever shared with her in the

first place) (Id. ¶ 75). Plaintiff cites hearsay consisting of a quoted text message between Defendant Demkovich and her mother in support of this vague allegation. Significantly, Plaintiff has manipulated the contents of this text in his filing to make it appear as though the purported "statement" was provided to unidentified members of the BPD: "December 28, 2021 – Defendant Demkovich to her mother: 'I told them [BPD] the next day I was questioning if what happened to me was actually rape . . .'" (Id. ¶ 68(w)) (brackets inserted by Plaintiff in original quoted text).

<u>The County Defendants' Decision to Charge</u>

In or around February 2022, Defendant Congdon "decided that Plaintiff, Leor Kweller, and Jordan Rindgen should be arrested and charged in local court" (Id. ¶ 130). Plaintiff was charged with Rape in the Third Degree, a Class E felony (Id. ¶ 136). The County Defendants presented the case to the Grand Jury, which returned an indictment charging Plaintiff with Rape in the First Degree (Id. ¶¶ 156-157). Plaintiff was arraigned and pled not guilty on March 31, 2022 (Id. ¶ 158).

<u>The Text Messages and the Criminal Court's Denial of Plaintiff's Attempts to
Obtain Them Pre-Arrest and Post-Arrest</u>

Defendants Demkovich and Herceg voluntarily provided certain photos and text messages to Detective Miller during the course of the BPD's investigation. Plaintiff does not allege that any of the photos or texts voluntarily provided to the BPD constituted exculpatory evidence (Id. ¶ 72). However, Defendants Demkovich and Herceg repeatedly denied the BPD's attempts to conduct a voluntary search of their cell phones (Id. ¶¶ 77-78). Plaintiff does not allege what probable cause, if any, existed for the BPD to execute a warrant to search the alleged victims' phones during its investigation.

On January 14, 2022, counsel for Defendants Demkovich and Herceg emailed Defendant Congdon and informed her that he had a hard copy folder printout (the Saitta Folder) of text messages exchanged between the alleged victims (Id. ¶ 117). Plaintiff does not allege that anyone

5

from the City or BPD was made aware of, or ever in possession of, the Saitta Folder. The County Defendants allegedly failed to expeditiously retrieve the Saitta Folder (Id. ¶ 118). Defendant Congdon also allegedly directed Defendants Demkovich and Herceg to destroy or delete "electronic data," including their social media accounts (Id. ¶¶ 66, 112). No similar allegation is made against the City or BPD Defendants.

At various points prior to his trial, Plaintiff filed judicial applications essentially seeking to compel the BPD and County Defendants to obtain a warrant to search the alleged victims' phones. Prior to his arrest, in or around December 2021, Plaintiff filed an order to show cause seeking, among other things, to compel the BPD and County Defendants to preserve and image electronic data from Defendants Demkovich and Herceg's cellphones (Id. ¶¶ 113). The order to show cause was denied (Id. ¶ 121). In March 2022, after the County Defendants decided to charge him, Plaintiff filed a duplicative motion, which was again denied (Id. ¶ 142(b)).

In or around July 2022, Plaintiff filed a third motion seeking to compel production of Defendants' Demkovich and Herceg's phones (Id. ¶ 163). In response, in or around August 2022, Defendant Congdon notified Plaintiff that the alleged victims agreed to the imaging of their phones, which was then conducted by the County Defendants and the BPD (Id. ¶ 164). The BPD properly provided a hard drive of the imaging to prosecutors (Id. ¶ 165). According to the Complaint, the imaging obtained from the alleged victims' phones (referred to as "Cellebrite Material") included purportedly exculpatory messages indicating that Defendant Demkovich advised Defendant Congdon that the sexual contact was consensual (Id. ¶ 172). In or around February 2023, armed with the purportedly exculpatory information from the Cellebrite Material, Plaintiff made an omnibus motion to dismiss all charges against him, which was denied (Id. ¶ 180).

As Plaintiff reviewed the Cellebrite Material in or around February 2023, he allegedly

learned of the Saitta Folder for the first time (Id. ¶ 174). In or around July 2023, Plaintiff obtained

the Saitta Folder via judicial subpoena, which allegedly contained text messages not included in

the Cellebrite Material (Id. ¶ 182).

This Proceeding

In October 2023, Plaintiff was acquitted of all charges (Id. ¶ 184). On or about October 30,

2024, Plaintiff commenced this action alleging a host of state and federal claims claiming that he

was wrongfully arrested, charged and prosecuted. For the reasons set forth below, all claims

against the City and BPD Defendants should be dismissed.

**ARGUMENT**

## I.    PLAINTIFF FAILS TO PLEAD A § 1983 MONELL CLAIM.

Plaintiffs' third, sixth, and seventh causes of action seek to impose municipal liability on

the City of Binghamton and certain BPD Defendants under § 1983. This Court should dismiss

these claims because Plaintiff has failed to meet the stringent pleading requirements to state a claim

of municipal liability under § 1983, as established in Monell v. Dept. of Soc. Serv. of the City of

N. Y., 436 U.S. 658, 694 (1978). In fact, the only claim that even acknowledges Monell is the sixth

cause of action, which alleges inadequate training and supervision and infirm policies, but even

that claim utterly fails to satisfy Monell's pleading requirements, as set forth further below.

In Monell, the Supreme Court rejected the assertion that a municipality can be vicariously

liable "under § 1983 for an injury inflicted solely by its employees or agents," and held that

municipal liability can only be imposed if the plaintiff demonstrates a constitutional injury

resulting from the "execution of a government's policy or custom." Id.; see also Agosto v. N. Y.

C. Dept. of Educ., 982 F.3d 86, 98 (2d Cir. 2020). The policy or custom must be "the moving force

of the constitutional violation," not merely a contributing factor. Monell, 436 U.S. at 694; see Roe

7

v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008). There also must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). In this regard, the fact that a policy or custom might lead to police misconduct "is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the moving force behind a constitutional violation. There must at least be an affirmative link between, for example, the training inadequacies alleged, and the particular constitutional violation at issue." City of Okla. v. Tuttle, 471 U.S. 808, 824 n.8 (1985) (cleaned up); see also Morgan v. City of Utica, 2021 WL 2036680, at *2 (N.D.N.Y. 2021); Jett v. Dallas Independent School Dist., 491 U.S. 701, 735-736 (1989). This pleading standard requires far more than conclusory or boilerplate allegations of a municipal custom or policy cobbled together with allegations of a constitutional injury. Strong v. City of Syracuse, 2020 WL 137250, at *3 (N.D.N.Y. 2020); see also Guerrero v. City of N.Y., 2013 WL 673872, at *2 (S.D.N.Y. 2013); Simms v. City of New York, 2011 WL 4543051, at *3 (E.D.N.Y. 2011) aff'd, 480 F. App'x 627 (2d Cir. 2012).

For example, in Wilson v. County of Onondaga, 2022 WL 3141764 (N.D.N.Y. 2022), report and recommendation adopted, 2022 WL 2965584 (N.D.N.Y. 2022), the plaintiff alleged that certain law enforcement officials, prosecutors and forensic analysts fabricated evidence and framed him for murder. He asserted a § 1983 municipal liability claim against the City of Syracuse, alleging that the City systematically failed to train its "police officers, detectives and investigators" to conduct "constitutionally adequate investigations," including following the "duties imposed by *Brady v. Maryland.*" The plaintiff further alleged that these customs, practices, and policies were the moving force behind "the false and fabricated evidence that defendants relied upon in causing his arrest and prosecution." Id. at *7. This Court found that the plaintiff's complaint was insufficient to satisfy the rigorous requirements of Monell, in that it did not include any supporting,

non-conclusory factual allegations showing how the City's actions were taken pursuant to any policy or custom. Id. at *7; see also Turczyn ex rel. McGregor v. City of Utica, 2014 WL 6685476 (N.D.N.Y. 2014); Santos v. New York City, 847 F.Supp.2d 573, 577 (S.D.N.Y. 2012); Worrell v. City of N.Y., 2014 WL 1224257, at *13 (E.D.N.Y. 2014).

The same result should be reached here. Plaintiff's 72-page complaint contains only a handful of paragraphs even arguably devoted to alleging a Monell theory of liability against the City and BPD Defendants (Compl. ¶¶ 105(g), 258-261). In these paragraphs, Plaintiff only broadly alleges that BPD failed to train or supervise its members and had constitutionally infirm policies as to probable cause and as to "*Brady, Giglio*, and discovery obligations" generally (Compl. ¶ 105(g)). Although Plaintiff also claims that individual BPD Defendants Chief Zikuski, Captain Minor, and Detective Miller "are policy makers, as that term is described in law, at BPD," Plaintiff makes no effort to identify any specific act undertaken by these individuals pursuant to any final policymaking authority that caused the constitutional injuries alleged, much less tie their alleged policy making status to any actual policy, custom or practice of the City or BPD (Compl., ¶ 219). Accordingly, as in Wilson, Plaintiff's failure to plead "any nonconclusory facts about the City" is fatal to his Monell claims. Wilson, 2022 WL 3141764, at *7.

Further, as to Plaintiff's allegation that BPD failed to adequately train defendants in investigating and charging crimes, a § 1983 claim against a municipality "is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). This is because the municipality's failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id.; see also Bovee v. Auburn Police Dept., 2024 WL 4600030, at *4 (N.D.N.Y. 2024), report and recommendation adopted, 2024 WL 4834214 (N.D.N.Y. 2024). Therefore, "[a] pattern of similar constitutional violations by

untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (quotation marks omitted).

In Drawbridge v. Schenectady County Dept. of Social Services (2024 WL 1152524 [2d Cir. 2024]), the plaintiff alleged that a County Department of Social Services ("DSS") failed to adequately train or supervise its employees. Id. at *1. The Second Circuit found that plaintiff's claim failed because, "even assuming *arguendo* that a substantive due process violation occurred, Drawbridge failed to allege that any such violation resulted from a County DSS policy." Id. Specifically, Drawbridge argued that the individual acts of misconduct at issue, including allegations of fabricating accusations without evidence, failing to maintain investigative records, and conducting interviews with plaintiff's child in contravention of accepted professional standards, "evince[ ] a total and complete lack of training." Drawbridge, 2024 WL 1152524, at *2. The Second Circuit rejected these allegations as "conclusory" and insufficient to establish Monell liability. Id.

For the same reasons, this Court should reject Plaintiff's failure to train allegations. Plaintiff fails to allege any specific or non-conclusory facts that would establish that any purported failure to train BPD officers amounted to deliberate indifference. Plaintiff has not alleged any pattern of constitutional violations by untrained employees, nor any repeated complaints of the same. See, e.g., Bovee, 2024 WL 4600030, at *4; Outlaw v. City of Hartford, 884 F.3d 351, 373 (2d Cir. 2018) (quotation marks omitted). Nor has he alleged that City policymakers failed to act in the face of other "actual or constructive notice." Hernandez v. United States, 939 F.3d 191, 207 (2d Cir. 2019) (quoting Connick, 563 U.S. at 61). As such, Plaintiff's third, sixth, and seventh causes of action should be dismissed as against the City and the BPD Defendants.

## II.     PLAINTIFF'S § 1983 CLAIMS FAIL TO ADEQUATELY PLEAD PERSONAL INVOLVEMENT OF ANY BPD DEFENDANTS.

Plaintiff alleges various § 1983 claims against three BPD Defendants in their individual capacities – Chief Zikuski, Captain Minor and Detective Miller – as well as ten unnamed Doe Defendants. These claims fail because Plaintiff has not plausibly pled any facts sufficient to establish the personal involvement of any BPD Defendants in the underlying constitutional violations.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Barzee v. Wison, 2024 WL 4751552, at *9 (N.D.N.Y. 2024) (internal quotation marks and citation omitted). Plaintiff must plead and prove "that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (emphasis added). Plaintiff must establish the "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." Rys v. Grimm, 2021 WL 827671, at *8 (N.D.N.Y. 2021) "'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue,' because the elements of different constitutional violations vary." Tangreti, 983 F.3d at 618 (quoting Iqbal, 556 U.S. at 676).

Here, despite the volume of allegations in the Complaint, none of them set forth the personal involvement of any BPD Defendant; they fail to specifically set forth "what each [BPD defendant] did [to the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes" the defendant's actions violated. See Doe by and through Doe v. E. Irondequoit Cent. School Dist., 2018 WL 2100605, at *9 (W.D.N.Y. 2018) (granting motion to dismiss § 1983 claims where complaint failed to allege facts indicating that individual supervisory defendants were involved in underlying events or decisions giving rise

to alleged violations of plaintiff's constitutional rights).

There is no allegation in the Complaint that any specific BPD Defendant arrested or decided to arrest Plaintiff, charged or decided to charge Plaintiff, fabricated evidence that led to Plaintiff's arrest or prosecution, participated in Plaintiff's prosecution, or withheld any specific exculpatory evidence. Plaintiff instead lumps his allegations against the BPD Defendants together in haphazard fashion, without identifying any nonconclusory or individual actions undertaken by them (see, e.g., Compl. ¶ 130 [alleging generally that "[t]he arrest was effectuated and processed by *members of BPD*"]; Compl. ¶ 75 ["[a]ccording to text messages between Defendant Demkovich and her mother, Defendant Demkovich told *members of BPD* that she was questioning whether she was, in fact, raped, or if the physical or sexual contact was consensual"]; Compl. 133 ["[d]espite there being no probable cause to charge Plaintiff, Defendant Congdon *met with BPD* on or about February 22, 2022 and decided with BPD to file criminal charges against Plaintiff, Leor Kweller, and Jordan Rindgen in local court"] [emphasis collectively added]). This type of group pleading is impermissible and insufficient to adequately allege the personal involvement of any individual defendant in his or her personal capacity. Solano v. New York, 2021 WL 4134793, at *6 (N.D.N.Y. 2021); Ware for DP v. Doe, 2024 WL 3874773, at *3 (N.D.N.Y. 2024) (dismissing, among other claims, false arrest claim for failure to establish personal involvement where complaint failed to identify specific acts undertaken by individual defendant, and instead engaged in group pleading); Lord v. Tashjian, 2023 WL 8105956, at *3 (N.D.N.Y. 2023) (dismissing § 1983 false arrest, malicious prosecution and due process claims against state police officer for lack of personal involvement; "The Court finds that there is no clear, tangible connection between Defendant Moore's conduct and Plaintiff's injury based on these facts. . . . nor do they plausibly allege that Defendant Moore personally directed that arrest, was present for

it, or that he acted with any knowledge of or intention to violate Plaintiff's constitutional rights"); MacLaren v. Chenango County Police, 2024 WL 4728884, at *5 (N.D.N.Y. 2024) (dismissing false arrest and malicious prosecution claims for lack of personal involvement).

Plaintiff notably fails to allege that any BPD Defendant was involved in the crux of his constitutional claims, which collectively center on purported exculpatory evidence contained in the "Saitta folder" – that is, a folder of electronic data from the victims' cellphones that contained text messages in which Defendant Demkovich allegedly questioned whether physical and sexual conduct might have been consensual. According to the Complaint, the Saitta folder was not produced to Plaintiff until July 2023, which was after he was charged in February 2022, but before he was eventually tried in October 2023 (Compl., ¶¶ 116-120). There are no allegations in the Complaint to suggest that any named BPD Defendant had anything to do with any purported nondisclosure of the victims' text messages in the Saitta folder or otherwise, much less any allegations that the BPD knew of the Saitta folder's existence. To the contrary, the Complaint makes clear that the victims' counsel made the Saitta folder available to the County Defendants (*not the BPD or the City*) in January 2022 and that the County Defendants (*not the BPD or the City*) allegedly failed to expeditiously retrieve it. Id. The Complaint goes on to acknowledge that the BPD properly turned over imaging of the victims' phones to prosecutors once it came into its possession. Plaintiff alleges that the victims repeatedly refused to permit the BPD to search their phones until August 2022, at which time the Complaint alleges that the BPD imaged and turned over a hard drive of the phones to the County Defendants, who in turn produced the same to Plaintiff (Compl., ¶¶ 164, 165, 167).

Instead of pleading specific unlawful acts undertaken by the named BPD Defendants, much of the Complaint is devoted to Plaintiff's general critique that the BPD should have done more in

its investigation. Among other things, Plaintiff alleges that the BPD should have obtained a warrant for Plaintiff's DNA or a warrant to search the victims' phones on the off chance that they might have contained exculpatory information (without alleging any facts suggesting that the BPD would have had probable cause to do so, and notwithstanding that the Complaint alleges, repeatedly, that the victims declined BPD's attempts to undertake a consensual search) (see, e.g., Compl., ¶¶ 77-78, 123). Plaintiff's scattershot allegations that the BPD conducted a negligent or inadequate investigation are insufficient to establish the personal involvement of any named BPD Defendant.

Even assuming that any named BPD Defendant had probable cause to pursue additional investigatory means, "there is no constitutional right to an adequate investigation" and "[a] police officer's failure to pursue a particular investigative path is not a constitutional violation." Buari v. City of New York, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021); Hicks v. Marchman, 719 Fed. App'x 61, 64 (2d Cir. 2018) (holding that there is no "stand-alone fair trial claim based on officers' failure to conduct an adequate investigation"); Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) (police officers are "not required to explore and eliminate every plausible claim of innocence before making an arrest"); Harrington v. Cty. of Suffolk, 607 F.3d 31, 35 (2d Cir. 2010) (the significant level of law enforcement discretion in investigating criminal acts precludes any "legitimate claim of entitlement" to a police investigation); Stokes v. City of New York, 2007 WL 1300983, at *6 (E.D.N.Y. 2007) ("[I]t is well-settled that there is no independent claim for a police officer's purported failure to investigate[.]").

With respect to Captain Minor and Chief Zikuski, the Complaint barely mentions them and contains no allegations that they individually engaged in unconstitutional conduct. As to Captain Minor, the Complaint alleges only that "Defendant Minor supervised Defendant Miller and reported to Defendant Joseph Zikuski" (Compl. ¶ 70), executed a search warrant with Detective

Miller at an office location (Compl. ¶ 82), attended a meeting with Detective Miller and certain County Defendants in which the investigation was discussed (Compl. ¶ 106), and "upon information and belief" participated in a discussion about subpoenaing the victims' cell phones (Compl. ¶ 107). The sole allegations against Chief Zikuski are that Captain Minor reported to him and that he told Plaintiff's attorney that he advised against filing charges (Compl. ¶¶ 70, 92). These allegations are insufficient to plausibly establish that either Captain Minor or Chief Zikuski individually violated the Constitution.

Plaintiff fares no better with his claims against Detective Miller. He sets forth innocuous allegations that Detective Miller was "assigned to investigate" the allegations of sexual assault (Compl. ¶ 70), interviewed the victims (Compl. ¶ 71), collected certain photographs and text messages that the victims voluntarily turned over, none of which are alleged to contain exculpatory information (Compl., ¶ 72), received security footage from Plaintiff's counsel, which is not alleged to contain exculpatory information (Compl., ¶¶ 79-80), executed a search warrant at an office (Compl., ¶ 82), attended a meeting with County Defendants to discuss the investigation (Compl., ¶ 106), and discussed issuing a subpoena for the victim's cell phones (Compl., ¶ 107). At most, these allegations demonstrate that Detective Miller participated in routine investigatory tasks. They fall well short of plausibly establishing that she engaged in unlawful conduct that caused a violation of Plaintiff's constitutional rights.

In the absence of any unlawful acts undertaken by Detective Miller, Plaintiff alleges that Defendant Demkovich told unidentified "members of the BPD" that she was questioning whether certain physical or sexual contact was consensual, and that Detective Miller failed to "record" that statement in a manner that could be disclosed to Plaintiff (Compl., ¶ 75). The source of this allegation is hearsay in the form of a text message, the quoted contents of which have

conspicuously been altered by Plaintiff in his motion papers by inserting a bracketed reference to the BPD that does not exist in the original text: "December 28, 2021 – Defendant Demkovich to her mother: 'I told them [BPD] the next day I was questioning if what happened to me was actually rape . . .'" (see Compl., ¶ 68(w) (brackets inserted by Plaintiff in original quoted text).

Even with Plaintiff's manipulation of the text message's quoted language, it does not identify any named BPD Defendant, let alone Detective Miller, nor demonstrate that she committed any constitutional violation. The same is true even if this Court likewise credited Plaintiff's allegation that Detective Miller failed to "record" Defendant Demkovich's purported statement, as that amounts at best to a claim of negligent police work, which is not a cognizable legal theory under § 1983. See, e.g., Dzwonczyk v. Syracuse City Police Dept., 710 F Supp 2d 248, 261 (N.D.N.Y. 2008); Williams v. Carpenter, 214 F. Supp. 3d 197, 201 (W.D.N.Y. 2016). Indeed, Plaintiff alleges no facts to suggest that Detective Miller was motivated by bad faith or malice in failing to "record" this alleged statement that he does not even claim was provided to her specifically, as he must to set forth a viable claim against her for the various constitutional violations alleged. And, in any event, the mere fact that an alleged rape victim (who was allegedly consuming alcohol and drugs throughout the incident [Compl. ¶ 38, ¶ 46]) questioned the underlying circumstances of a reported crime does not establish unconstitutional conduct on Detective Miller's behalf.

## III.  THE COMPLAINT FAILS TO STATE ANY COGNIZABLE CLAIM AGAINST THE CITY OR BPD DEFENDANTS.

### A.  Plaintiff Has Not Properly Alleged a Claim for False Arrest Against the BPD Defendants.

Plaintiff's first and eighth causes of action assert claims for false arrest under § 1983 and New York law against BPD Defendants Captain Minor, Detective Miller and Chief Zikuski. "To

state a claim for false arrest or false imprisonment under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." Guadagni v. N.Y.C. Trans. Auth., 2009 WL 1910953, at * 4 (E.D.N.Y. 2009) (citing Savino v. City of N.Y., 331 F.3d 63, 75 [2d Cir. 2003]). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); see also Guadagni, 2009 WL 1910953, at * 4; Ostroski v. Town of Southold, 443 F. Supp.2d 325, 334 (E.D.N.Y. 2006) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118 [2d Cir.1995], cert. denied, 517 U.S. 1189 [1996]). "To prove intent, the defendant must have either (a) confined or intended to confine the plaintiff or (b) affirmatively procured or instigated the plaintiffs' arrest." King v. Crossland Sav. Bank, 111 F.3d 251, 255 (2d Cir. 1997).

Here, "[n]o facts regarding how the arrest took place are provided. The few allegations to be found in the Complaint are short, conclusory, and almost entirely devoid of appreciable factual content." Mayzick v. County of Nassau, 32 F. Supp. 3d 399, 402 (E.D.N.Y. 2014) (granting motion to dismiss false arrest claim). Plaintiff does not identify any BPD Defendant who played a role in the arrest or the decision to make the arrest. Instead, Plaintiff alleges that in or around February 2022, *Defendant Congdon* – and not a member of the BPD – "decided that Plaintiff, Leor Kweller, and Jordan Rindgen should be arrested and charged in local court" and that "[t]he arrest was effectuated and processed by members of BPD" (Compl. ¶ 130).

Even if Plaintiff's false arrest claims were supported by sufficient factual detail, they are barred by the indictment returned by the grand jury, which "establishes the requisite probable cause

17

to extinguish" Plaintiff's state and federal claims based on false arrest. Wright v. Orleans County, 2015 WL 5316410, at \*11 (W.D.N.Y. 2015), report and recommendation adopted, 2015 WL 13660397 (W.D.N.Y. 2015). As set forth more fully in Point III(B) infra, Plaintiff fails to allege any facts tending to establish that the indictment was secured through bad faith or perjury in a manner that could rebut the "presumption of probable cause" that arises from the indictment. Id.

Finally, and to the extent that Plaintiff's state or federal false arrest claims are premised on any allegations that the BPD failed to pursue additional investigative measures, such as securing warrants for Plaintiff's DNA or the victims' phones, Plaintiff has no cognizable § 1983 or state common law claim for a negligent investigation. See, e.g., Hernandez v. State, 228 AD2d 902 (3d Dept. 1996) ("New York does not recognize an action alleging negligent investigation or prosecution of a crime, as the police are not obligated to follow every lead that may yield evidence beneficial to the accused"); Bell v. Miller, 164 A.D.3d 728, 729 (2d Dept. 2018), lv denied 32 N.Y.3d 911 (2018); Jorgensen v. County of Suffolk, 558 F Supp 3d 51, 65 (E.D.N.Y. 2021).

### B. Plaintiff Has Not Properly Alleged Claims for Malicious Prosecution Against the BPD Defendants.

Plaintiff's first cause of action is also premised on state and federal theories of malicious prosecution. "To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." Kee v. City of New York, 12 F.4th 150, 161-62 (2d Cir. 2021) (internal citations and punctuation omitted). A malicious prosecution claim brought under §1983 also requires "a sufficient post-arraignment liberty restraint." Id. at 162 (citation and quotation marks omitted); Rentas v. Ruffin, 816 F.3d 214, 220 (2d Cir. 2016). The Complaint fails to satisfy these elements here.

       i.      *The Complaint Fails to Allege That Any BPD Defendant Commenced or*
              *Continued a Criminal Proceeding.*

"An arresting officer may be held liable for malicious prosecution if he or she played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Barone v. United States, 2014 WL 4467780, at *17 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). A police officer may initiate a proceeding "by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006); see also Nelson v. City Of New York, 2019 WL 3779420, at *11 (S.D.N.Y. 2019) (quoting Cameron v. City Of New York, 598 F.3d 50, 63 [2d Cir. 2010]). "In addition, an officer will be liable for malicious prosecution if he or she creates false information likely to influence a jury's decision and forwards that information to prosecutors, or ... withholds relevant and material information from the prosecutor." Barone, 2014 WL 4467780, at *17.

None of these allegations are raised here against any BPD Defendant. While there are passing references that BPD Defendants purportedly "fabricated" evidence, the Complaint offers no corroborating factual detail explaining how or what evidence was fabricated (Compl. ¶ 201, 265); see Williams v. City of Syracuse, 2020 WL 3574643, at *2 (N.D.N.Y. 2020) ("to the extent Williams claims that defendant officers 'created fictions,' 'falsehood[s],' and made 'fraudulent misrepresentations' to the district attorney's office . . . there are no allegations concerning the form or substance of the information claimed to have been fabricated"); see also Sotak v. Bertoni, 501 F. Supp. 3d 59, 84 (N.D.N.Y. 2020).

Nor is there any allegation that BPD Defendants withheld material evidence from prosecutors. Plaintiff does not allege that the BPD was ever in possession or made aware of the Saitta Folder with allegedly exculpatory text messages from Defendants Demkovich and Herceg.

Notably, Defendants Demkovich and Herceg refused to consent to BPD's request to access to their electronic data until after charges were brought. Once imaging was conducted on the victims' phones, the Complaint makes clear BPD produced that imaging to prosecutors (Compl., ¶¶ 164-165). The Complaint's generalized allegation that "[a]ccording to text messages between Defendant Demkovich and her mother, Defendant Demkovich told members of BPD that she was questioning whether she was, in fact, raped, or if the physical or sexual contact was consensual" (Compl. ¶ 75) likewise fails to establish that any BPD Defendant withheld exculpatory evidence in an actionable manner for the reasons set forth in Point I supra.

### ii. The Complaint Fails To Allege The Absence of Probable Cause or Actual Malice.

A grand jury's indictment creates a presumption of probable cause that can only be rebutted by a showing that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Savino, 331 F.3d at 72 (citations and quotation marks omitted). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment," and that burden cannot be met by "mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." Id. at 73 (citations and quotation marks omitted).

"To prove actual malice, the plaintiff must show that the defendant 'commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" McGee v. Dunn, 940 F. Supp. 2d 93, 102 (S.D.N.Y. 2013) (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 503 [1978]). But the alleged failure by police to "conduct further investigation or apply all procedures that could have been followed does not amount to fraud, bad faith or the suppression of evidence." Gil v. County of Suffolk, 590 F. Supp. 2d 360, 370 (E.D.N.Y. 2008). Where a plaintiff alleges only "poor police work" or negligence in

conducting an investigation, "[t]hat is not enough to support a malicious-prosecution claim, or a § 1983 claim in general." Williams, 214 F. Supp. 3d at 201.

Here, the Complaint's conclusory allegations fail to rebut the presumption of probable cause, as they do not plausibly suggest that the indictment against Plaintiff was procured through police misconduct or bad faith. Even construed liberally, the claims against the BPD Defendants allege only negligence or poor police work, which is insufficient for purposes of a malicious prosecution claim. See, e.g., Watson v. United States, 865 F.3d 123, 134 (2d Cir. 2017) (malicious prosecution claim cannot be based on "series of negligent acts by government officials).

While the Complaint also alleges in conclusory fashion that the BPD Defendants fabricated evidence and withheld exculpatory evidence, Plaintiff fails, as noted above, to meet basic pleading standards by corroborating these serious allegations with any supporting facts, such as what evidence was fabricated or withheld, and who specifically from the BPD engaged in such misconduct. See Williams, 2020 WL 3574643, at *2 (citing Iqbal, 556 U.S. at 679); see Myers v. Moore, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) ("Plaintiff engages in group pleading, lumping the three defendants together without pleading facts demonstrating what each did that makes him liable for malicious prosecution. ... Accordingly, the [a]mended [c]omplaint does not sufficiently plead a malicious prosecution claim."); Willis v. Rochester Police Dept., 2018 WL 4637378, at *6 (W.D.N.Y. 2018) (dismissing malicious prosecution claim for failure to state a claim where the plaintiff only made "passing reference to 'false statements of facts' ... but fail[ed] to provide any further, or factual, context for that allegation"); Longo v. Ortiz, 2016 WL 5376212, at *4 (S.D.N.Y. 2016) ("Plaintiff's allegations as to false or fabricated information are entirely conclusory and generalized and do not contain the specificity required to state a claim for malicious prosecution.") (citations omitted).

**C.    Plaintiff Fails to Plead a Federal Due Process Claim against the BPD Defendants.**

Plaintiff's second cause of action alleges that Captain Minor and Detective Miller violated his federal due process rights based on three theories: denial of a fair trial by fabricating evidence, withholding exculpatory and impeachment evidence, and failing to conduct a constitutionally adequate investigation. None of these three theories is supported by sufficient allegations to sustain a viable cause of action.

*i.    Plaintiff's Fair Trial Due Process Claim Fails.*

To succeed on a § 1983 claim alleging a violation of the fair trial right, a plaintiff must prove that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." Everett v. Dean, 2021 WL 765762, at *4 (N.D.N.Y. 2021), report and recommendation adopted, 2021 WL 3046801 (N.D.N.Y. 2021) (citing Aguirre v. City of New York, 2017 WL 4236552, at *10 [E.D.N.Y. 2017] [brackets omitted] [quoting Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 [2d Cir. 2016]).

Plaintiff generally alleges that Defendants Minor and Miller violated his due process rights by "fabricating inculpatory evidence" in support of his fair trial claim (Compl. ¶ 201). Plaintiff's Complaint, however, does not provide any factual detail and context to support these allegations, which are simply "boilerplate." See Williams, 2020 WL 3574643, at *2 (dismissing the plaintiffs' fabrication of evidence claim because it contained "boilerplate allegations" and "provide[d] no factual context to support a fair trial claim."); Bruno v. City of New York, 2019 WL 690340, at *11, n. 9 (S.D.N.Y. 2019) (fabrication of evidence claim dismissed where the plaintiff offered no evidence that the defendant police detective coerced or fabricated information); Wright, 2015 WL 5316410, at *13 (W.D.N.Y. 2015) ("[T]he failure to specify what constituted the allegedly falsified

information is fatal to Plaintiff's fair trial claim."); <u>Waddlington v. City of New York</u>, 971 F. Supp. 2d 286, 297 (E.D.N.Y. 2013) (dismissing the plaintiff's fair trial claim and noting that the "[p]laintiff at no point alleges with specificity what false information [defendant police officers] created or forwarded to the D.A.'s Office. And, although [p]laintiff alleges elsewhere in his memorandum that [the defendants] offered inconsistent testimony ... [p]laintiff does not indicate whether he believes these alleged inconsistencies constitute evidence that the police officers falsified information."); <u>see also</u> <u>Longo</u>, 2016 WL 5376212, at *4 (dismissing the plaintiff's fair trial claim and holding that where the plaintiff alleged that "'the defendants fabricated evidence, gave false testimony, and made false extrajudicial statements' ... those allegations fail to state with the requisite specificity the evidence that was purportedly fabricated."). Further, Plaintiff's allegations that the BPD Defendants failed to secure a buccal swap or Defendants Herceg and Demkovich's cellphone records speak more to failing to secure potentially real evidence, not the fabrication of evidence, and thus cannot form the basis of a fair trial due process claim. See <u>Harasz v. Katz</u>, 239 F. Supp. 3d 461, 495 (D. Conn. 2017) (dismissing plaintiff's malicious prosecution claim where the complaint alleged that a defendant failed to discover real evidence, not that he fabricated false evidence).

    *ii. Plaintiff's Due Process Claim Based on the Alleged Failure to Conduct a Constitutionally Adequate Investigation Fails.*

  Plaintiff next attempts to cobble together a due process violation based on allegations that the BPD failed to conduct a constitutionally adequate investigation. But again, "there is no constitutional right to an adequate investigation." <u>Newton v. City of New York</u>, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008) (citing <u>Campbell v. Giuliani</u>, 2000 WL 194815, at *3 n. 6 [E.D.N.Y. 2000]); <u>see</u> <u>Harrington</u>, 607 F.3d at 35. Indeed, "[a] police officer's failure to pursue a particular investigative path is not a constitutional violation." <u>Schweitzer v. Brunstein</u>, 2016 WL 4203482,

at *2 (E.D.N.Y. 2016) (collecting cases); McCaffrey v. City of New York, 2013 WL 494025, at *5 (S.D.N.Y. 2013) ("a 'failure to investigate' is not independently cognizable as a stand-alone claim" under § 1983) (collecting cases); see also Stokes, 2007 WL 1300983, at *6 ("[I]t is well-settled that there is no independent claim for a police officer's purported failure to investigate ....") (collecting cases). Thus, even assuming the BPD Defendants failed to conduct an adequate investigation because they did not pursue warrants for Plaintiff's DNA or the victims' cell phone records, Plaintiff cannot make out a due process claim against them.

> iii. *Plaintiff's Due Process Claim Premised on The Failure to Disclose Exculpatory Evidence Fails.*

Plaintiff alleges that Captain Minor and Detective Miller committed a due process violation by "withholding material exculpatory and impeachment evidence" from his counsel and the Court (Compl. ¶ 201). The "essential purpose of *Brady* and its progeny," however, "is to protect a defendant's right to fair trial by ensuring the reliability of any criminal *verdict* against him." United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001) (emphasis added). A true Brady violation cannot occur absent a nondisclosure by the government "so serious there is a reasonable probability that the suppressed evidence would have produced a *different verdict*." Strickler v. Greene, 527 U.S. 263, 281 (1999) (emphasis added). Thus, "[w]hen a criminal defendant is acquitted notwithstanding an alleged *Brady* violation, the criminal defendant has not suffered prejudice and *Brady* has not been implicated." Cannistraci v. Kirsopp, 2012 WL 1801733, at *17 (N.D.N.Y. 2012); see also Ambrose v. City of New York, 623 F.Supp.2d 454, 469 (S.D.N.Y. 2009) ("[m]ost courts that have directly considered the question have held that an acquittal extinguishes a Section 1983 plaintiff's due process claim for nondisclosure of *Brady* material") (citing Morgan v. Gertz, 166 F.3d 1307, 1310 [10th Cir. 1999]; Flores v. Satz, 137 F.3d 1275, 1278 [11th Cir.1998]; Ramirez v. County of Los Angeles, 397 F.Supp.2d 1208, 1214 [C.D. Cal. 2005]) (other citations

omitted); <u>see also</u> <u>Carvajal v. Dominguez</u>, 542 F.3d 561, 570 (7th Cir. 2008) ("[W]e are doubtful ... that an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation.").

Given the foregoing, even if the Complaint adequately alleged that any of the BPD Defendants willfully or inadvertently suppressed evidence favorable to Plaintiff in his criminal trial (it does not, for the many reasons discussed in foregoing sections), Plaintiff's acquittal extinguishes his Fourteenth Amendment claim alleging a violation of his rights under <u>Brady</u> and its progeny.

### D.     Plaintiff's State Law Due Process Claim Fails.

Plaintiff alleges that Defendants violated Article I § 6 and Article I § 12 of the New York State Constitution in his tenth cause of action.

New York courts have repeatedly found that Constitutional claims need not be recognized where it is "neither necessary nor appropriate to ensure the full realization of [plaintiff s] rights" to do so because "the alleged wrongs could have been redressed by an alternative remedy, namely, timely interposed common-law tort claims." <u>See</u> <u>Lyles v. State,</u> 2 A.D.3d 694, 695-696 (2d Dept. 2003), <u>aff'd</u>, 3 NY3d 396 (2004); <u>Donas v. City of New York,</u> 2008 WL 293038 (Sup. Ct. N.Y. Cnty. 2008), <u>aff'd</u>, 62 A.D.3d 504 (1st Dept. 2009); <u>Townes v. New York State Metropolitan Transp. Auth.,</u> 2011 WL 4443604 (Sup. Ct. Nassau Cnty. 2011); <u>See</u> <u>Rodriguez v. City of N.Y.,</u> 623 F. Supp. 3d 225, 260 (S.D.N.Y. 2022). The same is true where "'the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution.'" <u>Buari</u>, 530 F.Supp.3d at 409-10 (<u>quoting</u> <u>Alwan v. City of New York,</u> 311 F. Supp. 3d 570, 586 [E.D.N.Y. 2018] [citing cases]).

Plaintiff's Article I § 6 claim is duplicative of the §1983 Fourteenth Amendment due process claim, which Plaintiff alleges in Count II of the Complaint. Plaintiff's Article I § 12 claim

duplicates the common law tort of false arrest, which Plaintiff alleges in Count VIII of the Complaint. Because Plaintiff has an adequate alternative remedy at law for these claims, these claims should be dismissed. Alternatively, each of these state constitutional claims fails to state a cause of action for the reasons stated above with respect to Plaintiff's § 1983 due process and false arrest claims.

### E.    Plaintiff's Failure to Intervene Claim Fails.

Plaintiff's third cause of action broadly alleges that the City, Chief Zikuski, Captain Minor and Detective Miller failed to intervene in unspecified constitutional violations. "A[n] ... officer may be liable for failure to intervene under § 1983 where '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" Gerasimou v. Cillis, 2022 WL 118748, *5 (E.D.N.Y. 2022) (quoting Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 [S.D.N.Y. 2008], aff'd, 461 Fed. App'x 18 [2d Cir. 2012]). A plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation. Wieder v. City of New York, 569 Fed. App'x 28, 30 (2d Cir. 2014) (summary order). "[F]or liability to attach" for failure to intervene, "there must have been a realistic opportunity to intervene to prevent the harm from occurring." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

Here, there is no underlying constitutional violation to support Plaintiff's failure to intervene claim. Plaintiff also neglects to even plead the elements (or the facts) necessary to state a failure to intervene claim against any BPD Defendant. Thus, Plaintiff's claim for failure to intervene should be dismissed.

### F.    Plaintiff's Supervisory Liability Claim Fails.

In his fourth cause of action, Plaintiff alleges that Captain Minor and Chief Zikuski are liable as supervisors, without stating which constitutional violations they are liable for. There is no longer any special rule for supervisory liability in the Second Circuit. See Tangreti, 983 F.3d at 614-19. Instead, a plaintiff must plead that supervisor's violated the Constitution directly. Id. at 618. For the reasons set forth in Point I supra, Plaintiff fails to plead any facts sufficient to allege that Defendants Minor and Zikuski were personally involved in any of the constitutional violations in this case. Pursuant to the Second Circuit's holding in Tangreti, it is no longer sufficient for Plaintiff to argue, as he does, that Captain Minor and Chief Zikuski failed to adequately supervise other police officers as a basis to establish their personal involvement. Tangreti, 983 F.3d at 619.

### G.    Plaintiff's § 1983 Conspiracy Claim Fails.

Plaintiff's seventh cause of action alleges a § 1983 conspiracy against all Defendants. "In order to survive a motion to dismiss on [a] §1983 conspiracy claim, [a Plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Smulley v. Liberty Mut. Holding Co., 2023 WL 2494098, at *2 (2d Cir. 2023) (citing Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 [2d Cir. 2002]). "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (citations and quotation marks omitted).

Plaintiff fails to allege any facts to satisfy this standard here. There are no facts specifically as to which individuals from the BPD or the City were involved in any purported conspiracy, nor any to suggest that anyone from the BPD or the City had a meeting of the minds with any other party to cause Plaintiff an unconstitutional injury. See Brook v. Ruotolo, 2024 WL 3912831, at *3

(2d Cir. 2024) (<u>citing</u> <u>Gallop</u>, 642 F.3d at 369 ["It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."]). Plaintiff's conclusory allegation that all Defendants "agreed" to "act in concert" is insufficient. <u>Bertuglia v. City of New York</u>, 839 F. Supp. 2d 703, 728 (S.D.N.Y. 2012). For the reasons set forth in preceding sections, the Complaint also fails to allege that the City or BPD Defendants were personally involved in any of the purported overt acts alleged to support this claim (Compl. ¶ 265). Even if such facts were alleged, Plaintiff has not stated a viable underlying constitutional violation, a necessary predicate to stating a claim for a § 1983 conspiracy. <u>Bertuglia</u>, 839 F. Supp. 2d at 728.

To the extent Plaintiff alleges that a conspiracy existed within the BPD or the City, "[t]he intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." <u>Dunlop v. City of New York</u>, 2008 WL 1970002, at *9 (S.D.N.Y. 2008) (quotation marks and citation omitted). Furthermore, "it is well-settled that the doctrine bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity," including the City as an entity and its police department, "at least where the complaint fails to allege that the various entities were effectively acting as separate entities in carrying out the alleged conspiracy." <u>Id.</u> (citations omitted). Thus, the intracorporate conspiracy doctrine applies when a complaint "clearly depict[s]" a conspiracy "as the product of a single corporation acting exclusively through its own directors, officers, and employees." <u>Id.</u> at *10 (quotation marks and citation omitted).

Given the foregoing, Plaintiff has not made any non-conclusory allegations sufficient to support a plausible claim that any of these parties acted in concert or had an agreement to violate

his constitutional rights. As such, Plaintiff's conspiracy claims should be dismissed.

**H.    Plaintiff's Intentional, Reckless, or Negligent Infliction of Emotional Distress Claims Fail.**

Plaintiff's ninth cause of action alleges that all Defendants are liable for intentional, reckless or negligent infliction of emotional distress under New York law.

        *i.    Intentional Infliction of Emotional Distress*

An intentional infliction of emotional distress claim is "highly disfavored" under New York law and "is to be invoked only as a last resort." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (citations omitted). Moreover, "the New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.'" Salmon v. Blesser, 802 F.3d 249, 256 (2d Cir. 2015) (quoting Fischer v. Maloney, 43 N.Y.2d 553, 557-58 [1978]). Indeed, "[a]ll four Appellate Division courts [in New York] have answered the question and held that it cannot." Id. The standard in New York for the intentional infliction of emotional distress is quite high. Reyes v. Faillace, 2014 NY Slip Op 30049(U), ¶ 17 (Sup. Ct. N.Y. Cnty. 2014). "[A] plaintiff must establish: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Suarez v. Bakalchuk, 66 AD3d 419, 419 (1st Dept. 2009); Seltzer v. Baye, 272 A.D.2d 263, 264-265 (1st Dept. 2000).

Here, Plaintiff's conclusory allegations, even if found true, are not sufficiently outrageous in character, and so extreme in degree, to warrant such a finding. Plaintiff has made no allegations showing a longstanding campaign of deliberate, systematic and malicious harassment of the Plaintiff on the part of the City, or the individual police officer Defendants. Therefore, Plaintiff's cause of action for intentional infliction of emotional distress should be dismissed.

ii.    *Negligent Infliction of Emotional Distress*

"A cause of action for negligent infliction of emotional distress generally requires [the] plaintiff 'to show a breach of a duty owed to [him or] her which unreasonably endangered [his or] her physical safety, or caused [him or] her to fear for [his or] her own safety'" A.M.P. v. Benjamin, 201 A.D.3d 50, 57 (3d Dept. 2008) (citing Schultes v Kane, 50 AD3d 1277, 1278 [3d Dept. 2008], quoting Graber v Bachman, 27 AD3d 986, 987 [3d Dept. 2006]).

Here, Plaintiff does not include any particularized allegations of negligence in either his ninth cause of action or the remainder of the complaint. The allegations made in support of Plaintiff's ninth cause of action are conclusory and are simply insufficient to withstand a motion to dismiss. See generally, James v Flynn, 132 AD3d 1214, 1216 (3d Dept. 2015). Accordingly, Plaintiff's negligent infliction of emotional distress claim should be dismissed.

**I.    Plaintiff's Abuse of Process Claim Fails.**

In his twelfth cause of action, Plaintiff claims that the City and Chief Zikuski are liable for abuse of process under New York law based on far-fetched and unsupported allegations that Chief Zikuski continued with Plaintiff's arrest and prosecution to support Defendant Korchak's reelection campaign and to appease the public.

A claim for abuse of process must be based on the defendant's misuse of regularly issued legal process for a purpose not justified by the nature of the process itself. Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984). The plaintiff must show that the defendant sought to obtain "some collateral advantage or corresponding detriment to [the plaintiff] which was outside the legitimate ends" of the legal process at issue. New York State Properties, Inc. v. Clark, 183 A.D.2d 1003, 1005 (3d Dept. 1992). In this regard, *"it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him* by pursuing his arrest and prosecution. Instead, he must claim

that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Savino, 331 F.3d. at 77 (emphasis added); Pinter v. City of New York, 2013 WL 5597545, at * 15 (S.D.N.Y. 2013).

In addition, a claim for abuse of process must be based upon the defendant's improper use of process "*after* it is issued." Curiano, 63 N.Y.2d at 116 (emphasis added). Where the defendant merely causes the *issuance* of process against the plaintiff, no claim for abuse of process will lie. Minasion v. Lubow, 49 A.D.3d 1033, 1036 (3d Dept. 2008) (emphasis added) ("In general, a claim of abuse of process will only lie for improperly using process after it is issued"); Ametco, Ltd v. Beltchev, 5 A.D.2d 631, 633 (1st Dept. 1958); Williams v. Williams, 23 N.Y.2d 592, 596 (1969); Lopez v. City of New York, 901 F.Supp. 684 (S.D.N.Y. 1995). "A collateral objective is more than an improper motive." Simons v. New York, 472 F. Supp. 2d 253, 265-66 (N.D.N.Y. 2007) Examples of collateral objectives are blackmail, extortion, and even retribution. Id.; see also Bd. of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 404 (1975).

Here, Plaintiff has failed to set forth sufficient plausible, non-conclusory allegations that, if proven, would establish any improper or malicious motive on the part of the City or Chief Zikuski. Specifically, Plaintiff has shown no facts to support his assertion that Chief Zikuski "continued with the arrest and prosecution" of Plaintiff "[t]o bolster and support Defendant Korchack's re-election and to quell [] growing public outcry" (Compl. at ¶ 302). This type of political mud-slinging does not provide a factual predicate for a viable cause of action. Moreover, as set forth in Point I supra, there are virtually no specific factual allegations asserted against Chief Zikuski among the 302 allegations in the Complaint, let alone any that would support Plaintiff's outlandish theory that he acted for any improper or malicious motive.

J.    **Plaintiff's Respondeat Superior Claim Fails.**

In the eleventh cause of action, the Complaint alleges that the City is liable under the doctrine of respondeat superior for the actions of Chief Zikuski, Captain Minor and Detective Miller.

"Respondeat superior is not an independent cause of action, but a theory of liability that must attach to an underlying claim." Spence v. City of N.Y., WL 4537946, at *3 (S.D.N.Y. 2022); see Baram v. Doe, 2024 WL 232319, at *10 (S.D.N.Y.2024). "Under New York law, an employer may be found liable for the conduct of its employee under theories of negligent hiring, retention, or supervision." Doe v. City of New York, 2013 WL 796014, at *3 (S.D.N.Y. 2013). "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (per curiam)." [W]here an employee acts within the scope of his or her employment, the employer cannot be held liable for a claim of negligent hiring, retention, or training." Barnville v. Mimosa Cafe, 2014 WL 3582878, at *2 (S.D.N.Y. 2014) (citing Talavera v. Arbit, 18 A.D.3d 738 [2d Dept. 2005]).

Plaintiff's respondeat superior claim against the City fails for the simple fact that Plaintiff has not established any underlying tort committed by any individual BPD Defendant for which the City could be held liable. To the extent Plaintiff attempts to hold the City accountable under New York law for negligent retention or supervision, he cannot do so because he has alleged no facts to support the requisite element that any individual City employees were "acting outside the scope

of [their] employment." De'Bey v. City of N.Y., 2021 WL 8013765, at *16 (S.D.N.Y. 2021),

adopted by, 2022 WL 909790 (S.D.N.Y. 2022) (dismissing negligent supervision claim where

plaintiff failed to allege actions outside the scope of employment). To the contrary, the Complaint

affirmatively alleges that Defendants Zikuski, Minor and Miller acted "within the scope of their

employment or agency with the City" (Compl. ¶ 291). There are also no facts sufficient to plausibly

establish that the City was on prior notice of any specific acts of any employee that would suggest

the propensity for future misconduct. See Yennard v. Boces, 2017 U.S. Dist. LEXIS 226898, at

*5 (N.D.N.Y. 2017); Doe v. Abdulaziz Bin Fahd Alsaud, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014).

Finally, the City's hiring, retention and supervision of its employees constitutes a discretionary act

for which the City cannot be held liable in negligence under the doctrine of government immunity.

See, e.g., McLean v. City of New York, 12 N.Y.3d 194, 203 (2009); Mon v. City of New York,

78 N.Y.2d 309, 313 (1991); Santoro v. Town of Smithtown, 40 A.D.3d 736, 738 (2d Dept. 2007).

### K.    All State Law Claims Premised on Allegations of Negligence Are Barred by Plaintiff's Failure to Allege a Special Duty and by the Doctrine of Government Immunity.

All state law claims are barred because they are collectively premised on allegations of

negligent police work, which are insufficient to state a claim under New York law. Even if these

claims were cognizable (they are not not), they still fail under New York's doctrine of government

immunity and special duty rule.

As set forth above, "[g]overnment action, if discretionary, may not be a basis for liability"

for negligence under New York law. See Valdez v. City of New York, 18 N.Y.3d 69, 76–77 (2011).

Ministerial actions, by contrast, may be, but "only if they violate a special duty owed to the

plaintiff, apart from any duty to the public in general." Id. A municipal act is discretionary, and

immune from liability, if it does not require adherence to a specific rule, with a "compulsory

result." <u>Lauer v. City of New York</u>, 95 NY3d 95, 99 [2000]; <u>DiMeo v. Rotterdam Emergency Medical Services, Inc.</u>, 110 AD3d 1423, 1424 [3d Dept. 2013]). Ministerial actions, by contrast, "are essentially clerical or routine." <u>Mon</u>, 78 N.Y.2d at 313.

"[A]n agency of government is not liable for the negligent performance of" ministerial acts "unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public.'" <u>Bryant v. Ciminelli</u>, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017) (<u>citing</u> <u>McLean</u>, 12 N.Y.3d at 199); <u>Burroughs v. Mitchell</u>, 325 F. Supp. 3d 249, 284-85 (N.D.N.Y. 2018). A special duty exists where "(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally" (often referred to as the "special relationship" method) or "(3) the municipality took positive control of a known and dangerous safety condition." <u>Maldovan v. Cnty. of Erie</u>, 39 N.Y.3d 166, 171 (2022), <u>reargument denied,</u> 39 N.Y.3d 1067 (2023). A special relationship can be formed in one of three ways: "(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation." <u>Lewis v. Franklin County, NY</u>, 2024 WL 1888169, at *16 (N.D.N.Y. 2024), <u>report and recommendation adopted,</u> 2024 WL 3354920 (N.D.N.Y. 2024) (internal citation and punctuation omitted).

Here, all state law claims are premised on allegations of discretionary functions of the City and BPD, such as the hiring and retention of employees (<u>see</u> Point J <u>supra</u>). Plaintiff likewise challenges the BPD Defendants' exercise of their discretion in choosing which investigatory avenues to pursue, such as whether to obtain a warrant for the victims' phones. Such discretionary

police conduct cannot form the basis of liability under the government immunity doctrine. <u>See</u>, <u>e.g.</u>, <u>Gabriel v. City of New York</u>, 89 A.D.3d 982, 983 (2d Dept. 2011) (where plaintiff claimed that "NYPD negligently investigated" a case, challenged acts were "discretionary" and "could not form the basis of tort liability"). To the extent this Court disagrees and concludes that the Complaint is premised on any ministerial acts, Plaintiff has still failed to allege any facts sufficient to satisfy the special duty requirement. <u>See</u> <u>Bryant</u>, 267 F. Supp 3d at 479 (dismissing negligent infliction of emotional distress claim; "Plaintiff only alleges that Defendants owed him a duty of care—the same duty which would be owed to the general public").

## **CONCLUSION**

For the foregoing reasons, the City and BPD Defendants respectfully request an order dismissing the complaint in its entirety with prejudice.

Dated: December 27, 2024
    Albany, New York          WHITEMAN OSTERMAN & HANNA LLP

BY:   *s/ Gabriella R. Levine*
        William S. Nolan, Esq. (BR No. 512108)
        Gabriella R. Levine, Esq. (BR No. 700080)
        Conor Lynch, Esq. (BR No. 705755)
        *Attorneys for the City and BPD Defendants*
        One Commerce Plaza
        Albany, New York 12260
        (518) 487-7600
        wnolan@woh.com
        glevine@woh.com
        clynch@woh.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

YARON KWELLER,                                    **CERTIFICATE OF SERVICE**

                    Plaintiff,                    Case No. 3:24-cv-01328-ECC-ML

        - against -

THE COUNTY OF BROOME, THE CITY OF
BINGHAMTON, THE BROOME COUNTY DISTRICT
ATTORNEY'S OFFICE, DISTRICT ATTORNEY
MICHAEL A. KORCHAK, CHIEF ASSISTANT
DISTRICT ATTORNEY MARK LOUGHRAN,
ASSISTANT DISTRICT ATTORNEY ALYSSA
CONGDON, ASSISTANT DISTRICT ATTORNEY
AMANDA CRONIN, DISTRICT ATTORNEY
INVESTIGATOR JEFF J. WAGNER, BINGHAMTON
POLICE DEPARTMENT CHIEF JOSEPH ZIKUSKI,
BINGHAMTON POLICE DEPARTMENT CAPTAIN
CORY MINOR, BINGHAMTON POLICE
DEPARTMENT INVESTIGATOR AMANDA
MILLER, all in their individual capacities, and JOHN
DOES 1-10, representing Broome County District
Attorney's Office and Police Department Employees
Whose Names Are Currently Unknown, HAILEY
DEMKOVICH, and SAMANTHA HERCEG,

                    Defendants.

_____

        I hereby certify that on December 27, 2024, I electronically filed the foregoing with the
Clerk of the District Court using the CM/ECF system which sent notification of such filing to the
following:

        1.    Elena Fast, Esq. (elena@fastlawpc.com)
              *Attorney for Plaintiff*

        2.    Oscar Michelen, Esq. (omichelen@cuomollc.com)
              *Attorney for Plaintiff*

        3.    Karen A. Newirth, Esq. (karen@newirth-law.com)
              *Attorney for Plaintiff*

4.      Edward E. Kopko, Esq. (office@kopko.law)
        *Attorney for Defendant Hailey Demkovich*

5.      Robert A. Barrer, Esq. (rbarrer@barclaydamon.com)
        *Attorney for Defendants District Attorney Michael A. Korchak and Chief Assistant*
        *District Attorney Mark Loughran*

6.      Nicholas Constantino, Esq. (nconstantino@barclaydamon.com)
        *Attorney for Defendants District Attorney Michael A. Korchak and Chief Assistant*
        *District Attorney Mark Loughran*

7.      Kavitha Janardhan, Esq. (kjanardhan@bhlawpllc.com)
        *Attorney for Defendant Samantha Herceg*

8.      Lawrence M. Ordway, Jr., Esq. (lordway@bhlawpllc.com)
        *Attorney for Defendant Samantha Herceg*

And, I hereby certify that I have mailed by the United States Postal Service the document to the following non-CM-ECF Participants:

1.      None.

*s/ Gabriella R. Levine*

Gabriella R. Levine, Esq.

2