UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

YARON KWELLER,

                    Plaintiff

        - against -

THE COUNTY OF BROOME, THE CITY OF
BINGHAMTON, THE BROOME COUNTY DISTRICT
ATTORNEY'S OFFICE, DISTRICT ATTORNEY
MICHAEL A. KORCHAK, CHIEF ASSISTANT
DISTRICT ATTORNEY MARK LOUGHRAN,
ASSISTANT DISTRICT ATTORNEY ALYSSA
CONGDON, ASSISTANT DISTRICT ATTORNEY
AMANDA CRONIN, DISTRICT ATTORNEY
INVESTIGATOR JEFF J. WAGNER, BINGHAMTON
POLICE DEPARTMENT CHIEF JOSEPH ZIKUSKI,
BINGHAMTON POLICE DEPARTMENT CAPTAIN
CORY MINOR, BINGHAMTON POLICE
DEPARTMENT INVESTIGATOR AMANDA
MILLER, all in their individual capacities, and JOHN
DOES 1-10, representing Broome County District
Attorney's Office and Police Department Employees
Whose Names Are Currently Unknown, HAILEY
DEMKOVICH, and SAMANTHA HERCEG,

                    Defendants.

Case No. 3:24-cv-01328-ECC-ML

**DEFENDANTS THE COUNTY OF BROOME AND
THE BROOME COUNTY DISTRICT ATTORNEY'S OFFICE'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Respectfully submitted,
The Wladis Law Firm, P.C.
*s/Christopher J. Baiamonte*
Christopher J. Baiamonte, Esq. (702528)
*s/Timothy J. Lambrecht*
Timothy J. Lambrecht (510390)
*Attorneys for Defendants, The County of Broome
and The Broome County District Attorney's Office*
P.O. Box 245, Syracuse, NY 13214
(315) 445-1700 (Office)
E-mail:  cbaiamonte@wladislawfirm.com
         tlambrecht@wladislawfirm.com

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 1

ARGUMENT ................................................................................................................ 2

I.      Standard of Review on Rule 12(b)(6) Motion to Dismiss ..................................... 2

II.     the broome county district attorney's Office is not an entity capable of being sued 3

III.    The Complaint Fails to Meet *Monell* Pleading Standard on all of its federal causes of action      3

IV.     the complaint'S THIRD CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY................................................................................................ 5

V.      PLAINTIFF'S FIFTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY................................................................................................ 7

VI.     PLAINTIFF'S SEVENTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY................................................................................................ 9

VII.    STATE LAW CLAIMS ARE BARRED BY THE DOCTRINE OF GOVERNMENT IMMUNITY AND THE SPECIAL DUTY RULE ....................................... 12

VIII.   PLAINTIFF'S EIGHTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY................................................................................................ 12

IX.     PLAINTIFF'S NINTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY................................................................................................ 15

    A.      Intentional Infliction of Emotional Distress .................................................... 16

    B.      Negligent Infliction of Emotional Distress ...................................................... 16

X.      PLAINTIFF'S TENTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY................................................................................................ 17

XI.     PLAINTIFF'S ELEVENTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY................................................................................................ 18

    CONCLUSION ........................................................................................................ 19

## <u>Cases</u>

*A.M.P. v. Benjamin*, 201 A.D.3d 50, 57 (3d Dept. 2008) ............................................................ 17

*Agosto v. N. Y. C. Dept. of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020). ........................................... 4

*Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) .................................... 18

*Ambrose v. City of New York*, 623 F.Supp.2d 454, 469 (S.D.N.Y. 2009) ................................... 11

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ............................................................................... 3

*Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) ........................................................ 3

*Baram v. Doe*, 2024 WL 232319, at *10 (S.D.N.Y.2024) ............................................................ 18

*Barnville v. Mimosa Cafe*, 2014 WL 3582878, at *2 (S.D.N.Y. 2014) ...................................... 19

*Bell v. Miller*, 164 A.D.3d 728, 729 (2d Dept. 2018) .................................................................. 14

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 728 (S.D.N.Y. 2012) ............................... 10

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) ................................. 8

*Brook v. Ruotolo*, 2024 WL 3912831, at *3 (2d Cir. 2024) ........................................................ 10

*Brown v. New York City Health & Hosps. Corp.*, 225 A.D.2d 36, 44 (2d Dept. 1996) .............. 17

*Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017) ............................................... 12

*Cannistraci v. Kirsopp*, 2012 WL 1801733, at *17 (N.D.N.Y. 2012 ............................................ 9

*Cannistraci v. Kirsopp*, 2012 WL 1801733, at *17 (N.D.N.Y. 2012) .......................................... 11

*Carvajal v. Dominguez,* 542 F.3d 561, 570 (7th Cir. 2008) ....................................................... 11

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 [2d Cir. 2002] ...................................... 10

City of Canton v. Harris, 489 U.S. 378, 385 (1989). .................................................................... 4

*City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ................................................................. 4

*Connick v. Thompson*, 563 U.S. 51, 61 (2011). ........................................................................... 8

*D.S. v. City of New York*, 736 F. App'x 284, 287 (2d Cir. 2018) ................................................. 4

*Doe v. Abdulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) .......................... 19

*Doe v. City of New York,* 2013 WL 796014, at *3 (S.D.N.Y. 2013) ............................................ 18

*Dunlop v. City of New York*, 2008 WL 1970002, at *9 (S.D.N.Y. 2008).................................... 11

*Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).................................................. 19

*Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 [1978]) .................................................................. 16

*Gabriel v. City of New York*, 89 A.D.3d 982, 983 (2d Dept. 2011)............................................ 12

*Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)................................................................. 10

*Guadagni v. N.Y.C. Trans. Auth.*, 2009 WL 1910953, at * 4 (E.D.N.Y. 2009) .......................... 13

*Hernandez v. State*, 228 AD2d 902 (3d Dept. 1996) ................................................................. 14

*Hernandez v. United States*, 939 F.3d 191, 207 (2d Cir. 2019)................................................... 8

*Horn v. City of New Haven*, 2024 WL 1261421 (D. Conn. 2024)................................................. 6

*James v. Flynn*, 132 A.D.3d 1214, 1216 (3d Dept. 2015) ........................................................... 17

*Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) ...................................... 6

*Jorgensen v. County of Suffolk*, 558 F Supp 3d 51, 65 (E.D.N.Y. 2021) .................................... 14

*Kee v. City of New York,* 12 F.4th. 150, 161–62 (2d Cir. 2021) .................................................. 13

*King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997)................................................. 13

*Longo v. Ortiz*, 2016 WL 5376212, at *4 (S.D.N.Y. 2016)......................................................... 15

*Lyles v. State*, 2 A.D.3d 694, 695-696 (2d Dept. 2003)............................................................. 17

*Mayzick v. County of Nassau*, 32 F. Supp. 3d 399, 402 (E.D.N.Y. 2014).................................. 14

*McLean v. City of New York*, 12 N.Y.3d 194, 203 (2009); *Mon v. City of New York*, 78 N.Y.2d 309, 313 (1991) ........................................................................................................................ 19

*Monell v. Dept. of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). ............................... 5

*Morgan v. City of Utica*, 2021 WL 2036680, at *2 (N.D.N.Y. 2021)............................................ 4

*Morgan v. Gertz*, 166 F.3d 1307, 1310 [10th Cir. 1999] ............................................................. 11

*Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) ................................................................... 15

*Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 [1978] ...................................................................... 14

*Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008) ..................................... 8

*Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 341 (1928) ............................................................... 17

*Pierre v. The City of New York*, 860 F. App'x 14, 15 (2d Cir. 2021) ............................................ 6

*Reyes v. Faillace*, 2014 NY Slip Op 30049(U), ¶ 17 (Sup. Ct. N.Y. Cnty. 2014) ...................... 16

*Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) ............................................................ 4

*Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir. 2013) ................................................................... 3

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.
    1984) ........................................................................................................................................ 2

*Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) .................................................................. 16

*Santoro v. Town of Smithtown*, 40 A.D.3d 736, 738 (2d Dept. 2007) ......................................... 19

*Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003) ................................................................ 13

*Schultes v. Kane*, 50 AD3d 1277, 1278 (3d Dept. 2008) ............................................................ 17

*Schweitzer v. Brunstein*, 2016 WL 4203482, at *2 (E.D.N.Y. 2016). .......................................... 8

*Seltzer v. Baye*, 272 A.D.2d 263, 264-265 (1st Dept. 2000) ....................................................... 16

*Smulley v. Liberty Mut. Holding Co*., 2023 WL 2494098, at *2 (2d Cir. 2023) .......................... 10

*Spence v. City of N.Y.,* WL 4537946, at *3 (S.D.N.Y. 2022) ...................................................... 18

*Strickler v. Greene*, 527 U.S. 263, 281 (1999) ........................................................................... 11

*Strickler v. Greene,* 527 U.S. 263, 281–82 (1999); ...................................................................... 9

*Strong v. City of Syracuse*, 2020 WL 137250, at *3 (N.D.N.Y. 2020) ......................................... 4

*Suarez v. Bakalchuk*, 66 AD3d 419, 419 (1st Dept. 2009) ......................................................... 16

*Talavera v. Arbit*, 18 A.D.3d 738 (2d Dept. 2005) ....................................................................... 19

*Turley v. ISG Lackawanna, Inc*., 774 F.3d 140, 158 (2d Cir. 2014)............................................. 16

*United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001)............................................................. 9

*Valdez v. City of New York*, 18 N.Y.3d 69, 76–77 (2011) ............................................................ 12

*Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) ......................................................... 15

*Williams*, 2020 WL 3574643, at *2 .............................................................................................. 15

*Willis v. Rochester Police Dept*., 2018 WL 4637378, at *6 (W.D.N.Y. 2018) ........................... 15

*Wilson v. County of Onondaga*, 2022 WL 3141764, at *3 (N.D.N.Y. 2022)................................ 8

*Worrell v. City of N.Y.,* 2014 WL 1224257, at *13 (E.D.N.Y. 2014)............................................ 5

*Wright v. Orleans County*, 2015 WL 5316410, at *11 (W.D.N.Y. 2015) .................................... 14

*Yennard v. Boces*, 2017 U.S. Dist. LEXIS 226898, at *5 (N.D.N.Y. 2017) ................................ 19

**Rules**

Fed. R. Civ. P. 17(b) ....................................................................................................................... 3

## PRELIMINARY STATEMENT

On or about October 30, 2024, Plaintiff commenced this action alleging a host of state and federal claims claiming that he was wrongfully arrested, charged and prosecuted. Defendants Broome County and the Broome County District Attorney's Office submit this memorandum of law in support of their motion to dismiss Plaintiff Yaron Kweller's ("Plaintiff") Complaint pursuant to Fed. R. Civ. Procedure 12(b)(6). For the reasons set forth below, all claims against the County should be dismissed.

## STATEMENT OF FACTS

Plaintiff filed this action in October 2024, asserting claims against the County of Broome, the City of Binghamton, various individual prosecutors and law enforcement officers, and private individuals. The allegations include false arrest, malicious prosecution, and failure to intervene, among others. The complaint spans a wide array of grievances, but lacks specific factual allegations tying the County itself to the alleged misconduct.

Plaintiff Yaron Kweller, alleges that he was falsely accused of rape by Defendants Hailey Demkovich and Samantha Herceg following events that occurred in Binghamton, New York, on the evening of November 26 and into the early morning hours of November 27, 2021. The events unfolded primarily at Plaintiff's places of business, which include The Colonial, Stone Fox, and Dos Rios, as well as at his office on Washington Street. The accusations culminated in criminal charges, arrest, and prosecution. Plaintiff was acquitted after a jury trial in October 2023. (Doc. No. 1 at ¶ 184). Plaintiff's claims against the County of Broome and the Broome County District Attorney's Office rest on allegations of constitutional violations during his criminal investigation and prosecution. These claims include false arrest, malicious prosecution and failure to intervene, among others.

Plaintiff alleges that law enforcement did not thoroughly investigate the matter or take steps to preserve or review electronic communications belonging to Defendants Demkovich and Herceg. He further claims that exculpatory evidence—such as text messages between Defendants and others—was disregarded or destroyed. In October 2023, Plaintiff was acquitted of all charges following a jury trial. Nevertheless, Plaintiff claims that the accusations caused irreparable harm to his reputation and business interests. He asserts that the resulting media attention and community backlash led to the closure of his establishments and permanent damage to his personal and professional standing.

The investigation and prosecution were conducted under the auspices of the Broome County District Attorney's Office. Plaintiff names several individual prosecutors and investigators as defendants, alleging that they failed to adequately review evidence or pursue leads that could have exonerated him. Plaintiff highlights certain communications among the individual defendants—such as text messages—that he believes indicate a deliberate effort to manipulate evidence or obscure the truth. However, these allegations primarily focus on individual actions, with limited reference to broader policies or directives involving the County. The complaint does not specify actions taken by Broome County as a municipality, outline any direct involvement by the County itself in the events of the evening or the subsequent investigation, or articulate any policy or custom maintained by the County that directly contributed to any violation of Plaintiff's constitutional or other rights.

## ARGUMENT

### I.    STANDARD OF REVIEW ON RULE 12(B)(6) MOTION TO DISMISS

The purpose of a Rule 12(b)(6) motion to dismiss is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends to offer. *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir. 1984). In

reviewing the sufficiency of the complaint, the court accepts as true the complaint's factual allegations, and the reasonable inferences that can be drawn therefrom. *See, e.g., Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir. 2013). The court is, however, "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## II.    THE BROOME COUNTY DISTRICT ATTORNEY'S OFFICE IS NOT AN ENTITY CAPABLE OF BEING SUED

Federal courts apply state law to determine whether an entity has capacity to be sued. *See* Fed. R. Civ. P. 17(b). "Under New York law, a county is a municipal corporation capable of bringing suit and being sued." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (*citing* N.Y. Gen. Mun. Law § 2). However, subdivisions or departments of a county, including the District Attorney's Office, lack the independent legal capacity to be sued. The Complaint states that the Broome County District Attorney's Office acts as Broome County's "agent in the area of prosecution and for which [Broome County] is ultimately responsible." Compl. ¶ 11. This principle has been consistently upheld by federal and state courts alike. *Baker*, 42 F. Supp. 2d at 198 ("[s]ince the sheriff's department is merely an administrative arm of the County, and the County is the real party in interest here, the claims asserted against the Warren County Sheriff's Department are dismissed as redundant").

Because the District Attorney's Office lacks the legal capacity to be sued, all claims purportedly against it should be dismissed as a matter of law. Plaintiff's allegations, to the extent they seek to hold the District Attorney's Office liable, should properly be construed as claims against Broome County. However, for the reasons outlined throughout this memorandum, Plaintiff fails to state a plausible claim for relief against Broome County as well.

## III.    THE COMPLAINT FAILS TO MEET *MONELL* PLEADING STANDARD ON ALL OF ITS FEDERAL CAUSES OF ACTION

In *Monell v. Dept. of Soc. Serv. of the City of N. Y.*, the Supreme Court explicitly rejected the assertion that a municipality can be vicariously liable "under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. 658, 694 (1978). The Supreme Court held that municipal liability can only be imposed if the plaintiff demonstrates a constitutional injury resulting from the "execution of a government's policy or custom."  The policy or custom must be "the moving force of the constitutional violation," not merely a contributing factor. *Id.*

There also must be a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *D.S. v. City of New York*, 736 F. App'x 284, 287 (2d Cir. 2018)  (*quoting  City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  That a policy or custom *might* lead to prosecutorial misconduct "is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between, for example, the training inadequacies alleged, and the particular constitutional violation at issue." *City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985). This standard cannot be met with conclusory or boilerplate allegations of a municipal custom or policy that happen to appear in a pleading adjacent to purported constitutional violations. *Strong v. City of Syracuse*, 2020 WL 137250, at *3 (N.D.N.Y. 2020).

The closest Plaintiff comes to identifying a specific policy is the assertion that the County assigned ADA Alyssa Congdon to lead the prosecution of his case. However, this decision does not support the inference of an actionable municipal policy or custom. As stated in the Complaint, Defendant Congdon had been "practicing criminal defense for nearly a decade" (¶ 105(f)), which would reasonably suggest familiarity with foundational prosecutorial obligations such as *Brady* disclosures, *Rosario* material, *Giglio* considerations, and the duty to preserve evidence. A reasonable employer in the County's position could justifiably rely on her professional experience

to ensure compliance with these requirements. The alleged failure to provide additional remedial instruction on these well-established legal obligations falls far short of establishing a policy so likely to result in constitutional violations as to demonstrate "deliberate indifference" on the part of the County. To the extent Defendant Congdon's lack of "prosecutorial," as opposed to "criminal defense" demonstrated a "deliberate indifference" on the part of the County to the rights of criminal defendants, the Complaint acknowledges that Amanda Cronin, who "had served as a sex crimes prosecutor for a number of years … was also assigned to the instant case." ¶ 129.

In sum, Plaintiff's allegations fail to meet the stringent pleading requirements established under *Monell*. While Plaintiff broadly asserts that the County's policies, customs, or practices caused the alleged constitutional violations, the complaint lacks any specific, non-conclusory facts identifying such a policy or custom, let alone demonstrating how it served as the moving force behind the purported harm. Without a direct causal link or affirmative evidence connecting a municipal action or inaction to the alleged constitutional injury, Plaintiff's *Monell* claims cannot withstand scrutiny. Accordingly, all federal claims against the County premised on municipal liability should be dismissed.

## IV.   THE COMPLAINT'S THIRD CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiff's third cause of action seeks to impose municipal liability on the County under § 1983 for "failure to intervene" to prevent various alleged constitutional violations. The Court should dismiss this claim because Plaintiff has failed to meet the *Monell* pleading requirements to state a claim of municipal liability under § 1983, plead the requisite elements of a claim for failure to intervene, or articulate an underlying constitutional violation.

Plaintiff alleges that several individual Defendants "had opportunities to intervene on behalf of Yaron Kweller to prevent his false arrest, malicious prosecution, false imprisonment, and

deprivation of liberty without due process of law, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so." Compl. ¶ 207. Plaintiff does not allege that *the County* had any such opportunity. Nor does he attempt to identify what County policy or custom this alleged inaction was pursuant to.

To succeed on a § 1983 claim for failure to intervene, Plaintiff must demonstrate "that (1) a violation of his constitutional rights was ongoing or about to occur, (2) the defendant knew this at the time, (3) the defendant had a reasonable opportunity to intervene to prevent harm to the plaintiff, and (4) the defendant failed to take reasonable steps to intervene." *Horn v. City of New Haven*, 2024 WL 1261421 (D. Conn. 2024) (*citing Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). A plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation. *See Pierre v. The City of New York*, 860 F. App'x 14, 15 (2d Cir. 2021).

While Plaintiff broadly alleges that individual defendants failed to intervene to prevent purported constitutional violations, the Complaint is devoid of any factual allegations establishing that the County or its employees had a realistic opportunity to intervene. Plaintiff claims that various constitutional violations occurred as a result of prosecutorial actions, but fails to articulate how the County, as a municipal entity, was positioned to prevent or remedy those violations in real time.

For example, Plaintiff does not identify any County officials who were contemporaneously aware of ongoing violations or had the capacity to take corrective action during critical moments. Instead, Plaintiff's allegations regarding the County's role are conclusory and speculative, providing no indication that the County was involved in or aware of the specific events that

allegedly caused harm. *See* Compl. ¶¶ 105–112. Without concrete allegations linking the County to a missed opportunity to intervene, Plaintiff's claim cannot survive.

Here, because there is no underlying constitutional violation to support Plaintiff's failure to intervene claim against the County, and because Plaintiff neglects to even plead the elements (or the facts) necessary to state such a claim, let alone what County policy or custom the alleged failure to intervene would be pursuant to, Plaintiff's claim for failure to intervene against the County should be dismissed.

## V.    PLAINTIFF'S FIFTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiff's Fifth Cause of Action asserts an unspecified *Monell* claim for "the Actions and Omissions of the Broome County DA's Office and its employees." Compl. at p. 58. The Complaint asserts that the County is liable for violating a grab-bag of Plaintiff's constitutional due process rights, including the withholding of *Brady*, *Rosario*, and *Giglio* material, and pursuing charges without probable cause. *Id.* ¶ 225–35. The Complaint attempts to cast the decision to put Defendant Congdon in charge of the prosecution of Plaintiff as a policy or custom to fit Plaintiff's grievance into the framework of *Monell* by noting that the County "had final authority with respect to the training, supervision, discipline, and overall management of personnel employed by or assigned to the [County] with respect to all of the office's functions, including the investigation and prosecution of criminal cases." Compl. ¶ 219. While it may be fair to characterize the County's decision to put Defendant Congdon in charge of Plaintiff's prosecution as one facet of "overall management of personnel," no such single decision can be fairly characterized as a policy or custom. Such a conclusion would run exactly to the contrary of *Monell*, and largely vitiate its precedential function.

Further, a § 1983 claim against a municipality "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This is because the municipality's failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 61. Therefore, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012)) (quoting *Connick*, 563 U.S. at 62). The Complaint does not attempt to allege that County policymakers failed to act in the face of other "actual or constructive notice." *Hernandez v. United States*, 939 F.3d 191, 207 (2d Cir. 2019) (quoting *Connick*, 563 U.S. at 61).

Further, "there is no constitutional right to an adequate investigation," and allegations that prosecutors or law enforcement failed to pursue specific investigative paths, such as obtaining certain warrants, do not constitute constitutional violations under § 1983. *Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008); *Schweitzer v. Brunstein*, 2016 WL 4203482, at *2 (E.D.N.Y. 2016). In *Wilson v. County of Onondaga*, 2022 WL 3141764, at *3 (N.D.N.Y. 2022), the plaintiff alleged that the county systematically failed to train its employees in conducting constitutionally adequate investigations, including compliance with *Brady* obligations, and that these failures led to fabricated evidence. However, the court dismissed the claims, finding the plaintiff failed to allege specific, non-conclusory facts tying the purported misconduct to any official policy or custom, as required under *Monell*. Similarly, Plaintiff's dissatisfaction with the investigatory choices of the District Attorney's Office—such as the failure to pursue certain

warrants or evidence more aggressively—does not amount to a constitutional deprivation, let alone establish municipal liability under *Monell*.

In addition to the fact that Plaintiff has not identified any policy or custom pursuant to which these purported violations were made pursuant to, Plaintiff has failed to articulate any actionable violations of his constitutional rights having occurred. Plaintiff's acquittal fundamentally undermines his claims of constitutional violations, including alleged *Brady* violations and malicious prosecution, because no prejudice resulted. The Complaint alleges that the County committed a due process violation by "withholding material exculpatory and impeachment evidence." Compl. ¶ 201. However, the purpose of *Brady v. Maryland*, and its progeny is to ensure a fair trial by requiring the disclosure of evidence material to guilt or innocence. 373 U.S. 83 (1963); *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). "[T]he Supreme Court and the Second Circuit have indicated that a criminal defendant's *Brady* right to disclosure of exculpatory evidence is violated only in the case of prejudice to the ultimate conviction of the criminal defendant." *See Cannistraci v. Kirsopp*, 2012 WL 1801733, at *17 (N.D.N.Y. 2012) (*citing Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *also citing Coppa*, 267 F.3d at 140)). Here, Plaintiff's acquittal demonstrates that he was afforded due process and a fair trial, rendering his allegations of suppressed evidence and malicious prosecution baseless. Without any resulting prejudice, these claims cannot survive.

## VI.    PLAINTIFF'S SEVENTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiff's seventh cause of action alleges a § 1983 conspiracy against the County. "[T]o survive a motion to dismiss on [a] §1983 conspiracy claim, [a Plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Smulley v. Liberty Mut. Holding Co*., 2023 WL 2494098, at *2 (2d Cir. 2023) (*citing Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)). "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (citations and quotation marks omitted).

The Complaint's allegations concerning the retrieval and disclosure of cell phone data from Defendants Herzog and Demkovich undermine his claim of a conspiracy involving the District Attorney's Office.  In ¶¶ 111–122 of the Complaint, Plaintiff acknowledges that efforts were made to retrieve the data, but were frustrated by Herzog and Demkovich's refusals to cooperate and, allegedly, by Defendant Wagner's failure to comply with instructions to collect evidence. These assertions directly contradict Plaintiff's claim that there was an agreement that involved the County agreeing with any party to suppress evidence. To the contrary, they instead suggest active, albeit allegedly deficient, attempts to obtain and preserve it. The Complaint's subsequent allegation that there were delays in the disclosure of this evidence are attributed to Defendant Congdon's lack of experience or competence, not to a nefarious coordination by the County with either Defendants Herzog and Demkovich, the City Defendants, or any other parties.

Plaintiff's conclusory allegation that all Defendants "agreed" to "act in concert" are insufficient. *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 728 (S.D.N.Y. 2012). Absent specific facts to suggest that the County had a meeting of the minds with another party to cause an unconstitutional injury, Plaintiff's claim should be dismissed. *See Brook v. Ruotolo*, 2024 WL 3912831, at *3 (2d Cir. 2024) (*citing Gallop*, 642 F.3d at 369).

To the extent Plaintiff alleges that a conspiracy existed within the County, "[t]he intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single

corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Dunlop v. City of New York*, 2008 WL 1970002, at *9 (S.D.N.Y. 2008) (quotation marks and citation omitted). Furthermore, "it is well-settled that the doctrine bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity," including the County as an entity and its District Attorney's Office, "at least where the complaint fails to allege that the various entities were effectively acting as separate entities in carrying out the alleged conspiracy." *Id.* (citations omitted). Thus, the intracorporate conspiracy doctrine applies when a complaint "clearly depict[s]" a conspiracy "as the product of a single corporation acting exclusively through its own directors, officers, and employees." *Id.* at *10 (quotation marks and citation omitted).

Plaintiff has also failed to state a viable underlying constitutional violation, a necessary predicate to stating a claim for a § 1983 conspiracy. *Bertuglia*, 839 F. Supp. 2d at 728. As previously elaborated (*see supra*, p. 9), Plaintiff's acquittal extinguishes his Fourth and Fourteenth Amendment claims. Absent a constitutional violation "so serious there is a reasonable probability that the suppressed evidence would have produced a different verdict," Plaintiff's claims should not survive a motion to dismiss. *See Strickler*, 527 U.S. at 281. "When a criminal defendant is acquitted notwithstanding an alleged *Brady* violation, the criminal defendant has not suffered prejudice." *Cannistraci*, 2012 WL 1801733, at *17; *see also Ambrose v. City of New York*, 623 F.Supp.2d 454, 469 (S.D.N.Y. 2009) ("[m]ost courts that have directly considered the question have held that an acquittal extinguishes a Section 1983 plaintiff's due process claim for nondisclosure of Brady material") (*citing Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999)); *see also Carvajal v. Dominguez,* 542 F.3d 561, 570 (7th Cir. 2008) ("[W]e are doubtful ... that an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation").

11

Given the foregoing, Plaintiff has not made any non-conclusory allegations sufficient to support a plausible claim that any of these parties acted in concert or had an agreement to violate his constitutional rights. As such, Plaintiff's conspiracy claims should be dismissed.

## VII.   STATE LAW CLAIMS ARE BARRED BY THE DOCTRINE OF GOVERNMENT IMMUNITY AND THE SPECIAL DUTY RULE

All of the state law claims in the Complaint should be dismissed because they are based on allegations of negligence related to the County's discretionary functions, which are immune from liability under New York law. Governmental actions, such as hiring decisions and investigative choices, are discretionary when they require judgment or policy decisions and are not subject to liability. *See Valdez v. City of New York*, 18 N.Y.3d 69, 76–77 (2011). Discretionary decisions, such as whether to obtain a warrant for evidence, are precisely the type of conduct protected under the governmental immunity doctrine. *See Gabriel v. City of New York*, 89 A.D.3d 982, 983 (2d Dept. 2011).

Even if the actions were ministerial, the Plaintiff would be required to plead a "special duty" owed to him by the County, which the Complaint does not contain an attempt to do. *See Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017). A special duty would require a statutory obligation, voluntary assumption of a duty creating reliance, or control over a dangerous condition. *See Maldovan v. Cnty. of Erie*, 39 N.Y.3d 166, 171 (2022).

Thus, whether the Court finds that the actions of the County with respect to the facts and allegations in the Complaint are discretionary or ministerial, all of Plaintiff's New York State Law Causes of Action should be dismissed.

## VIII.  PLAINTIFF'S EIGHTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiff's eighth cause of action asserts claims for false arrest under New York law against the County. "To state a claim for false arrest or false imprisonment under New York law, a plaintiff

must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." *Guadagni v. N.Y.C. Trans. Auth.*, 2009 WL 1910953, at * 4 (E.D.N.Y. 2009) (citing *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003)). "To prove intent, the defendant must have either (a) confined or intended to confine the plaintiff or (b) affirmatively procured or instigated the plaintiffs' arrest." *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997).

"To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Kee v. City of New York,* 12 F.4th. 150, 161–62 (2d Cir. 2021) (internal citations and punctuation omitted). The Complaint fails to satisfy these elements here.

A grand jury's indictment creates a presumption of probable cause that can only be rebutted by a showing that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (citations and quotation marks omitted). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment," and that burden cannot be met by "mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Id*. at 73 (citations and quotation marks omitted).

Thus, even if Plaintiff's false arrest claims were supported by sufficient factual detail, they are barred by the indictment returned by the grand jury, which "establishes the requisite probable cause to extinguish" Plaintiff's state claims based on false arrest. *Wright v. Orleans County*, 2015

13

WL 5316410, at *11 (W.D.N.Y. 2015), Report and Recommendation adopted, 2015 WL 13660397 (W.D.N.Y. 2015). The Complaint fails to allege any facts tending to establish that the indictment was secured through bad faith or perjury in a manner that could rebut the "presumption of probable cause" that arises from the indictment. *Id.*

"To prove actual malice, the plaintiff must show that the defendant 'commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *McGee v. Dunn*, 940 F. Supp. 2d 93, 102 (S.D.N.Y. 2013) (*quoting Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978)]). Where a plaintiff alleges only "poor negligence in conducting an investigation, "[t]hat is not enough to support a malicious-prosecution claim." *Williams*, 214 F. Supp. 3d at 201. In contrast, here what "few allegations to be found in the Complaint are short, conclusory, and almost entirely devoid of appreciable factual content." *Mayzick v. County of Nassau*, 32 F. Supp. 3d 399, 402 (E.D.N.Y. 2014) (granting motion to dismiss false arrest claim). Plaintiff alleges that in or around February 2022, Defendant Congdon "decided that Plaintiff, Leor Kweller, and Jordan Rindgen should be arrested and charged in local court." Compl. ¶ 130.

To the extent that Plaintiff's false arrest claims are premised on any allegations that the County failed to pursue additional investigative measures, such as securing warrants for Plaintiff's DNA or the victims' phones, Plaintiff has no cognizable claim for a negligent investigation. *See, e.g., Hernandez v. State*, 228 AD2d 902 (3d Dept. 1996) ("New York does not recognize an action alleging negligent investigation or prosecution of a crime"); *Bell v. Miller*, 164 A.D.3d 728, 729 (2d Dept. 2018), *lv denied* 32 N.Y.3d 911 (2018); *Jorgensen v. County of Suffolk*, 558 F Supp 3d 51, 65 (E.D.N.Y. 2021).

The Complaint's conclusory allegations also fail to rebut the presumption of probable cause, as they do not plausibly suggest that the indictment against Plaintiff was procured through misconduct or bad faith. Even construed liberally, the claims against the County allege only incompetence, which is insufficient for purposes of a malicious prosecution claim. *See, e.g., Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) (malicious prosecution claim cannot be based on "series of negligent acts by government officials.")

While the Complaint also alleges in conclusory fashion that the County fabricated evidence and withheld exculpatory evidence, Plaintiff fails, as noted above, to meet basic pleading standards by corroborating these serious allegations with any supporting facts, such as what evidence was fabricated or withheld, and who specifically from the County engaged in such misconduct. *See Williams*, 2020 WL 3574643, at *2 (citing *Iqbal*, 556 U.S. at 679); *see Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) ("Plaintiff engages in group pleading, lumping the three defendants together without pleading facts demonstrating what each did that makes him liable for malicious prosecution. ... Accordingly, the [a]mended [c]omplaint does not sufficiently plead a malicious prosecution claim."); *Willis v. Rochester Police Dept.*, 2018 WL 4637378, at *6 (W.D.N.Y. 2018) (dismissing malicious prosecution claim for failure to state a claim where the plaintiff only made "passing reference to 'false statements of facts' ... but fail[ed] to provide any further, or factual, context for that allegation"); *Longo v. Ortiz*, 2016 WL 5376212, at *4 (S.D.N.Y. 2016) ("Plaintiff's allegations as to false or fabricated information are entirely conclusory and generalized and do not contain the specificity required to state a claim for malicious prosecution.") (citations omitted).

## IX.   PLAINTIFF'S NINTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiff's ninth cause of action alleges that all Defendants are liable for intentional, reckless or negligent infliction of emotional distress under New York law.

### A.    Intentional Infliction of Emotional Distress

The standard in New York for the intentional infliction of emotional distress is quite high. *Reyes v. Faillace*, 2014 NY Slip Op 30049(U), ¶ 17 (Sup. Ct. N.Y. Cnty. 2014). "[A] plaintiff must establish: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Suarez v. Bakalchuk*, 66 AD3d 419, 419 (1st Dept. 2009); *Seltzer v. Baye*, 272 A.D.2d 263, 264-265 (1st Dept. 2000).

An intentional infliction of emotional distress claim is "highly disfavored" under New York law and "is to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc*., 774 F.3d 140, 158 (2d Cir. 2014) (citations omitted). "The New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.'" *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (1978)). "All four [New York] Appellate Division courts have answered the question and held that it cannot." *Id*.

Here, Plaintiff's conclusory allegations, even if found true, are not sufficiently outrageous in character, and so extreme in degree, to warrant such a finding. Plaintiff has made no allegations showing a longstanding campaign of deliberate, systematic and malicious harassment of the Plaintiff on the part of the County. Therefore, Plaintiff's cause of action for intentional infliction of emotional distress should be dismissed.

### B.    Negligent Infliction of Emotional Distress

A claim for negligent infliction of emotional distress cannot stand on generalized allegations of negligence owed to the public at large as "'[p]roof of negligence in the air, so to speak, will not do.'" *Sheila C. v. Povich*, 11 A.D.3d 120, 130 (1st Dept. 2004) (*quoting Palsgraf*

*v. Long Is. R.R. Co.*, 248 NY 339, 341 (1928)). "A cause of action for negligent infliction of emotional distress generally requires [the] plaintiff 'to show a breach of a duty owed to [him or] her which unreasonably endangered [his or] her physical safety, or caused [him or] her to fear for [his or] her own safety.' " *A.M.P. v. Benjamin*, 201 A.D.3d 50, 57 (3d Dept. 2008) (citing *Schultes v. Kane*, 50 A.D.3d 1277, 1278 (3d Dept. 2008); *see also Brown v. New York City Health & Hosps. Corp.*, 225 A.D.2d 36, 44 (2d Dept. 1996) ("Plaintiff must establish that he was within the zone of danger and suffered emotional distress as a result of fearing for his own safety").

The Complaint fails to allege any facts that establish a duty owed specifically to him by the County, let alone facts demonstrating that the County or caused him to fear for his own physical safety. Moreover, Plaintiff fails to allege any contemporaneous physical danger or harm that would support a claim of emotional distress, as required under New York law.  The conclusory allegations in the ninth cause of action, unsupported by any particularized facts, fall far short of and are insufficient to withstand a motion to dismiss. *See generally*, *James v. Flynn*, 132 A.D.3d 1214, 1216 (3d Dept. 2015). Accordingly, Plaintiff's negligent infliction of emotional distress claim should be dismissed.

## X.     PLAINTIFF'S TENTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiff's tenth cause of action alleges that the County violated Article I §§ 6 and 12 of the New York State Constitution. New York courts have repeatedly found that Constitutional claims need not be recognized where it is "neither necessary nor appropriate to ensure the full realization of [plaintiff s] rights" to do so because "the alleged wrongs could have been redressed by an alternative remedy, namely, timely interposed common-law tort claims." *See e.g. Lyles v. State*, 2 A.D.3d 694, 695–696 (2d Dept. 2003), aff'd, 3 N.Y.3d 396 (2004). The same is true where " 'the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the

U.S. Constitution.' " *Buari*, 530 F.Supp.3d at 409–10 (*quoting Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 [E.D.N.Y. 2018] [citing cases]).

Plaintiff's Article I § 6 claim is duplicative of the § 1983 Fourteenth Amendment due process claim. It bears noting that that claim was not brought against the County. The Complaint's cursory recitation of this cause of action does not shed any light as to what Plaintiff alleges makes the County liable in one instance and not the other. The County posits that it is due to a lack of basis for such claim, both under § 1983 and New York State Law. Plaintiff's Article I § 12 claim duplicates the common law tort of false arrest. The County respectfully directs to Court to its arguments related to that claim found herein. *See supra*, p. 12–15.

Because Plaintiff has an adequate alternative remedy at law for these claims, these claims should be dismissed. Alternatively, each of these state constitutional claims fails to state a cause of action for the reasons stated above.

## XI.    PLAINTIFF'S ELEVENTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY

In the eleventh cause of action, the Complaint alleges that the County is liable under the doctrine of *respondeat superior* for the actions of its employees. "Respondeat superior is not an independent cause of action, but a theory of liability that must attach to an underlying claim." *Spence v. City of N.Y.,* WL 4537946, at *3 (S.D.N.Y. 2022); *see Baram v. Doe*, 2024 WL 232319, at *10 (S.D.N.Y. 2024). "Under New York law, an employer may be found liable for the conduct of its employee under theories of negligent hiring, retention, or supervision." *Doe v. City of New York,* 2013 WL 796014, at *3 (S.D.N.Y. 2013). "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which

caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (per curiam)." [W]here an employee acts within the scope of his or her employment, the employer cannot be held liable for a claim of negligent hiring, retention, or training." *Barnville v. Mimosa Cafe*, 2014 WL 3582878, at *2 (S.D.N.Y. 2014) (citing *Talavera v. Arbit*, 18 A.D.3d 738 (2d Dept. 2005)).

Plaintiff's *respondeat superior* claim against the County fails for the simple fact that Plaintiff has not established any underlying tort committed by any County employee for which the County could be held liable. There are also no facts sufficient to plausibly establish that the County was on prior notice of any specific acts of any employee that would suggest the propensity for future misconduct. *See Yennard v. Boces*, 2017 U.S. Dist. LEXIS 226898, at *5 (N.D.N.Y. 2017); *Doe v. Abdulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014). Finally, the County's hiring, retention and supervision of its employees constitutes a discretionary act for which it cannot be held liable in negligence under the doctrine of government immunity. *See, e.g., McLean v. City of New York*, 12 N.Y.3d 194, 203 (2009); *Mon v. City of New York*, 78 N.Y.2d 309, 313 (1991); *Santoro v. Town of Smithtown*, 40 A.D.3d 736, 738 (2d Dept. 2007).

## CONCLUSION

For the foregoing reasons, the County respectfully requests an order dismissing the complaint in its entirety with prejudice.

DATED:  January 24, 2025                Respectfully submitted,

The Wladis Law Firm, P.C.

*s/Christopher J. Baiamonte*
Christopher J. Baiamonte, Esq. (702528)
*s/Timothy J. Lambrecht*
Timothy J. Lambrecht (510390)

*Attorneys for Defendants*
*The County of Broome and*
*Broome County District Attorney's Office*
Office & P. O. Address
P.O. Box 245
Syracuse, NY 13214
(315) 445-1700 (Office)
E-mail:  cbaiamonte@wladislawfirm.com
            tlambrecht@wladislawfirm.com


TO:  All Counsel of Record via CM/ECF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2025, I caused the foregoing document to be filed electronically with the Clerk of the District Court, Northern District of New York, using the CM/ECF system, which sent automatic and contemporaneous notification of such filing to all counsel who have made an appearance in this action.

<u>s/Christopher J. Baiamonte</u>
Christopher J. Baiamonte, Esq. (702528)