UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
YARON KWELLER,

                Plaintiff,

      -against-

THE COUNTY OF BROOME, THE CITY OF
BINGHAMTON, THE BROOME COUNTY
DISTRICT ATTORNEY'S OFFICE, DISTRICT
ATTORNEY MICHAEL A. KORCHAK, CHIEF
ASSISTANT DISTRICT ATTORNEY MARK
LOUGHRAN, ASSISTANT DISTRICT ATTORNEY
ALYSSA CONGDON, ASSISTANT DISTRICT
ATTORNEY AMANDA CRONIN, DISTRICT
ATTORNEY INVESTIGATOR JEFF J. WAGNER,
BINGHAMTON POLICE DEPARTMENT CHIEF
JOSEPH ZIKUSKI, BINGHAMTON POLICE
DEPARTMENT CAPTAIN CORY MINOR,
BINGHAMTON POLICE DEPARTMENT
INVESTIGATOR AMANDA MILLER, all in their
individual capacities, and JOHN DOES 1-10,
representing Broome County District Attorney's Office
and Police Department Employees Whose Names Are
Currently Unknown, HAILEY DEMKOVICH, and
SAMANTHA HERCEG.

                Defendants.
--------------------------------------------------------X

Case No. 3:24-CV-1328 (DNH/ML)


## DEFENDANT ALYSSA CONGDON'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

**HACKER MURPHY LLP**
James C. Knox, Esq.
Bar Roll No. 517109
Alishah E. Bhimani
Bar Roll No. 704214
28 Second Street
Troy, NY 12180
*Attorneys for Defendant Alyssa Congdon*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii-iv

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS ........................................................................................................2

STANDARD OF REVIEW .......................................................................................................2

ARGUMENT ............................................................................................................................3

    I.    PLAINTIFF'S CLAIMS ARE BARRED BY ABSOLUTE PROSECUTORIAL
         IMMUNITY........................................................................................................3

         A.    Defendant's Decision to Pursue Criminal Charges
                Following Her Evaluation of the Evidence Gathered Is Protected
                by Absolute Immunity......................................................................................6

         B.    Defendant's Conduct During Grand Jury Presentation
                Is Protected by Absolute Immunity...................................................................8

         C.    Defendant's Alleged Withholding of Exculpatory Evidence
                From Plaintiff's Criminal Defense Counsel Is Protected by Absolute
                Immunity ........................................................................................................10

         D.    Defendant's Alleged Preparation of Witnesses Is Protected by Absolute
                Immunity ........................................................................................................11

    II.    TO THE EXTENT ANY OF DEFENDANT'S CONDUCT IS NOT
         ENCOMPASSED BY ABSOLUTE IMMUNITY, QUALIFIED IMMUNITY
         BARS ANY AND ALL REMAINING CLAIMS BY PLAINTIFF ...........................12

    III.    PLAINTIFF'S FIRST AND EIGHTH CAUSES OF ACTIONS
         MUST BE DISMISSED .......................................................................................15

         A.    False Arrest Claim ..........................................................................................16

         B.    Malicious Prosecution Claim ..........................................................................18

    IV.    PLAINTIFF'S SECOND AND TENTH CAUSES OF ACTION
         MUST BE DISMISSED .......................................................................................19

    V.    PLAINTIFF'S THIRD CAUSE OF ACTION MUST BE DISMISSED ..................20

    VI.    PLAINTIFF'S FIFTH CAUSE OF ACTION MUST BE DISMISSED ....................21

    VII.    PLAINTIFF'S SEVENTH CAUSE OF ACTION MUST BE DISMISSED .............21

    VIII.    PLAINTIFF'S NINTH CAUSE OF ACTION MUST BE DISMISSED...................23

CONCLUSION.........................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abdul-Aziz v. City of New York,
  56 A.D.3d 291 (1st Dept 2008) ................................................................18
Ahmed v. Gelfand,
  160 F.Supp.2d 408 (E.D.N.Y. 2001) .........................................................22
Arzeno v. Mack,
  39 A.D.3d 341 (1st Dept 2007) ................................................................15
Ashcroft v. Iqbal,
  556 U.S. 662 (2009). .............................................................................3,9
ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007) ......................................................................3
Barr v. Abrams,
  810 F.2d 358 (2d Cir. 1987) ....................................................................5
Barret v. U.S.
  798 F.2d 565 (2d Cir. 1986) ..................................................................4-5
Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 570 (2007) .....................................................................2-3
Berie v. Stevenson,
  5:18-cv-00119 (BKS/TWD), 2019 WL 1017317 *5 (N.D.N.Y. March 4, 2019) ......................16
Brady v. Maryland,
  373 U.S. 83 (1963) .............................................................................5,11
Buckley v. Fitzsimmons,
  509 U.S. 259 (1993) ...........................................................................4,6-8
Burns v. City of New York,
  181 A.D.3d 554 (2d Dept. 2020) ............................................................15-16
Colon v. City of New York,
  60 N.Y.2d 78 (N.Y. 1983) .......................................................................18
Curley v. Village of Suffern,
  268 F.3d 65 (2d Cir. 2001) .....................................................................16
Davis-Guider v. City of Troy,
  No. 23-589, 2024 WL 5199294 (2d Cir. Dec. 23, 2024) ..................................18
Dory v. Ryan,
  25 F.3d 81 (2d Cir. 1994) .....................................................................5,10
Elias v. Rolling Stone LLC,
  872 F.3d 97 (2d Cir. 2017) ......................................................................2
Girard v. 94th Street and Fifth Ave. Corp.,
  530 F.2d 66 (2d Cir. 1976) ......................................................................22
Harlow v. Fitzgerald,
  457 U.S. 800 (1992) ..............................................................................13
Herrmann v. Moore,
  576 F.2d 453 (2d Cir. 1978) .....................................................................22
Hill v. City of New York,
  45 F.3d 653 (2d Cir. 1995) .....................................................................5,10

Hunter v. Bryant,
  502 U.S. 224 (1991) ........................................................................................13
Imbler v. Pachtman,
  424 U.S. 409 (1976) ...............................................................3-5,7, 9-10, 12
Johnson v. Town of Colonie,
  102 A.D.2d 925 (3d Dept 1984) ................................................... 3-4, 18
Kalina v. Fletcher,
  522 U.S. 118 (1997) .....................................................................................4,12
Kanciper v. Lato,
  989 F. Supp. 2d 216, 233 (E.D.N.Y. 2013) ..........................................18
Komatsu v. City of New York,
  No. 20-cv-7046 (ER), 2021 WL 3038498 (S.D.N.Y. July 16, 2021)....................20
Koulina v. City of New York,
  06-cv-11356(SHS) 2009 WL 210727 (S.D.N.Y. 2009) ...................19
Lawlor v. Connelly,
  471 Fed. Appx. 64 (2d Cir. 2012)............................................... 4,9-10
Lennon v. Miller,
  66 F.3d 416 (2d Cir. 1995) ...................................................................13
Loria v. Gorman,
  306 F.3d 1271 (2d Cir. 2002) ..............................................................16
Martinez v. Simonetti,
  202 F.3d 625 (2d Cir. 2000) ................................................................16
Mitchell v. Forsyth,
  472 U.S. 511 (1985) ...............................................................................13
Newton v. City of New York,
  566 F.Supp.2d 256 (S.D.N.Y. 2008) .....................................................7
Pani v. Empire Blue Cross Blue Shield,
  152 F.3d 67 (2d Cir. 1998) ...................................................................15
People v. Lancaster,
  69 N.Y.2d 20 (Ct App. 1986) ..............................................................19
Pinaud v. County of Suffolk,
  52 F.3d 1139 (2d Cir. 1995) ............................................................4,8,18
Pinter v. City of New York,
  448 Fed. Appx. 99 (2d Cir. 2011)........................................................21
Sanders v. City of Saratoga Springs,
  691 F. Supp. 3d 548 (N.D.N.Y. 2023)................................................22
Saucier v. Katz,
  533 U.S. 194 (2001) ...............................................................................13
Schnitter v. City of Rochester,
  931 F.Supp.2d 469 (W.D.N.Y. 2013)....................................................7
Schultes v. Kane,
  50 A.D.3d 1277 (3d Dept 2008) ..........................................................23
Stein v. Disciplinary Bd. of Supreme Court of New Mexico,
  520 F.3d 1183 (10th Cir. 2008) .............................................................7
Thompson v. Kline,
  504 F. Supp. 3d 200 (W.D.N.Y. 2020)................................................22

Van de Kamp v. Goldstein,
 555 U.S. 335 (2009) .................................................................................................5, 12
Warney v. Monroe County,
 587 F.3d 113 (2d Cir. 2009) ......................................................................................5,10
Wyllie v. District Atty. of County of Kings,
 2 A.D.3d 714 (2d Dept 2003) .......................................................................................23
Ying Jing Gan v. City of New York,
 996 F.2d 522 (2d Cir. 1993) ...........................................................................................4
Ying Li v. City of New York,
 246 F.Supp.3d 578 (E.D.N.Y. 2017) ............................................................................18

**Rules**

Fed. R. Civ. P. 12(b) ..........................................................................................................2

## PRELIMINARY STATEMENT

Defendant Alyssa Congdon (hereinafter "Ms. Congdon" or "defendant") moves pursuant to Fed. R. Civ. Pro. 12 (b)(6) to dismiss plaintiff Yaron Kweller (hereinafter "plaintiff") Complaint (Dkt. 1) for failure to state a claim upon which relief may be granted. The complaint fails to sufficiently plead that defendant committed any constitutional violations against plaintiff. Nor does it state a claim for any of the state law claims asserted. Further, as a prosecutor, defendant is protected by both absolute and qualified immunity, which shield her from all claims in this action.

Plaintiff's lawsuit follows an unsuccessful criminal prosecution in which, following allegations of sexual crimes by defendants Samantha Herceg and Hailey Demkovich (hereinafter collectively referred to as the "criminal complainants" or "complaining witnesses"), he was charged by indictment with various offenses arising out of an alleged sexual assault he perpetrated along with two other men, his brother Leor Kweller and Jordan Rindgen. Ultimately, only plaintiff and Mr. Rindgen were brought to trial, and both were acquitted. Plaintiff followed his acquittal with this lawsuit, which reasons from the dubious premise that, if the jury acquitted him, he has been proven to have not done the things he was accused of doing (ignoring that the jury may have simply believed that the burden of beyond a reasonable doubt had not been met). Reasoning therefrom, he now argues that every act taken along the way – the criminal investigation, his charging and arrest, his indictment, and his trial – were all part of an unconstitutional miscarriage of justice orchestrated by the named defendants, including Ms. Congdon.

Under the theory that he was wrongfully suspected, investigated, charged, indicted and tried, plaintiff alleges variously that defendant is liable for false arrest and malicious prosecution,

failing to intervene to prevent said arrest and prosecution, conspiring with other defendants to cause such arrest and prosecution, and, as a result, intentionally or negligently inflicting emotional distress upon him.

Even accepting, as defendant must at this stage, everything plaintiff contends in his complaint as fact, every cause of action alleged by plaintiff is subject to dismissal under the doctrine of prosecutorial immunity. Prosecutorial immunity protects public servants for doing their jobs, and the principle allows that prosecutors may do that job imperfectly, yet still be protected. The protection of prosecutorial immunity does not depend on whether the prosecutor is a skilled prosecutor or an inept one. Were that the case, anytime a criminal defendant was acquitted, there would be litigation over whether a prosecutor had done the job properly. Prosecutorial immunity exists to ensure that prosecutors may pursue cases without fear that every failure to secure a conviction will mean a lawsuit. As a result of that immunity, no viable claims lie under the facts stated in plaintiff's complaint and, accordingly, it should be dismissed in its entirety.

## STATEMENT OF FACTS

For purposes of defendant's motion to dismiss, defendant accepts, *arguendo*, the factual allegations set forth in plaintiff's complaint.

## STANDARD OF REVIEW

On a motion to dismiss under F.R.C.P. 12(b)(6), the Court must take "all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017). A motion to dismiss pursuant to Rule 12(b)(6) does not lie if a plaintiff failed to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also

Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this respect, to survive dismissal, a plaintiff need only "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 440 U.S. at 555). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible" entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. at 679-80.

As discussed below, plaintiff has not met the requisite standard as to any claim and, therefore, the complaint must be dismissed in its entirety.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY.

As an Assistant District Attorney in Broome County District Attorney's Office (hereinafter "BCDAO") during the events referenced in the Complaint, defendant is protected by absolute prosecutorial immunity. All claims against her should accordingly be dismissed.

It is well established that prosecutors are absolutely immune from liability for their conduct in "initiating a prosecution and presenting the State's case" where that conduct is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 431 (1976); see Johnson v. Town of Colonie, 102 A.D. 925, 925 (3d Dept 1984) ("Actions performed by the prosecutor which are associated with the prosecutorial phase of the

criminal process are deemed quasi-judicial in nature and invoke the doctrine of absolute immunity to bar civil liability for such action, even if it be assumed that such actions were done maliciously."); see also Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (holding that the "acts undertaken by a prosecutor for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."). Prosecutorial immunity "encompasses not only their conduct of trials but all of their activities that can be fairly characterized as closely associated with the conduct of litigation or potential litigation." See Barret v. U.S. 798 F.2d 565, 571-72 (2d Cir. 1986).

Critically, "the extent of the immunity always depends upon the nature of the activity in question and not upon how wrongly particular actors may have performed that activity in a specific instance." Pinaud v. County of Suffolk, 52 F.3d 1139, 1150 (2d Cir. 1995). This includes deciding what charges to bring against a defendant (see Ying Jing Gan v. City of New York, 996 F.2d 522, 530 [2d Cir. 1993]); "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made" (Buckley, 509 U.S. at 273); the presentation of evidence to a grand jury to initiate a prosecution (see Barret, 789 F.2d at 571-72); the preparation of witnesses and evidence for trial (see Kalina v. Fletcher, 522 U.S. 118, 126-27 [1997]); and even the presentation of perjured testimony (see Imbler, 424 U.S. 409).

Furthermore, it is well settled in this Circuit and in New York State that a district attorney has absolute immunity from a malicious prosecution claim. See Pinaud, 52 F.3d at 1149; Johnson, 102 A.D.2d at 925. The doctrine is quite broad. The law is clear that a prosecutor's failure to disclose exculpatory material is protected by absolute immunity. See Lawlor v. Connelly, 471 Fed. Appx. 64, 65 (2d Cir. 2012) (holding that the Second Circuit has repeatedly

held that a prosecutor is immune from liability under § 1983 for withholding exculpatory evidence from a grand jury); Warney v. Monroe County, 587 F.3d 113, 125 (2d Cir. 2009)("if the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated Brady v. Maryland, 373 U.S. 83 [1963], but they would be absolutely immune from personal liability"); Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995); Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994). Additionally, absolute immunity attaches to conspiracies to present false evidence at trial and in grand jury settings. See Dory, 25 F.3d at 83.

The Supreme Court recognized that "[prosecutorial] immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," but "the ultimate fairness of the operation of the [criminal justice] system itself could be weakened by subjecting prosecutors to § 1983 liability." Imbler, 424 U.S. at 425-26. Public policy militates that a prosecutor's vigorous and fearless performance of her duties is not stymied by weighing the consequences of each decision in terms of her own potential liability. Id. Otherwise, prosecutors "might hesitate to bring forward some witnesses or documents for fear that the proof might turn out to be false, subjecting them to liability." Barret v. U.S. 789 F.2d at 572 (internal citations and quotations omitted).

Absolute immunity is limited to instances where a prosecutor is acting as "an officer of the court" and does not attach when a prosecutor is engaging in other work, such as investigative or administrative tasks. See Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009). In such a case, however, prosecutors remain protected by the shield of qualified immunity. Id. Similarly, prosecutors need only rely on qualified immunity when they "act without a colorable claim of authority" or "proceed in the clear absence of jurisdiction." Barr v. Abrams, 810 F.2d 358, 361 (2d Cir. 1987).

Preliminarily, it is important to note that this complaint is devoid of any allegation that defendant acted outside her role as an advocate of the State. See Buckley 509 U.S. at 273. On the contrary, plaintiff expends much ink complaining that defendant performed prosecutorial duties but without the requisite guidance or knowledge as to how to handle the criminal proceedings brought against him. Dkt. 1 at ¶¶ 104-109, 117-133, 150-159, 166. In short, plaintiff's main complaint is that defendant was an inept prosecutor. In fact, these main allegations serve as the basis for plaintiff's Fourth, Fifth, and Eleventh causes of action for 42 U.S. § 1983 supervisory liability and Monell claims, and state law claims sounding in *respondeat superior*. See Dkt. 1 ¶¶ 221-242, 290-294. Thus, as pleaded, plaintiff concedes that defendant's complained-of conduct is prosecutorial in nature and, as such, is therefore shielded by absolute prosecutorial immunity.

To be sure, each perceived error defendant is alleged to have committed is also independently protected by absolute immunity, or is otherwise irrelevant. From what can best be discerned from plaintiff's complaint, the particular factual allegations concerning defendant's alleged failings falls into four general categories: her evaluation of the evidence against plaintiff and subsequent decision to initiate criminal proceedings (Dkt. 1 ¶¶ 65-88, 104-187), presentation of the criminal case to the grand jury (Dkt. 1 ¶¶ 154-162, 172), the alleged withholding of exculpatory evidence defense counsel (Dkt. 1 ¶¶ 124, 142-43, 155, 159, 162), and her preparation of complaining witnesses (Dkt. 1 ¶¶ 66, 112). All of this conduct is plainly the type of protected conduct which defendant engaged in as an officer of the court and which, accordingly, falls under the protections of absolute prosecutorial immunity.

### A. Defendant's Decision to Pursue Criminal Charges Following Her Evaluation of the Evidence Gathered Is Protected by Absolute Immunity.

Defendant's decision to file criminal charges after an evaluation of the evidence gathered

6

– including the criminal complainants' police reports and testimony (Dkt. 1 ¶ 69), text messages provided by the criminal complainants (Dkt. 1 ¶¶ 72-73) and the video surveillance plaintiff and his criminal co-defendants provided BCDAO (Dkt. 1 ¶80) – is a quintessential prosecutorial task and not subject to liability under Imbler and its progeny, even without the full forensic material from the complainants' phones. Dkt 1 ¶¶ 104-147.

More generally, plaintiff claims liability attaches for defendant's failure to conduct a "constitutionally adequate investigation,"[1] in that she and her co-defendants essentially disregarded "evidence clearly demonstrating that Mr. Kweller did not rape Defendant Demkovich or Defendant Herceg." Dkt. 1 ¶ 194. Ignoring for the purposes of this motion the circular nature of this reasoning, and although plaintiff drafts his claim in terms of an alleged failure to conduct a thorough investigation, that does not render the complained-of conduct "investigatory" in nature. Plaintiff's claims in actuality rest squarely on a prosecutor's decision to bring criminal charges against him, and that is a prosecutorial task. Schnitter v. City of Rochester, 931 F.Supp.2d 469, 474 (W.D.N.Y. 2013); Stein v. Disciplinary Bd. of Supreme Court of New Mexico, 520 F.3d 1183, 1194 (10th Cir. 2008), citing Buckley, 509 U.S. at 273.

Plaintiff's complaint about the investigation of him (as concerns defendant) appear mainly rooted in defendant's decision to wait for the complaining witnesses to consent to a search of their phones, and her determination that there was sufficient evidence to charge plaintiff criminally and continue the prosecution once the forensic evidence of the cellphones was retrieved. Dkt. 1 ¶¶ 120, 124, 148, 163-173. Plaintiff also alleges that defendant's failure to

---

[1] Defendant has been unable to locate any law or reported cases that define a right to, or describe the contours of, a "constitutionally adequate investigation." The suggestion that this supposed principle supports a cause of action is false. Courts have repeatedly noted that "there is no constitutional right to an adequate investigation." Newton v. City of New York, 566 F.Supp. 2d 256, 278 (S.D.N.Y. 2008).

retrieve printouts of electronic data from the complainants' cellphones, which were in possession of their private attorney (hereinafter "the Saitta Folder"), supports of a finding of liability, mainly because – in plaintiff's view – a jury ultimately used these materials to acquit plaintiff of all charges. Dkt. 1 ¶¶ 117-119.[2]

In all these acts, defendant was acting in her capacity as a prosecutor.  As the cases discussed above make clear, it does not matter whether defendant's prosecutorial actions were ultimately correct or incorrect, made in good faith or bad, whether a jury ultimately determined that the cellphone contents were exculpatory, or even that plaintiff was acquitted.  It also does not matter if plaintiff was wrongly accused.  Instead, the only question is whether the nature of the activity in question falls within the ambit of prosecutorial duties.  See Pinaud, 52 F.3d at 1150.  Clearly, defendant's complained-of conduct can only be "characterized as closely associated with the conduct of litigation" and her professional evaluation of the evidence.  See Barret, 789 F.2d at 571-72; see also Buckley, 509 U.S. at 273.  Thus, defendant is protected by absolute immunity for initiating criminal proceedings against plaintiff on the evidence gathered, and continuing the prosecution even after the contents of the complaining witnesses' cellphones were retrieved.

## B. Defendant's Conduct During Grand Jury Presentation Is Protected by Absolute Immunity.

Plaintiff expressly asserts that defendant withheld exculpatory evidence from the grand jury (Dkt. 1 ¶ 155), and impliedly alleges that she knowingly presented perjured testimony to the grand jury (Dkt. 1 ¶¶ 150, 155, 172, 265).[3]  Even drawing all reasonable inferences in plaintiff's

---

[2]     Plaintiff does not claim to have any special knowledge about the secret workings of the trial jury or the trial jurors' beliefs, and this claim appears to be purely speculative.

[3]     Again, plaintiff appears to reason that, because he was acquitted, defendant presented perjured testimony by permitting the criminal complainants to testify before the grand jury.

favor, defendant is shielded by absolute immunity for the complained-of conduct. See Lawlor, 471 Fed. Appx. at 65; see also Imbler, 424 U.S. 409.

Plaintiff offers no more than conclusory allegations to support such claims, which are not entitled to the assumption of truth. See Ashcroft, 556 U.S. 662. Specifically, plaintiff alleges that "at some point during the investigation or prosecution, defendant Demkovich informed defendant Congdon and others at the BCDAO that she never said 'no' or physically resisted any sex acts" and this information was kept from the grand jury." Dkt. 1 ¶ 150, 155, 172. It appears that plaintiff learned this information after reviewing defendant Demkovich's phone (Dkt. 1 ¶172) and conveniently reproduced what he considers the most troubling messages in the complaint. Dkt. 1 ¶¶ 68-a-ff.

It is certainly unclear – after scouring not only the messages reproduced in plaintiff's complaint but the entire document itself – what factual basis plaintiff relies on to assert that Defendant had first-hand knowledge of this information. Nor does plaintiff allege that defendant was provided said information before presenting the criminal case to the grand jury. Further, plaintiff fails to allege that Demkovich ever told defendant that she was not sexually assaulted, and it is well known that saying neither saying "no," nor physical resistance, is required to prove sexual assault. However, even putting a lot of that to the side, the most liberal reading of the complaint demonstrates these statements were made only to defendant Binghampton Police Department (hereinafter "BPD"), and no recording of them was made. Dkt. 1 ¶75. In the specific text exchange is produced in ¶ 68-w of the Complaint, plaintiff avers that defendant Demkovich made this statement to BPD, not Defendant.[4] Even crediting these unsubstantiated, self-serving

---

[4] Dkt. 1 ¶ 68-w reads: "December 28, 2021 – Defendant Demkovich to her mother: "I told them [BPD] the next day I was questioning if what happened to me was actually rape . . . ." but

allegations, a moment of voiced self-doubt by a complaining witness does not equate to a conspiracy to violate a criminal defendant's civil rights.

Still, even were the Court to find plaintiff properly alleged defendant failed to present this purported exculpatory evidence to the grand jury and knew the testimony was perjured, she is protected by absolute immunity. See Imbler, 424 U.S. 409; Lawlor, 471 Fed. Appx. at 65. Nevertheless, immunity aside, plaintiff's pleadings do not make out a factual case against defendant.

### C. Defendant's Alleged Withholding of Exculpatory Evidence from Plaintiff's Criminal Defense Counsel Is Protected by Absolute Immunity.

It appears that plaintiff accuses defendant of withholding exculpatory evidence from defense counsel, in the form of text messages discovered in the forensic contents of the complainants' cell phones and the Saitta Folder where the complainants discuss, among other things, whether the sexual contact was consensual (Dkt. 1 ¶¶ 155, 159, 162), DNA test results (Dkt. 1 ¶¶ 155, 159, 162), and the alleged statements the complainants made to BPD and/or defendant, discussed above in Point II-B (Dkt. 1 ¶ 68-w, 75, 150, 155, 172). Once again, to the extent that plaintiff properly alleges such withholding, a prosecutor is immune from liability for withholding exculpatory evidence. See Lawlor, 471 Fed. Appx. at 65; Warney, 587 F.3d at 125; Hill, 45 F.3d at 661; Dory, 25 F.3d at 83.

Apart from the claims relating to the DNA evidence, the remainder of plaintiff's arguments relating to the alleged withholding of exculpatory evidence stem from the forensic extraction of the complainants' phones months after plaintiff was criminally charged. In sum, plaintiff complains of defendant's decision to wait until the criminal complainants consented to a

---

does not allege any facts to connect that defendant Demkovich's reference to "them" was actually BPD.

forensic extraction and asserts defendant was wrong not to take steps to preserve or retrieve the material when plaintiff first insisted that "he felt certain that their electronic data would exonerate him of any wrongdoing" (simply because the complainants used their phones on the night in question). Dkt. 1 ¶¶ 64-65, 110, 124, 142-43. Plaintiff seemingly employs the circular argument that, because a jury found the cellphone material exculpatory, defendant had a duty to retrieve the material, or at the very least preserve it, and to confirm whether it corroborated the complainants' sexual abuse claims. Plaintiff uses the same logic to claim defendant had a duty to retrieve the so-called Saitta Folder and produce it to his defense counsel, because he alleges it contained "numerous exculpatory and impeaching text messages." (Dkt. 1 ¶ 119-e). According to plaintiff, defendant's failure to do so was withholding exculpatory evidence because the messages were subject to disclosure under <u>Brady</u> and <u>Giglio</u>. Dkt. 1 ¶¶ 105.

If followed, this logic would otherwise create a new, absolute duty for prosecutors, who may already have enough evidence to support that a crime has been committed, to also seek evidence of a suspect's innocence. As discussed above in Point I-A, a prosecutor is entitled to absolute immunity for their evaluation of evidence and is to be free from the threat of litigation should a jury not agree with the assessment. Accordingly, plaintiff's alleged inadequacies in defendant's decision to wait until the criminal complainants consented to a full forensic phone evaluation and any failure to retrieve the Saitta Folder, in a particular time frame is protected. Furthermore, to the extent that plaintiff adequately pleaded sufficient facts to support an assertion that the phone extraction was a gold mine of exculpatory material (as the complaint implies), and that defendant did, in fact, withhold said material, she is nonetheless shielded by absolute immunity.

### D. Defendant's Alleged Preparation of Witnesses Is Protected by Absolute Immunity

Plaintiff avers that "Defendant Herceg ultimately testified at the criminal trial in this matter that she was instructed to destroy electronic data relating to the night in question by defendant Congdon . . . and she did in fact destroy that evidence." Dkt. 1 ¶ 66. Plaintiff later clarifies that it was only social media accounts that defendant is said to have instructed defendant Herceg to delete. Dkt. 1 ¶ 112.[5] Tellingly, plaintiff does not state when this alleged instruction occurred, but strategically sandwiches it between two paragraphs that do include dates, presumably to get the reader to conclude it occurred between December 14, 2021 and December 22, 2021. Dkt. 1 ¶¶ 111-113. A liberal reading of the complaint makes clear, however, that this allegedly occurred later during a meeting between defendant and defendant Herceg in preparation for the ultimate trial that occurred. Accordingly, even viewing the allegations in the light most favorable to plaintiff, defendant is protected by absolute immunity for her preparation of defendant Herceg, a witness who testified at plaintiff's trial. See Kalina, 522 U.S. at 126-27.

## II. TO THE EXTENT ANY OF DEFENDANT'S ALLEGED CONDUCT IS NOT ENCOMPASSED BY ABSOLUTE IMMUNITY, QUALIFIED IMMUNITY BARS ANY AND ALL REMAINING CLAIMS BY PLAINTIFF.

To the extent that plaintiff's complaint may be read to allege conduct by defendant that occurred when defendant was "not acting as 'an officer of the court,' but [wa]s engaged in other tasks, say, investigative or administrative tasks," (Van de Kamp, 555 U.S. at 342, citing Imbler, 424 U.S.. at 431 n.33), qualified immunity mandates the dismissal of the claims against her. Qualified immunity, like absolute immunity, is not merely a defense, but rather is also "an

---

[5] It is important to highlight that the allegations contained in the complaint read in a manner that easily invites the reader to conclude that defendant also instructed defendant Herceg to obtain and new phone and a new iCloud account before she ultimately consenting to allow a forensic extraction to be conducted on her phone. See generally Dkt. 1; ¶ 171. The only specific allegation pleaded relates to an alleged instruction to delete social media accounts. Dkt. 1 ¶ 112. Further, plaintiff does not claim the allegedly destroyed material had any evidentiary value or that he was in any way harmed by such alleged instruction.

entitlement not to stand trial or face the other burdens of litigation." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). As with absolute immunity, the availability of qualified immunity should similarly be decided by a court at the "earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991).

Qualified immunity shields government officials from performing discretionary functions, like investigative functions, for "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1992). It is well established that an "objectively reasonable" standard is used to make sure determination. <u>Id.</u> Further, under the qualified immunity analysis, "officers can have reasonable, but mistaken beliefs as to probable cause . . . and in those situations courts will not hold that they have violated the Constitution." <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001); <u>see also</u> <u>Lennon v. Miller</u>, 66 F.3d 416, 423 (2d Cir. 1995).

Here, insofar as plaintiff's allegations may include allegations that relate to administrative or investigative acts, plaintiff complains that defendant: attended an investigative meeting and discussed the complaining witnesses' cell phones and assigned defendant to "the investigation" (Dkt. 1 ¶¶ 106-108); that defendant, along with other named defendants, met with the complaining witnesses about their cell phones (Dkt. 1 ¶ 111); was informed of text message printouts from the complaining witnesses cell phones in the possession of their private attorney and directed that they be picked up by the BCDAO's investigator (Dkt. 1 ¶¶ 117-118); continued thereafter to try to get consent from the complaining witnesses to extract data from their cell phones (Dkt. 1 ¶ 120); attempted to draft a search warrant for a buccal swab to obtain plaintiff's DNA (Dkt. 1 ¶ 122); failed to correct reports in the media about the case (Dkt. 1 ¶ 126), and

determined, in concert with police, that plaintiff should be charged and arrested (Dkt. 1 ¶¶ 133-134).

Most of these allegations are not affirmative acts that can be said to fall outside of the protections of absolute prosecutorial immunity or are innocuous and not actionable on their face. Attending a meeting with police and other members of the BCDAO to discuss an investigation, for example, is protected as a primary prosecutorial duty, and in any event, plaintiff – other than the existence at that point of any investigation into his conduct – does not complain that the meeting violated clearly established constitutional norms. Obviously, such meetings would be typical at the outset of any criminal investigation. Similarly, directing an investigator to pick up evidence and drafting search warrants for law enforcement are not actions which violate established constitutional norms.

Moreover, to the extent that plaintiff's complaint can be generously read to allege that defendant improperly directed police to arrest plaintiff, even on plaintiff's own facts it was objectively reasonable for a prosecutor like defendant to believe that there was probable cause to believe plaintiff committed the crimes charged. Dkt. 1 ¶ 139. According to the allegations in plaintiff's complaint, the criminal complainants had filed a police report the day after the night in question and gave sworn testimony that they were sexually assaulted by plaintiff and his criminal co-defendants. Dkt. 1 ¶¶ 69-72. They were interviewed by defendant Binghampton Police Department ("BPD") and underwent forensic rape exams. Dkt. 1 ¶¶ 71, 161-a. They also provided BPD with photographs and text messages from the night in question, establishing that they were, in fact, with the men, including plaintiff, who they said had sexually assaulted them. Dkt. 1 ¶ 72. Plaintiff and his criminal co-defendants also submitted surveillance footage of the night in question that confirmed the parties had been together and, insomuch as plaintiff claims

these videos absolved him of any liability, no cameras were present in the immediate area where the complainants claim the assault occurred. Dkt. 1 ¶¶ 43-52; 80-81. Accordingly, reasonable and trustworthy information was abundantly present for defendant to determine, or at a minimum to mistakenly determine, that probable cause existed to initiate and continue to pursue criminal charges against plaintiff.

The affirmative defense of qualified immunity may be decided on a 12(b)(6) motion to dismiss the complaint if the defense appears on the face of the complaint. Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). Here, the qualified immunity issue can be resolved on the face of the complaint, as it identifies the salient, relevant, facts known to defendant. Moreover, the criminal complainants were steadfast in their claims that plaintiff and his criminal co-defendants sexually abused them, and a prosecutor is entitled to believe their victims. Thus, qualified immunity insulates defendant from any allegations in this action not squarely covered by absolute immunity (of which defendant claims there are none).

Although defendant contends that prosecutorial immunity shields her from all of plaintiff's causes of action, each cause of action is discussed below, briefly.

### III. PLAINTIFF'S FIRST AND EIGHTH CAUSES OF ACTION MUST BE DISMISSED.

Plaintiff's first cause of action alleges defendant violated his constitutional rights to be free from false arrest and malicious prosecution. Dkt. 1 ¶¶ 191-197. Plaintiff's eighth cause of action alleges the same causes of actions under New York State law. Dkt. 1 ¶¶ 267-280. The existence of probable cause is a complete defense to both false arrest and malicious prosecution claims, whether brought under state or federal law. See Arzeno v. Mack, 39 A.D.3d 341, 341 (1st Dept 2007); see also Burns v. City of New York, 181 A.D. 3d 554, 555 (2d Dept 2020).

**A. False Arrest Claim**

"A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." Berie v. Stevenson, 2019 WL 1017317 *5 (N.D.N.Y. March 4, 2019). To succeed on such a claim, plaintiff must establish "(1) the defendant intended to confine him, (2) plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."

In the context of false arrest claims, "probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been [committed] or is being committed by the suspected individual, and probable cause must be judged under the totality of the circumstances." Burns, 181 A.D.3d at 554. In evaluating probable cause, courts consider the facts available at the time of the arrest. See Martinez v. Simonetti, 202 F.3d 625, 635 (2d Cir. 2000). "When information is received from a putative victim or an eyewitness, probable cause exists, unless circumstances raise doubt as to the person's veracity." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). A prosecutor "may rely on a complaint to establish probable cause and cannot be held liable for a constitutional violation simply because the complaint turns out to be false." Loria v. Gorman, 306 F.3d 1271, 1289 (2d Cir. 2002).

Here, the facts alleged in the complaint demonstrate that plaintiff's arrest was supported by ample, constitutionally adequate probable cause. Accordingly, and for all the reasons below, the false arrest claims in Counts One and Eight of the complaint must be dismissed as a matter of law.

As noted above, the criminal complainants filed a police report, gave sworn testimony that they were sexually assaulted by plaintiff and his criminal co-defendants, underwent forensic

rape exams, and provided evidence that corroborated that they were with plaintiff and his criminal codefendants on the night in question. Dkt. 1 ¶ 69-72, 161-a.  Accordingly, reasonable and trustworthy information existed for defendant to determine that, at a minimum, arguable probable cause existed to arrest plaintiff.  Thus, plaintiff's claims that he was prosecuted without constitutionally sufficient probable cause are belied by his own allegations.

Notwithstanding the above, plaintiff alleges that BPD's initial investigation uncovered many reasons to doubt the complainants' veracity and reliability to undercut any probable cause established, including surveillance footage of the complainants leaving the establishment where they claimed to be sexually abused. Dkt. 1 ¶¶ 37-40, 43-52, 83-87.  Plaintiff does not allege the existence of footage of the area in which the sexual abuse was alleged to have occurred, nor does he claim it was provided or otherwise in the possession of defendant.  Instead, he asserts that this video of arrival and departure was sufficient to undercut the sworn testimony that the criminal complainants were sexually abused in the Washington Street office. Dkt. 1 ¶¶ 41-51, 54-63, 80-85.  Defendant was free to dismiss these contentions when she weighed the evidence and determined to initiate criminal proceedings.

Plaintiff also claims that text messages between defendant Demkovich and her mother on December 28, 2021, in which defendant Demkovich states she told "them" that she was questioning whether she was, in fact, raped, undercut the complainants' sex abuse allegations that provided the probable cause to arrest plaintiff. Dkt. 1 ¶¶ 68-w, 69-87.  Even assuming, *arguendo,* that defendant somehow knew of such statement, voicing self-doubt does not automatically negate the veracity of sexual abuse allegations and is actually a common occurrence as victims come to terms with having been sexually assaulted. Accordingly, and for all the reasons above, the existence of probable cause precludes plaintiff's false arrest claim.

### B. Malicious Prosecution Claim

As detailed above in Point I supra, absolute prosecutorial immunity shields defendant from liability arising from a malicious prosecution claim. See Pinaud, 52 F.3d at 1149; Johnson, 102 A.D.2d at 925. Notwithstanding, such claims are also meritless for the reasons below.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." Davis-Guider v. City of Troy, No. 23-589, 2024 WL 5199294 at *2 (2d Cir. Dec. 23, 2024). Under New York state law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id. (internal citations and quotations omitted).

Probable cause to prosecute consists of facts and circumstances that would lead a reasonably prudent person to believe the plaintiff is guilty. Ying Li v. City of New York, 246 F.Supp.3d 578, 611 (E.D.N.Y. 2017) (internal citations omitted). A grand jury indictment gives rise to a presumption of probable cause in both federal and state cases. See Kanciper v. Lato, 989 F. Supp. 2d 216, 233 (E.D.N.Y. 2013) (citing Colon v. City of New York, 60 N.Y.2d 78, 82 (N.Y. 1983). The presumption may be overcome by evidence of misrepresentation or falsification of evidence before a grand jury. Abdul-Aziz v. City of New York, 56 A.D.3d 291, 292 (1st Dept 2008). In Abdul-Aziz, the prosecutor was accused of procuring an indictment by fraud or suppression by failing to disclose certain information the plaintiff considered exculpatory. Id. The court reiterated therein that, even accepting the misconduct complained as true, "there is no requirement that the prosecution disclose to the grand jury all evidence in its possession that is

favorable to the accused even though such information undeniably would allow the grand jury to make a more informed determination" and swiftly dismissed the malicious prosecution claim. Id. (citing People v. Lancaster, 69 N.Y2d 20, 25-26 [Ct App. 1986]).

For the reasons discussed above in Point II-A supra, the facts pleaded in plaintiff's complaint do not rebut the presumption of probable cause created when a grand jury indicted him. Dkt. 1 ¶ 157. The criminal complainants' grand jury testimony was not perjured simply because plaintiff was acquitted, and defendant was not required to present so-called exonerating evidence to the grand jury. Plaintiff's claim that the indictment was obtained by fraud or suppression because defendant kept exculpatory information from the grand jury does not overcome the presumption of probable cause, even if credited. Dkt. 1 ¶ 155. This alone establishes that plaintiff's federal and state law claims for malicious prosecution be dismissed as a matter of law.

Plaintiff also failed to adequately allege that defendant acted with actual malice, but instead makes mere "conclusory allegations or legal conclusions masquerading as factual conclusions." Koulina v. City of New York, 06-cv-11356(SHS) 2009 WL 210727 at *5 (S.D.N.Y. 2009). In fact, the word "malice" appears only three times (in a conclusory fashion) and, even affording plaintiff every reasonable inference, the remainder of the complaint does not support a finding that defendant acted with malice. Dkt. 1 ¶¶ 186, 192, and 268. At best, the complaint alleges that defendant's challenged conduct was a product of negligent hiring, training, and supervision—not malice. Dkt. 1 ¶¶ 105, 108-09, 119, 122-131. Accordingly, and for all the reasons above, plaintiff's malicious prosecution claims in the Second and Eighth causes of action must be dismissed.

## IV. PLAINTIFF'S SECOND AND TENTH CAUSES OF ACTION MUST BE DISMISSED.

Plaintiff's second cause of action alleges defendant and defendants Korchak, Cronin, Minor, Zikuski, and Miller violated his constitutional rights by fabricating evidence, by withholding exculpatory material and impeachment evidence, and by deliberately failing to conduct a constitutionally adequate investigation. Dkt. 1 ¶¶ 198-205. From what can be discerned from the complaint, the specific claims against defendant fall into four general categories: her evaluation of the evidence against plaintiff and subsequent decision to initiate criminal proceedings (Dkt. 1 ¶¶ 66-87, 104-187), presentation to the grand jury (Dkt. 1 ¶¶ 154-162, 172, 265), the alleged withholding of exculpatory evidence defense counsel (Dkt. 1 ¶¶ 124, 142-43, 155, 159, 162), and her preparation of complaining witnesses (Dkt. 1 ¶¶ 66, 112). As discussed in Point I, supra, all such categories of claims are expressly foreclosed by the doctrine of prosecutorial immunity and equally lack merit. Accordingly, plaintiff's Second and Tenth causes of action must be dismissed as a matter of law.

## V. PLAINTIFF'S THIRD CAUSE OF ACTION MUST BE DISMISSED.

Plaintiff's third cause of action alleges defendant violated his constitutional rights by failing to intervene on his behalf to prevent his malicious prosecution and deprivation of liberty. Dkt. 1 ¶¶ 206-210. Plaintiff's theory is based on the assumption that defendant is liable for failure to intervene for her decision – after an evaluation of the evidence and the credibility of the complainants – to pursue criminal charges against him. This theory is untenable and is in direct tension with the concept of prosecutorial discretion and is otherwise precluded by absolute prosecutorial immunity discussed in Point I, supra. See Komatsu v. City of New York, No. 20 CIV. 7046 (ER), 2021 WL 3038498 at *14 (S.D.N.Y. July 16, 2021).

Plaintiff also does not plead the elements of a failure to intervene claim in his complaint. "Law enforcement officials have an affirmative duty to intervene to protect the constitutional

rights of citizens from infringement by other law enforcement officers in their presence," but to adequately plead this claim, plaintiff must also "allege [defendant] observed or has reason to know of the constitutional violation, and that there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. Defendant could never have had a reasonable opportunity to intervene in her own actions—the person primarily plaintiff credits with deciding to arrest and prosecute him—nor in the actions of her supervisor, the District Attorney, nor in those of an independent police department like BPD, or internal office investigators who lacked charging authority. Dkt. 1 ¶ 130. Such intervention was either logically impossible or defendant lacked the authority to do it. Accordingly, and for all the reasons above, plaintiff's Third cause of action must be dismissed.

## VI. PLAINTIFF'S FIFTH CAUSE OF ACTION MUST BE DISMISSED

It is unclear whether plaintiff alleges a Monell claim against defendant Congdon, but as plaintiff alleges that defendant Congdon forwarded an unconstitutional county policy (Dkt. 1 ¶¶ 238, 240-41), defendant Congdon notes the following.

It is well established that a Monell claim asserts liability against a municipality and is inapplicable against an individual like defendant. Defendant is sued in her individual capacity, but even if not, even generously read, plaintiff's Monell claims are purely derivative of his claims against the individual defendants and, as set forth above, all such claims against defendant are subject to dismissal as a matter of law. See Pinter v. City of New York, 448 Fed. Appx. 99, 106 (2d Cir. 2011).

## VII. PLAINTIFF'S SEVENTH CAUSE OF ACTION MUST BE DISMISSED

Plaintiff's seventh cause of action alleges all defendants engaged in a civil rights conspiracy to violate his constitutional rights. Dkt. 1 ¶¶ 263-221. "To prove a § 1983

conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Sanders v. City of Saratoga Springs, 691 F. Supp. 3d 548, 561 (N.D.N.Y. 2023).

Plaintiff's Complaint does not specify any instance where defendant "shared a common unlawful goal" with another state actor or otherwise had an agreement to act in order to deprive plaintiff of his constitutional rights. To the extent that plaintiff alleges a conspiracy within the BCDAO, "it is well settled that there can be no actionable conspiracy under the civil rights laws if the alleged conspirators are employees of a single organization and their alleged actions were taken in the course of their employment." Ahmed v. Gelfand, 160 F.Supp.2d 408, 413 (E.D.N.Y. 2001) (citing Girard v. 94th Street and Fifth Ave. Corp., 530 F.2d 66, 71 (2d Cir.), cert. denied, 425 U.S. 974 (1976); see also Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978). All actions alleged by defendant and the other employees of the BCDAO (the district attorney, other ADAs, and/or office investigators), such actions occurred in the course of their employment, and conspiracy claims relying thereon must be dismissed.

To the extent that plaintiff alleges a conspiracy existing between defendant and/or other members of the BCDAO along with the chief of and/or other members of the BPD, the complaint lacks plausible facts to support such a conspiracy and includes only vague and conclusory allegations, which do not suffice to sufficiently allege a constitutional conspiracy.

Moreover, for the reasons explained in Point I supra, each and every overt act defendant is alleged to have committed (Dkt. 1 ¶¶ 265) is independently protected by absolute prosecutorial immunity, further foreclosing any valid claim that she engaged in a civil rights conspiracy. See Thompson v. Kline, 504 F. Supp. 3d 200, 216-17 (W.D.N.Y. 2020) (holding that a prosecutor is

entitled to absolute immunity on a civil rights conspiracy claim when it stems from a pre-trial meeting where a prosecutor allegedly conspired with witness to produce false testimony at trial). Accordingly, plaintiff's Seventh cause of action must be dismissed.

## VIII.   PLAINTIFF'S NINTH CAUSE OF ACTION MUST BE DISMISSED

Plaintiff's ninth cause of action alleges a state law claim for intentional, reckless, or negligent infliction of emotional distress against all defendants. Dkt. 1 ¶¶281-289.   It is well settled that claims against government bodies are barred as a matter of public policy, precluding plaintiff from asserting this claim against ADA Congdon.[6] See Wyllie v. District Atty. of County of Kings, 2 A.D.3d 714, 720 (2d Dept 2003).   Notwithstanding, plaintiff does not make specific allegations that ADA Congdon's conduct constituted "extreme and outrageous conduct, which so transcends that bounds of decency as to be regarded as atrocious and intolerable in a civilized society" as is necessary to state a claim of intentional or reckless infliction of emotional distress. Id.   As explained, defendant Congdon's alleged conduct was squarely within her role and duties as a prosecutor, and as such, cannot be said to meet the high pleading standard of intentional and/or reckless infliction of emotional distress.

Similarly, plaintiff does not allege any facts to show defendant "breach[ed] a duty owed to [him] which unreasonably endangered [his] physical safety, or caused [him] to fear for [his] own safety," as necessary to support a claim for negligent infliction of emotional distress. Schultes v. Kane, 50 A.D.3d 1277, 1278-79 (3d Dept 2008).   It is unclear how plaintiff and/or his family's safety was every endangered, as no specific facts were alleged to that effect. Instead, plaintiff points to social media posts and photos demonstrating the public was boycotting several restaurants he had ties to. Dkt. 1 ¶¶ 88-103.   To be sure, plaintiff does not

---

[6]     To the extent plaintiff would rely on conduct protected by prosecutorial immunity to establish wrongful infliction of emotional harm, defendant relies on her arguments above.

allege that defendant had anything to do with the creation of such social media posts or the dead animals that were supposedly left outside the restaurants. Accordingly, this branch of plaintiff's Complaint must be dismissed in its entirety.

## CONCLUSION

For the above reasons, defendant Alyssa Congdon respectfully requests the Court grant her motion to dismiss plaintiff's complaint as against her in its entirety, with prejudice, together with such other and further relief the Court deems just and proper.

DATED:      January 31, 2025

**HACKER MURPHY, LLP**

<u>/s/James C. Knox</u>
James C. Knox, Esq.
Bar Roll No. 517109
*Attorneys for Defendant Alyssa Congdon*
