UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

YARON KWELLER,

                 *Plaintiff*,

   -against-

THE COUNTY OF BROOME, THE CITY OF
BINGHAMTON, THE BROOME COUNTY
DISTRICT ATTORNEY'S OFFICE, DISTRICT
ATTORNEY MICHAEL A. KORCHAK, CHIEF
ASSISTANT DISTRICT ATTORNEY MARK
LOUGHRAN, ASSISTANT DISTRICT ATTORNEY
ALYSSA CONGDON, ASSISTANT DISTRICT
ATTORNEY AMANDA CRONIN, DISTRICT
ATTORNEY INVESTIGATOR JEFF J. WAGNER,
BINGHAMTON POLICE CHIEF JOSEPH ZIKUSKI,
BINGHAMTON POLICE DEPARTMENT CAPTAIN
CORY MINOR, BINGHAMTON POLICY
DEPARTMENT INVESTIGATOR AMANDA
MILLER, all in their individual capacities, and JOHN
DOES ## 1-10 representing Broome County District
Attorney's Office and Police Department Employees
Whose Names Are Currently Unknown, HAILEY
DEMKOVICH, and SAMANTHA HERCEG,

                 *Defendants*.
_____

**MEMORANDUM OF LAW**

3:24-CV-1328 (ECC-ML)

**DEFENDANT AMANDA CRONIN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

                                            **CAPEZZA HILL, LLP**

                                            _____
                                            Benjamin W. Hill, Esq.
                                            Alexandra N. von Stackelberg, Esq.
                                            *Attorneys for Amanda Cronin*
                                            30 South Pearl Street, P-110
                                            Albany, New York 12207
                                            (518) 478-6065
                                            ben@capezzahill.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.    PLAINTIFFS CLAIMS ARE BARRED BY PROSECUTORIAL IMMUNITY ................. 1

        A. Ms. Cronin did not Facilitate or Approve Plaintiff's Arrest ........................................... 1

        B. Ms. Cronin's Alleged Actions are Covered by Prosecutorial Immunity ....................... 2

II.   PLAINTIFF'S CLAIMS ARE BARRED BY QUALIFIED IMMUNITY ............................ 6

III.  PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM ................................................ 6

        A. Malicious Prosecution and False Arrest Claims .............................................. 6

        B. Section 1983 Due Process Violation ................................................................ 8

        C. Failure to Intervene .......................................................................................... 8

        D. Civil Rights Conspiracy .................................................................................. 9

        E. State Law Intentional and Negligent Infliction of Emotional Distress ......... 9

        F. Violations of the New York State Constitution .............................................. 9

CONCLUSION ........................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Cases**

*Berie v. Stevenson*,
  No. 5:18-cv-119, 2019 WL 1017317 (N.D.N.Y. Mar. 4, 2019) ................................................. 7

*Bermudez v. City of New York*,
  No. 11-CV-750, 2013 WL 593791 (S.D.N.Y. Feb. 14, 2013) ...................................................... 4

*Buckley v. Fitzsimmons*,
  509 U.S. 259 (1993) ................................................................................................................... 4

*Colon v. City of New York*,
  60 N.Y.2d 78, 83 (1983) ............................................................................................................ 6

*D'Alessandro v. City of New York*,
  No. 17-504-cv, 2016 WL 6926516 (E.D.N.Y. Nov. 28, 2016) ................................................... 3

*Davis v. City of New York*,
  840 Fed. Appx. 631 (2d Cir. 2021) ............................................................................................ 6

*Debrosse v. City of New York*,
  739 Fed. Appx. 48 (2d Cir. 2018) .............................................................................................. 7

*Fiedler v. Incandela*,
  222 F. Supp. 3d 141 (E.D.N.Y. 2016) ....................................................................................... 9

*Gonzalez v. City of Schenectady*,
  728 F.3d 149 (2d Cir. 2013) ...................................................................................................... 7

*Hill v. City of New York*,
  45 F.3d 653 (2d Cir. 1995) ........................................................................................................ 3

*Howard v. City of Rochester*,
  — F. Supp. 3d —, 2025 WL 860306 (W.D.N.Y. Mar. 19, 2025) ............................................. 4

*Howell v. New York Post Co., Inc.*,
  81 N.Y.2d 115 (1993) ................................................................................................................ 9

*Imbler v. Pachtman*,
  424 U.S. 409 (1976) ................................................................................................................... 3

*Kayo v. Mertz*,

*Lawlor v. Connelly*,
   531 F. Supp. 3d 774 (S.D.N.Y. 2021) ................................................................................. 9

*Lawlor v. Connelly*,
   471 Fed. Appx. 64 (2d Cir. 2012) ........................................................................................ 3

*Letteri v. Department of Justice*,
   No. 23-CV-697, 2024 WL 2278247 (W.D.N.Y. Apr. 30, 2024) .......................................... 3

*Newton v. City of New York*,
   566 F. Supp. 2d 256 (S.D.N.Y. 2008) ................................................................................. 9

*Palmer v. City of New York*,
   564 F. Supp. 3d 221 (E.D.N.Y. 2021) ................................................................................. 9

*Savino v. City of New York*,
   331 F.3d 63 (2d Cir. 2003) ............................................................................................. 6, 7

*Thomas v. County of Putnum*,
   262 F. Supp. 2d 241 (S.D.N.Y. 2003) ................................................................................. 9

*United Staes v. Zackson*,
   6 F.3d 911 (2d Cir. 1993) .................................................................................................... 8

*Warney v. Monroe County*,
   587 F.3d 113 (2d Cir. 2009) ......................................................................................... 2, 3, 4

*Weider v. City of New York*,
   569 Fed. App'x 28 (2d Cir. 2014) ........................................................................................ 9

*Young v. Zon*,
   827 F. Supp. 2d 144 (W.D.N.Y. 2011) ................................................................................ 8

*Zanfardino v. City of New York*,
   230 F. Supp. 3d 325 (S.D.N.Y. 2017) ................................................................................. 8

**<u>Rules</u>**

Fed R. Civ. P. 12 .......................................................................................................................... 1

**PRELIMINARY STATEMENT**

Plaintiff's opposition to the instant motion to dismiss fails to address the numerous fatal flaws in his claims against Defendant Amanda Cronin (hereinafter "Ms. Cronin") or otherwise provide any basis upon which his claims against the Ms. Cronin can survive. Therefore, for the following reasons and those set forth in Ms. Cronin's moving papers, even accepting Plaintiff's allegations as true – as the Court must at this stage – Ms. Cronin is protected by absolute prosecutorial immunity. Alternatively, Ms. Cronin is entitled to qualified immunity. Accordingly, Plaintiff's claims against Ms. Cronin must be dismissed.[1]

**ARGUMENT**

**I.     PLAINTIFFS CLAIMS ARE BARRED BY PROSECUTORIAL IMMUNITY**

Plaintiff opposes the application of absolute immunity to Ms. Cronin with a two-step argument: First, Plaintiff attempts to attribute the alleged conduct of other Broome County District Attorney's Office (hereinafter "BCDAO") personnel to Ms. Cronin. Second, Plaintiff attempts to label this alleged conduct "investigatory," rather than adjudicative. Plaintiff's attempted step around absolute immunity cannot prevail because the allegations in the Complaint simply do not support his argument, nor does the prevailing case law in this Circuit.

A.     Ms. Cronin did not Facilitate or Approve Plaintiff's Arrest

Plaintiff argues that Ms. Cronin "directly approved investigative strategies and tactics that intentionally suppressed exculpatory evidence and knowingly facilitated Plaintiff's arrest without probable cause." Dkt. No. 80 at 25. But, the citations Plaintiff makes to his Complaint in support of this argument do not allege any such thing. Instead, the Complaint describes a December 8,

---

[1] Ms. Cronin brought her motion pursuant to Fed R. Civ. P. 12(c) in err and respectfully requests that the Court convert the motion and consider it under the standards set forth in Fed. R. Civ. P. 12(b)(6). As the standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(c) are the same, there is no prejudice in the conversion.

2021 meeting in which a number of BCDAO personnel met with Binghamton Police Department (hereinafter "BPD") to discuss the investigation, listing the individuals present by name. Dkt. No. 1 at ¶¶ 106-108. Noticeably absent from the list of attendees at the meeting is Ms. Cronin. *Id.* Nor is there any allegation anywhere else in the Complaint that Ms. Cronin "directly approved investigative strategies and tactics" or has any involvement with Plaintiff's arrest. *See generally* Dkt. No. 1. Rather, Defendant Congdon is alleged to have made the decision to arrest Plaintiff. *Id.* at ¶¶ 130-133 ("Despite there being no probable cause to charge Plaintiff, Defendant Congdon met with BPD on or about February 22, 2022 and decided with BPD to file criminal charges against Plaintiff, Leor Kweller, and Jordan Rindgen in local court.").

Additionally, there is no allegation that Ms. Cronin, a line Assistant District Attorney, had any decision-making authority to "approve" investigative strategies by the Binghamton Police Department (hereinafter "BPD") or her supervisors within the BCDAO. To the contrary, it is alleged that at all times relevant Ms. Cronin was "under the supervision of Defendants Korchak and Loughran." Dkt. No. 1 at ¶ 129. In sum, Plaintiff's argument that Ms. Cronin was personally involved in supervising and facilitating his arrest is belied by the allegations in his own Complaint.

B. <u>Ms. Cronin's Alleged Actions are Covered by Prosecutorial Immunity</u>

The remainder of Plaintiff's allegations regarding Ms. Cronin stem from her alleged failure to seek out and preserve certain electronic evidence and that she withheld exculpatory DNA tests results. Dkt. No. 80 at 25. Plaintiff seems to argue that because the alleged actions occurred prior to the commencement of the prosecution, they are investigatory and not subject to immunity. *Id.* at 49-50. Plaintiff's position is legally and factually flawed for numerous reasons.

As an initial matter, the Second Circuit has held that a prosecutor's failure to promptly disclose DNA test results is covered by absolute prosecutorial immunity. *Warney v. Monroe County*, 587 F.3d 113, 123-24 (2d Cir. 2009). Plaintiff's Complaint makes clear that the DNA

2

results which Plaintiff alleges Ms. Cronin failed to promptly disclose were not available to Ms. Cronin until *after* the criminal prosecution began. *See* Dkt. No. 1 at ¶ 160 ("Ultimately, after Plaintiff was arraigned on the Rape in the First Degree and Sexual Abuse in the First Degree charges, Plaintiff and Leor Kweller were excluded by DNA as contributors to the DNA obtained through Defendant Herceg's forensic rape examination."). Thus, to the extent that there was a delay in the disclosure of the DNA results, this occurred after the initiation of the criminal prosecution and is covered by prosecutorial immunity. Additionally, the Second Circuit has held that "prosecutors are immune from § 1983 liability for their conduct before a grand jury." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). Therefore, to the extent Plaintiff's claims against Ms. Cronin rely on conduct related to the grand jury presentation, she entitled to absolute immunity.

Finally, Plaintiff alleges that Ms. Cronin failed to preserve and disclose potentially exculpatory cell phone data from the Complainants' devices. *See* Dkt. No. 80 at 25. "State prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.'" *Hill*, 45 F.3d at 660-61 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). This includes "evaluating and organizing evidence for presentation at trial or to a grand jury … or determining which offenses are to be charged." *Id.* (citations omitted). It is similarly clear that absolute immunity attaches where a prosecutor withholds exculpatory evidence following the commencement of a criminal prosecution and, as an attendant consequence, improperly files a certificate of compliance with discovery requirements. *See Warney*, 587 F.3d at 125; *Lawlor v. Connelly*, 471 Fed. Appx. 64, 65 (2d Cir. 2012); *Hill*, 45 F.3d at 664; *Letteri v. Department of Justice*, No. 23-CV-697, 2024 WL 2278247, at *3 (W.D.N.Y. Apr. 30, 2024) (citing *D'Alessandro v. City of New York*, 2016 WL 6926516, at * 5 (E.D.N.Y. Nov. 28, 2016) (collecting cases).

3

Plaintiff argues that absolute immunity does not apply to prosecutorial conduct that occurs before charges are formally filed. Dkt. No. 80 at 45-54. But, contrary to Plaintiff's supposition, there is no bright line test that precludes the application of prosecutorial immunity to all conduct prior to the charging or indictment of a criminal defendant. Instead, "the ultimate question is whether the prosecutors have carried their burden of establishing that they were functioning as advocates when they engaged in the challenged conduct." *Warney*, 587 F.3d at 121 (cleaned up). However, "it is unhelpful to ascertain the prosecutors' functional role by isolating each specific act done or not done; rather, a prosecutor's function depends chiefly on whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate." *Id.* at 123.

"Prosecutors are protected by absolute immunity for "for acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "Courts are clear that '[t]he prosecutor's role as an advocate, and therefore absolute immunity, may extend beyond the initial judicial proceeding.'" *Howard v. City of Rochester*, — F. Supp. 3d —, 2025 WL 860306, at *4 (W.D.N.Y. Mar. 19, 2025) (quoting *Bermudez v. City of New York*, No. 11-CV-750, 2013 WL 593791, at *4 (S.D.N.Y. Feb. 14, 2013)). "This protection extends both backwards, to the pre-indictment stages of litigation, and forward." *Id.* The Second Circuit has explained that the operative question is whether "the challenged actions are part of the prosecutor's role as an advocate for the state" regardless of the stage of the proceeding. *Warney*, 587 F.3d at 123. Notably, when the Second Circuit was forced to grapple with a similar ambiguity before it extended absolute prosecutorial immunity to prosecutors working on post-conviction collateral proceedings, it did not hold that the stage of the proceeding was dispositive but instead emphasized that the determinative factor is the role that prosecutor plays when engaging in the alleged conduct. *See Warney*, 587 F.3d 113, 121-23 (2d Cir. 2009) (comparing the approaches of various circuits).

4

Here, the timing of Ms. Cronin's alleged conduct is important. Though Plaintiff attempts to cast the investigatory period as a sprawling in length, Ms. Cronin's alleged involvement is extremely limited in scope and time. *See generally* Dkt. No. 1. Review of the allegations in the Complaint demonstrates that Ms. Cronin was *not* present for the various meetings Plaintiff describes between BCDAO and BPD prior to the grand jury presentation. *See id.* at ¶¶ 106-13. Nor is it alleged that Ms. Cronin advised or instructed BDP to arrest Plaintiff. *See id.* at ¶¶ 130-32. In fact, there is no allegation that Ms. Cronin was involved in the prosecution until February of 2022. *Id.* at ¶¶ 128-29. The case was presented to the grand jury less than a month later. *See id.* at ¶ 154. There is no plausible allegation that Ms. Cronin was aware of and failed to preserve and/or disclose exculpatory cell phone data during this approximately month-long period and Plaintiff's blanket statement that the "District Attorney Defendants" knew of and withheld exculpatory evidence during the investigatory phase, Dkt. No. 80 at p. 52, finds no support in the Complaint as against Ms. Cronin. *See* Dkt. No. 1 at ¶¶ 104-127.

Instead, Ms. Cronin's involvement, as alleged in the Complaint, is clearly within the adjudicative realm. *Id.* at ¶¶ 153-55 (describing discovery issues and presentation to the grand jury); ¶ 159 (describing the filing of a certificate of discovery compliance with the Court); ¶ 162 (alleging post-indictment failures to obtain evidence); ¶¶ 164-68 (describing post-indictment disputes regarding access to electronic discovery); ¶ 170-72 (detailing post-indictment litigation regarding a protective order for cellular data). To the extent that Ms. Cronin was assigned to the case within the month prior to the presentation of the case to the grand jury, it is clear that her role was in an adjudicatory capacity. Plaintiff has neither alleged nor provided evidence to the contrary. Therefore, Ms. Cronin is entitled to absolute prosecutorial immunity on all Plaintiff's claims.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY QUALIFIED IMMUNITY

Plaintiff does not address Ms. Cronin's alternative arguments regarding her entitlement to qualified immunity. *See* Dkt. No. 80 at 54-58. Therefore, to the extent Plaintiff has not opposed the motion, it should be granted. However, even if the Court were to consider the merits of Ms. Cronin's qualified immunity defense in the absence of opposition from Plaintiff, Ms. Cronin is entitled to qualified immunity for the reasons set forth in her original moving papers. *See* Dkt. No. 74-1 at 10-12.

## III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM

Even if the Court finds that Ms. Cronin is not entitled to absolute or qualified immunity, each and every one of Plaintiff's claims against Ms. Cronin fail for the reasons set forth below.

A.    <u>Malicious Prosecution and False Arrest Claims</u>

In the context of both malicious prosecution and false arrest claims, the existence of probable cause is an absolute defense. *See Davis v. City of New York*, 840 Fed. Appx. 631, 634 (2d Cir. 2021); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). An "indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)). Plaintiff does not dispute that probable cause is an absolute defense to malicious prosecution and false arrest claims, but instead argues (1) that there never was probable cause and, (2) to the extent there was probable cause, it dissipated due to failure to examine and consider exculpatory evidence. *See* Dkt. No. 80 at 32-42, 60.

As the Second Circuit has explained, "it is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Debrosse v. City of*

*New York*, 739 Fed. Appx. 48, 50 (2d Cir. 2018) (quotation omitted). "'[M]ere conjecture and surmise' are insufficient to overcome the presumption of probable cause resulting from the indictment." *Id.* (quotation omitted). While the presumption of probable cause from a grand jury applies only in malicious prosecution claims, *see Savino*, 331 F.3d at 75, evidence of probable cause remains an absolute defense in false arrest claims, *see Gonzalez*, 728 F.3d at 155, and an indictment is a finding of probable cause that the defendant committed the offense charged.

Plaintiff's false arrest claim fails in light of the clear probable cause that is pleaded in the Complaint. Rather than examining the evidence that Defendants had at the time of the arrest, Plaintiff, with the benefit of hindsight, points to evidence not in Defendants' possession at the time of Plaintiff's arrest to argue that their failure to obtain and disclose this evidence demonstrates a lack of probable cause. Dkt. No. 80 at 32-42. The allegations in the Complaint demonstrate that, at the time of Plaintiff's arrest, Defendants had credible allegations from seemingly reliable Complainants. Though Plaintiff contends that contradictory evidence regarding the veracity of the criminal Complainants' claims existed, even assuming that is true, the existence of contradictory evidence does not negate probable cause. *See Berie v. Stevenson*, No. 5:18-cv-119, 2019 WL 1017317, *5-6 (N.D.N.Y. Mar. 4, 2019).

As to his malicious prosecution claim, Plaintiff attempts to rebut the presumption of probable cause stemming from the indictment by arguing that the indictment was obtained through misconduct due to alleged failures to present exculpatory evidence. *Id.* at 42-43. Specifically, Plaintiff alleges that the following pieces of exculpatory evidence were not presented to the grand jury: (1) surveillance footage from nearby premises, (2) DNA evidence, and (3) cell phone data from the Complainants' cell phones. *Id.* However, as noted above, the results of the DNA tests were not available until after the grand jury presentation. Dkt. No. 1 at ¶ 160 ("Ultimately, after Plaintiff was arraigned … Plaintiff and Leor Kweller were excluded by DNA as contributors to

7

the DNA obtained through Defendant Herceg's forensic rape examination."). There is no plausible allegation that Ms. Cronin was in possession of cell phone or surveillance footage but failed to produce them. *See generally id.* Therefore, Plaintiff's remaining arguments similarly fail because failure to disclose and present exculpatory not in a prosecutor's possession does not constitute misconduct. *See Young v. Zon*, 827 F. Supp. 2d 144, 171 (W.D.N.Y. 2011) (citing *United Staes v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993)); *see also Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 335 (S.D.N.Y. 2017) (noting that failure to investigate leads and conducting a deficient investigation "does not constitute the suppression of evidence"). Thus, Plaintiff has failed to rebut the presumption of probable cause established by the indictment.

B.     Section 1983 Due Process Violation

Plaintiff claims he was deprived of his liberty without due process of law and denied a fair trial based on the Defendants' alleged fabrication of evidence, withholding exculpatory and impeachment evidence, and deliberate failure to conduct a constitutionally adequate investigation. Dkt. No. 1 at ¶ 198. Even in his opposition, Plaintiff still fails to point to a specific allegation that Ms. Cronin fabricated evidence. *See generally* Dkt. No. 80. With respect to this claim, the only allegations to which Plaintiff points regarding Ms. Cronin is that she "withheld exculpatory evidence obtained during the processing of DNA test results that excluded [Plaintiff] and his brother as contributors to biological material recovered from the complainant-defendants." Dkt. No. 80 at 62. However, the results of the DNA test were provided to Defendants in the summer of 2022, over a year before trial began, negating any potential unfair prejudice at trial. Dkt. No. 1 at ¶¶ 161(d), 162, 183. Therefore, Plaintiff fails to state a § 1983 due process claim against Ms. Cronin.

C.     Failure to Intervene

Because, for the reasons set forth above and in Ms. Cronin's moving papers, Plaintiff's malicious prosecution and due process claims fail, Plaintiff's failure to intervene claim fails as well. *See Kayo v. Mertz*, 531 F. Supp. 3d 774 (S.D.N.Y. 2021) (citing *Weider v. City of New York*, 569 Fed. App'x 28, 30 (2d Cir. 2014)) (noting that a "plaintiff cannot succeed on a claim for failure to intervene under 1983 when there is no underlying constitutional violation"). For these reasons, and those articulated above, Plaintiff's failure to intervene claim must be dismissed.

D.  Civil Rights Conspiracy

As discussed in Ms. Cronin's moving papers, *see* Dkt. No. 74-1 at 16-17, Plaintiff's civil rights conspiracy claim must be dismissed because he failed to plausibly allege that Ms. Cronin entered into an agreement with any other individual or entity to violate Plaintiff's rights. *See Palmer v. City of New York*, 564 F. Supp. 3d 221, 252 (E.D.N.Y. 2021). Nor is there a plausibly pled overt act attributable to Ms. Cronin. Finally, because Plaintiff's underlying constitutional claims fail for the reasons set forth above, his § 1983 conspiracy claim must be dismissed as well. *See Fiedler v. Incandela*, 222 F. Supp. 3d 141, 165 (E.D.N.Y. 2016).

E.  State Law Intentional and Negligent Infliction of Emotional Distress

Because Plaintiff's claims are based on alleged conduct which is encompassed by his claims for malicious prosecution and false arrest, his intentional and negligent infliction of emotional distress claims must be dismissed. *Thomas v. County of Putnum*, 262 F. Supp. 2d 241, 251 (S.D.N.Y. 2003) (citation omitted). Additionally, Plaintiff fails to make specific allegations that Ms. Cronin engaged in conduct which was so severe as to constitute "extreme and outrageous conduct." *See Newton v. City of New York*, 566 F. Supp. 2d 256, 275 (S.D.N.Y. 2008) (citing *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993)). Therefore, Plaintiff's state law claim for intentional, reckless, or negligent infliction of emotional distress must be dismissed.

F.  Violations of the New York State Constitution

9

Once again, Plaintiff appears not to oppose Ms. Cronin's arguments regarding Plaintiff's state constitutional claims, *see* Dkt. No. 80 at 88-89, therefore, her motion should be granted. However, to the extent the Court considers the merits of the claim despite the lack of opposition, this claim must be dismissed for the reasons set forth in Ms. Cronin's moving papers. *See* Dkt. No. 74-1 at 17-18.

## **CONCLUSION**

For the foregoing reasons, Defendant Amanda Cronin, respectfully requests the Court grant her motion to dismiss Plaintiff's Complaint as against her in its entirety, with prejudice[2], together with such other and further relief the Court deems just and proper.

DATED: April 24, 2025

**CAPEZZA HILL, LLP**

_____
Benjamin W. Hill, Esq.
Alexandra N. von Stackelberg, Esq.
*Attorneys for Amanda Cronin*
30 South Pearl Street, P-110
Albany, New York 12207
(518) 478-6065
ben@capezzahill.com

---

[2] In his "Conclusion," Plaintiff asks for permission to amend his Complaint with respect to any claims the Court deems subject to dismissal. Dkt. No. 80 at 90-91. Ms. Cronin opposes this request. Plaintiff has had ample opportunity to amend their pleading throughout the pendency of this litigation. Additionally, there is no evidence that Plaintiff would be able to overcome the applicability of absolute prosecutorial immunity to Ms. Cronin in light of her lack of involvement with the prosecution until just prior to the commencement of court proceedings. Any amendment of the claims against Ms. Cronin would, therefore, be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

10