UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
YARON KWELLER,

                              Plaintiff,

          -against-                                           Case No. 3:24-CV-1328 (ECC/ML)

THE COUNTY OF BROOME, THE CITY OF
BINGHAMTON, THE BROOME COUNTY
DISTRICT ATTORNEY'S OFFICE, DISTRICT
ATTORNEY MICHAEL A. KORCHAK, CHIEF
ASSISTANT DISTRICT ATTORNEY MARK
LOUGHRAN, ASSISTANT DISTRICT ATTORNEY
ALYSSA CONGDON, ASSISTANT DISTRICT
ATTORNEY AMANDA CRONIN, DISTRICT
ATTORNEY INVESTIGATOR JEFF J. WAGNER,
BINGHAMTON POLICE DEPARTMENT CHIEF
JOSEPH ZIKUSKI, BINGHAMTON POLICE
DEPARTMENT CAPTAIN CORY MINOR,
BINGHAMTON POLICE DEPARTMENT
INVESTIGATOR AMANDA MILLER, all in their
individual capacities, and JOHN DOES 1-10,
representing Broome County District Attorney's Office
and Police Department Employees Whose Names Are
Currently Unknown, HAILEY DEMKOVICH, and
SAMANTHA HERCEG.

                              Defendants.
----------------------------------------------------------X

**DEFENDANT ALYSSA CONGDON'S
REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

**HACKER MURPHY LLP**
James C. Knox, Esq.
Bar Roll No. 517109
Alishah E. Bhimani
Bar Roll No. 704214
28 Second Street
Troy, NY 12180
*Attorneys for Defendant Alyssa Congdon*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................................1

STANDARD OF REVIEW ...........................................................................................................1

ARGUMENT .................................................................................................................................2

     I.     PLAINTIFF'S CONCLUSORY ASSERTION THAT ALL ALLEGED
               CONDUCT BY DEFENDANT CONGDON IS ADMINISTRATIVE OR
               INVESTIGATORY IS BELIED BY HIS PLEADINGS, AND ALL HIS
               CLAIMS REMAIN BARRED BY ABSOLUTE PROSECUTORIAL
               IMMUNITY.......................................................................................................2

     II.    REGARDLESS OF WHETHER PLAINTIFF "ADEQUATELY
               ALLEGED" THE ABSENCE OF PROBABLE CAUSE, ANY
               INVOLVEMENT BY DEFENDANT CONDON IN DETERMINING
               TO ARREST PLAINTIFF IS PROTECTED BY QUALIFIED
               IMMUNITY.......................................................................................................4

     III.   DEFENDANT CONGDON CANNOT PLAUSIBLY BE A
               "POLICYMAKER" FOR <u>MONELL</u> PURPOSES.......................................................8

CONCLUSION...............................................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
  556 U.S. 662 (2009). .................................................................................................1

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.
  493 F.3d 87 (2d Cir. 2007) ........................................................................................2

Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 570 (2007) ......................................................................................1,2

Birmingham v. Ogden,
  70 F.Supp.2d 353 (S.D.N.Y. 1999) ..........................................................................8

Buckley v. Fitzsimmons,
  509 U.S. 259 (1993) ..................................................................................................2

Elias v. Rolling Stone LLC,
  872 F.3d 97 (2d Cir. 2017) ........................................................................................1

Imbler v. Pachtman,
  424 U.S. 409 (1976) ..................................................................................................2

Jocks v. Tavernier,
  1 316 F.3d 128 (2d Cir. 2003) ...................................................................................5

McClellan v. Smith,
  439 F.3d 137 (2d Cir. 2006) ......................................................................................5

Pembaur v. City of Cincinnati,
  475 U.S. 469 (1986) ..................................................................................................8

Weiner v. McKeefery,
  90 F. Supp.3d 17 (E.D.N.Y. 2015) ...........................................................................5

Wood v. Town of East Hampton,
  2010 WL 3924847 (E.D.N.Y. 2010) .........................................................................8


## <u>Rules</u>

Fed. R. Civ. P. 12(b) .......................................................................................................1

**PRELIMINARY STATEMENT**

Most of plaintiff's contentions in opposition have been thoroughly addressed in defendant Alyssa Congdon's original motion to dismiss papers. (Dkt. No. 65). Many of the arguments in plaintiff's papers pertain to contentions of other defendants. (Dkt. No. 80). Therefore, this Reply Memorandum is limited to only those points raised by plaintiff which require a response by defendant Congdon.

Primarily, it must be noted that plaintiff does not oppose defendant Congdon's contention that she is completely shielded by qualified immunity. Plaintiff does not address defendant Congdon's qualified immunity arguments, and limits his contentions to the qualified immunity argument raised by the City defendants. Accordingly, upon that concession, plaintiff's complaint must be dismissed.

Regardless, despite plaintiff's contentions to the contrary, upon the facts as pleaded (and not as plaintiff now contends he meant to plead), defendant Congdon is also completely shielded by absolute prosecutorial immunity.

**STANDARD OF REVIEW**

On a motion to dismiss under F.R.C.P. 12(b)(6), the Court must take "all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017). A motion to dismiss pursuant to Rule 12(b)(6) does not lie if a plaintiff failed to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability

1

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

Id. In this respect, to survive dismissal, a plaintiff need only "provide the grounds upon which his

claim rests through factual allegations sufficient 'to raise a right to relief above the speculative

level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell

Atl. Corp. v. Twombly, 440 U.S. at 555). The process of determining whether a plaintiff has

"nudged [his] claims ... across the line from conceivable to plausible" entails a "context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."

Ashcroft v. Iqbal, 556 U.S. at 679-80.

As discussed below, plaintiff has not met the requisite standard as to any claim and,

therefore, the complaint must be dismissed in its entirety.

**ARGUMENT**

**I.     PLAINTIFF'S CONCLUSORY ASSERTION THAT ALL ALLEGED CONDUCT
BY DEFENDANT CONGDON IS ADMINISTRATIVE OR INVESTIGATORY IS
BELIED BY HIS PLEADINGS, AND ALL HIS CLAIMS REMAIN BARRED BY
ABSOLUTE PROSECUTORIAL IMMUNITY.**

In an act of litigatory legerdemain, plaintiff seeks to transmute all of defendant Congdon's

complained-of conduct into "investigative and administrative" acts. See Dkt. 80, at 35. Plaintiff

cites to Buckley v. Fitzsimmons, 509 U.S. 259 (1993), but ignores its plain message. Plaintiff

commits the same fault of the petitioner in Buckley, who sought to limit absolute immunity "only

to the act of initiation itself and to conduct occurring in the courtroom." Id., at 272. The Supreme

Court noted that such a position, like that of plaintiff herein, was foreclosed by its opinion in Imbler

v. Pachtman, (424 U.S. 409 [1976]), in which it stated that "the duties of the prosecutor in her role

as advocate for the State involve actions preliminary to the initiation of a prosecution and actions

apart from the courtroom," and are nonetheless entitled to absolute immunity. Id. at 273.  The

Supreme Court explained that the protected acts "must include the professional evaluation of the

evidence assembled by the police and appropriate preparation for its presentation at trial or before

a grand jury after a decision to seek an indictment has been made." Id.

Concededly, the Supreme Court cautioned that just because a prosecutor performs an act

does not render her immune, for example, "[w]hen a prosecutor performs investigative functions

normally performed by a detective or police officer," including, for example, "if a prosecutor plans

and executes a raid on a suspected weapons cache." Id., at 273.  The Court noted that, similarly, a

prosecutor who takes non "the detective's role in searching for the clues and corroboration that

might give h[er] probable cause to recommend a suspect be arrested," would not be protected by

absolute immunity. Id.  However, nowhere does plaintiff allege that defendant Congdon took on

such activities.  Instead, plaintiff's allegations either assert that defendant Congdon evaluated

evidence (he says incorrectly), or failed to take on a sufficiently investigative role by failing to

search for the clues and corroboration that he claims would have exonerated him.

To the extent that plaintiff alleges that defendant Congdon is unprotected by absolute

immunity because she allegedly determined to arrest him "solely to obtain further evidence," (Dkt.

80, at 35), such contention is both purely conclusory, and belied by the primary facts that gave rise

to arguable probable cause to arrest him in the first place (and discussed more fully in Point II,

infra).  In brief, defendant decided to file criminal charges against plaintiff after evaluating the

evidence gathered by police – including the criminal complainants' police reports and testimony

(Dkt. 1 ¶ 69), text messages provided by the criminal complainants (Dkt. 1 ¶¶ 72-73) and the video

surveillance plaintiff and his criminal co-defendants provided (Dkt. 1 ¶80).  Such is a

quintessential prosecutorial task absolutely immune from civil liability.

Next, plaintiff contends that he "alleges the District Attorney Defendants [including

defendant Congdon] knew before Plaintiff's arrest that the rape kit results contradicted Demkovich

3

and Herceg's Account." Dkt. 80, at 52.  However, a review of plaintiff's complaint shows that in

fact no such fact was alleged, anywhere, in any fashion.  Next, plaintiff alleges that he pleaded that

defendant Congdon knew prior to his arrest that defendant Demkovich "thought the activity was

consensual," although, as discussed in Point II, <u>infra</u>, plaintiff's complaint makes clear that this

information was unknown to any party until long after plaintiff was charged and arrested, as

plaintiff has alleged that the criminal complainant defendants themselves took steps to conceal the

information from police and prosecutors.  Finally, while plaintiff attempts to get the most mileage

out of his allegation that defendant Congdon instructed defendant "Herceg to destroy exculpatory

evidence," plaintiff concedes, as he must, that there is no allegation that the allegedly destroyed

evidence was actually exculpatory or that he can say when such a destruction occurred.  While he

would now plead, in a memorandum of law, that it was prior to the trial (<u>see</u> Dkt. 80, at 53), a

thorough review of his complaint reveals that no such fact is pleaded.  Making favorable inferences

does not include supplying new, additional facts not pleaded.  In short, all of plaintiff's arguments

that defendant Congdon engaged in investigative activity are either inherently logically infirm or

are contradicted by the facts in the complaint that he himself has pleaded.

II.     **REGARDLESS OF WHETHER PLAINTIFF "ADEQUATELY ALLEGED" THE ABSENCE OF PROBABLE CAUSE, ANY INVOLVEMENT BY DEFENDANT CONDON IN DETERMINING TO ARREST PLAINTIFF IS PROTECTED BY QUALIFIED IMMUNITY.**

Plaintiff contends that, if all the facts surrounding his involvement in the charged offenses

were known at the time the decision to charge and arrest him was made, a weighing of all such

facts would have required a reasonable person to conclude that probable cause was absent.

Plaintiff contradictorily declares that "probable cause was absent from the outset and dissipated

when Defendants intentionally ignored evidence already available to them."  Dkt. 80, at 32.

Plaintiff ignores his own pleading, which declares as fact that "[o]n November 27, 2021,

Defendants Herceg and Demkovich reported a sexual assault to the New York State Police." Dkt. 1, ¶ 69. Moreover, plaintiff now ignores that a grand jury was convened, heard testimony and voted to indict plaintiff for Rape in the First Degree. Dkt. 1, ¶ 156-157. Plaintiff pleads that the allegations against him were false – despite that an acquittal in criminal court does not affirmatively negative a fact for civil court purposes – and then attempts to rely on that assertion to conclude that "no probable cause existed to arrest Plaintiff." Dkt. 1, ¶132.

But regardless of whether Plaintiff believes he has adequately alleged that, weighing all the facts now known, a reasonable officer would not have arrested him, the standard by which this motion to dismiss all of plaintiff's claims which rest on the absence of probable cause, is one of arguable probable cause, which exists so long as reasonable officers would find the cause sufficient. (see McClellan v. Smith, 439 F.3d 137, 147-148 [2d Cir. 2006]). Plaintiff's bald "denials are insufficient to obviate probable cause." (Weiner v. McKeefery, 90 F. Supp.3d 17, 32 [E.D.N.Y. 2015] [citations omitted]). Moreover, although plaintiff's complaint is rife with things plaintiff believes that defendants *should* have investigated, defendant Congdon did not have a "duty to investigate exculpatory defenses offered by the person being arrested," as plaintiff now asserts. (Jocks v. Tavernier, 316 F.3d 128, 135-136 [2d Cir. 2003]).

Although plaintiff conclusorily alleges that his arrest was only for "evidence gathering," and done in the absence of probable cause, as previously noted, the criminal complainants had filed a police report the day immediately following the night of the alleged rape, and later gave a sworn testimony that they were sexually assaulted by plaintiff. Dkt. 1 ¶¶ 69-72. The criminal complainants submitted to interviews by police, underwent forensic sexual assault examinations, and provided photographs and text messages from the night in question to corroborate that they had been with plaintiff. Dkt. 1 ¶¶ 71-72, 161-a. Accordingly, even as pleaded by plaintiff,

defendant Congdon possessed sufficient evidence to reasonably conclude (even if she was wrong) that probable cause existed to arrest plaintiff, and qualified immunity now protects her from liability for making that decision.

Plaintiff attempts to plead his way to a new reality than that which existed at the time of his arrest, by using facts learned later to support his contention that the criminal complainant defendants should not have been believed at the outset. See Dkt. 80, at 22-28. Indeed, plaintiff spends much time analyzing the criminal complainant defendants' alleged motive to lie, in the form of their "desire to disclaim responsibility for their conduct to third parties, their concern they might get in trouble, and their desire to collect money from Plaintiffs [sic]." Dkt. 80, at 36. For support, plaintiff refers to that portion of his complaint in which he details text messages obtained by defendants after plaintiff's arrest, including numerous text messages which were not even written, much less in defendants' possession, until many months after plaintiff's arrest. See Dkt. 1, ¶¶ 67-68, 72-74, 107, 111, 115, 117, 119. Plaintiff even pleads that defendant Congdon "did not know how to obtain" the criminal complainants' electronic data. See Dkt. 1, ¶124.

Although plaintiff was arrested in the beginning of 2022, he repeatedly pleads that defendant Congdon failed to obtain the very text messages he now relies on to show probable cause was lacking for his arrest, and did not even get the extractions of the criminal complainants' cellular telephones, until November 2022. Dkt. 1, ¶¶ 119, 144, 159, 164-166. Thus, by his own pleadings, plaintiff himself avers that, at the time of his arrest, defendant Congdon did not have the "exculpatory" text messages which allegedly show the criminal complainants' motive to lie about being sexually assaulted. The proper assessment of the reasonableness of defendant Congdon's alleged probable cause determination can only fairly be evaluated in light of what plaintiff alleges she knew at the time, and not upon what she might have known had she taken all

6

of the investigative steps he desired.  Such is not the standard.

Plaintiff's arguments to the contrary are self-defeating.  Plaintiff contends that "[d]efendants were explicitly aware that complainant-defendants provided statements directly undermining their own allegations," thereby "dissipating" probable cause by defendant Herceg "explicitly" denying intercourse had occurred and defendant Demkovich admitting that sexual activity was consensual.  Dkt. 80, at 29-30.  However, the only facts so pleaded by plaintiff in his complaint come directly from the text messages which were not obtained until well after plaintiff's arrest, as plaintiff's complaint makes clear.  See Dkt. 1, at ¶¶ 68, 74 (noting the allegedly exculpatory, but "excluded text messages," had not been provided to any other party by the criminal complainant defendants), ¶ 77 (noting that the criminal complainant defendants refused to give police access to their phones or electronic data, where the allegedly exculpatory messages were housed), ¶¶ 117-119 (noting that Thomas Saitta, Esq., had a folder containing printouts of electronic data from the criminal complainants phones, but that such were never retrieved, despite defendant Congdon directing an investigator to do so), ¶120 (noting that the criminal complainant defendants refused to give police or prosecutors access to their devices)  ¶ 172 (noting that the exculpatory text message material was not "unearthed" until February 2023, where it was first shown that defendant Herceg had previously expressed in a message that she "was certain she did not have intercourse on the night in question" ).

There are many more examples in plaintiff's complaint, all of which add up to plaintiff seeking to fault defendant Congdon for "ignoring" allegedly exculpatory information which she did not have, and which rely on that later-discovered evidence to "dissipate" the probable cause for his arrest.  This circular reason cannot cure the defects in plaintiff's complaint.  In short, while all favorable inferences must be drawn from the pleadings, no such inference is available to

overcome the illogic of the theory pleaded herein.

### III.   DEFENDANT CONGDON CANNOT PLAUSIBLY BE A "POLICYMAKER" FOR MONELL PURPOSES.

As noted previously, defendant Congdon is sued only in her individual capacity, but even generously read, plaintiff's Monell claims against her fail because defendant Congdon was not a policymaker for Monell purposes, despite plaintiff's contention to the contrary.  All facts which plaintiff now contends demonstrate that defendant Congdon was a policymaker are purely derivative versions of his claims against her and other individual defendants. See Dkt. 80, at 77. While it is clear that, as a bureau chief, defendant Congdon had some supervisory authority, it is also clear that she was plainly several steps below the District Attorney – the true policymaker for the district attorney's office – in the office hierarchy.  Here, plaintiff would turn every individual defendant into a "policymaker," but this approach has been expressly rejected. See Wood v. Town of East Hampton, 2010 WL 3924847 (E.D.N.Y. 2010), citing Birmingham v. Ogden, 70 F.Supp.2d 353, 374 (S.D.N.Y. 1999).

Plaintiff cannot reasonably allege that defendant Congdon possessed "final authority to establish municipal policy," as required, and "[t]he fact that particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembaur v. City of Cincinnati, 475 U.S. 469, 481-482 (1986). Conclusory allegations that plaintiff "is a policymaker" are insufficient to transform a mere county employee, like defendant Congdon, into a policymaker for a county office, like the District Attorney's Office.  Accordingly, plaintiff's Monell claim against defendant Congdon must be dismissed.

## CONCLUSION

For the above reasons, defendant Alyssa Congdon respectfully requests the Court grant her motion to dismiss plaintiff's complaint as against her in its entirety, with prejudice, together with such other and further relief the Court deems just and proper.

DATED:        April 24, 2025

**HACKER MURPHY, LLP**

/s/James C. Knox
James C. Knox, Esq.
Bar Roll No. 517109
*Attorneys for Defendant Alyssa Congdon*

9