UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

YARON KWELLER,

           Plaintiff,

- against -

THE COUNTY OF BROOME, THE CITY OF BINGHAMTON, THE BROOME COUNTY DISTRICT ATTORNEY'S OFFICE, DISTRICT ATTORNEY MICHAEL A. KORCHAK, CHIEF ASSISTANT DISTRICT ATTORNEY MARK LOUGHRAN, ASSISTANT DISTRICT ATTORNEY ALYSSA CONGDON, ASSISTANT DISTRICT ATTORNEY AMANDA CRONIN, DISTRICT ATTORNEY INVESTIGATOR JEFF J. WAGNER, BINGHAMTON POLICE DEPARTMENT CHIEF JOSEPH ZIKUSKI, BINGHAMTON POLICE DEPARTMENT CAPTAIN CORY MINOR, BINGHAMTON POLICE DEPARTMENT INVESTIGATOR AMANDA MILLER, all in their individual capacities, and JOHN DOES 1-10, representing Broome County District Attorney's Office and Police Department Employees Whose Names Are Currently Unknown, HAILEY DEMKOVICH, and SAMANTHA HERCEG,

           Defendants.
_____

Case No. 3:24-cv-01328-AJB-ML

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF CITY OF BINGHAMTON AND
BPD DEFENDANTS' MOTION TO DISMISS**

WHITEMAN OSTERMAN & HANNA LLP
*Attorneys for the City and BPD Defendants*
One Commerce Plaza
Albany, New York 12260
Telephone: (518) 487-7600

*Of Counsel:*
  William S. Nolan, Esq.
  Gabriella R. Levine, Esq.
  Christina F. Vitolo, Esq.

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

    I.   PLAINTIFF FAILS TO PLEAD A § 1983 MONELL CLAIM. ..................................... 1

    II.  PLAINTIFF'S § 1983 CLAIMS FAIL TO ADEQUATELY PLEAD PERSONAL INVOLVEMENT OF ANY BPD DEFENDANTS. ........................................................... 5

    III. THE COMPLAINT FAILS TO STATE ANY COGNIZABLE CLAIM AGAINST THE CITY OR BPD DEFENDANTS UNDER FEDERAL OR NEW YORK STATE LAW. ....................................................................................................................... 9

CONCLUSION ........................................................................................................................ 10

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Page:**

**Federal Rules**

Fed. R. Civ. Procedure 12(b)(6) ................................................................................................ 1

**Federal Statutes**

42 U.S.C. §1983 .............................................................................................................. 1, 5, 6

**Federal Cases**

Agosto v. New York City Dep't of Educ., 982 F.3d 86 (2d Cir. 2020) ......................................... 3

Bermudez v. City of New York, 790 F.3d 368 (2d Cir. 2015) ...................................................... 9

Canner v. City of Long Beach, 2014 WL2862791 (E.D.N.Y. June 23, 2014) .............................. 2

Castle Rock v. Gonzales, 545 U.S. 748 (2005) ........................................................................... 2

City of St. Louis v. Praprotnik, 485 U.S. 112 (1988) ............................................................... 2, 4

Colon v. Coughlin, 58 F.3d 858 (2d Cir. 1995) ........................................................................... 5

Curley v. Vill. of Suffern, 268 F.3d 65 (2d Cir. 2001) ................................................................. 9

Dorsainvil v. City of New York, 2020 WL 64882348 (E.D.N.Y. Nov. 4, 2020) ........................... 5

Duffelmeyer v. Marshall, 2008 WL 11517823, (S.D.N.Y. March 28, 2008) ............................... 2

Grullon v. City of New Haven, 720 F.3d 133 (2d Cir. 2013) ....................................................... 5

Harrington v. County of Suffolk, 607 F. 3d 31 (2d Cir. 2010) ..................................................... 2

Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) ............................................................................. 9

Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000) ............................................................................... 3

Little v. Soulia, 2019 WL 13378467 (N.D.N.Y. Apr. 17, 2019) .................................................. 8

Monell v. Dept. of Soc. Serv. of the City of N. Y., 436 U.S. 658 (1978) ......................... 1, 2, 3, 5

Moran v. Town of Greenwich, 2025 WL 579995 (D. Conn.) ...................................................... 6

Ocasio v. City of Canandaigua, 513 F. Supp. 3d 310 (W.D.N.Y. 2021)......................................... 4

Ortiz v. County of Nassau, 2025 WL 590706 (E.D.N.Y. Feb. 24, 2025)..................................... 10

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)........................................................................ 2

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997) ....................................................... 9

Schwab v. Smalls, 435 Fed. App'x, 37 (2d Cir. 2011)..................................................................... 2

Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020) ................................................................... 5, 6

Whitfield v. City of New York, 96 F. 4th 504 (2d Cir. 2024) .......................................................... 5

Ying Li v. City of New York, 246 F. Supp. 3d 578 (E.D.N.Y. 2017)............................................. 8

**PRELIMINARY STATEMENT**

The City and BPD Defendants[1] respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. Procedure 12(b)(6).

Plaintiffs' omnibus opposition brief (Dkt. No. 80 ["Pltf.'s Br."]) repeatedly misstates or fails to substantively address the City and BPD Defendants' arguments, relies on outdated case law, and raises arguments that are unsupported (and often contradicted) by the factual allegations in the Complaint. Nothing in Plaintiff's submission alters the conclusion that his claims against the City and BPD Defendants should be dismissed because (1) Plaintiff fails to plead a claim for municipal liability against the City or BPD under Monell; (2) Plaintiff fails to plead personal involvement of any BPD Defendants, foreclosing relief against them in their individual capacities for Plaintiff's federal claims; and (3) Plaintiff fails to state any cognizable state law claim against the City or the BPD Defendants. For these reasons, and those set forth at length in the City and BPD Defendants' initial memorandum of law (Dkt. No. 40-1 ["Defs.' Br."]), Plaintiff's Complaint should be dismissed in its entirety against the City and BPD Defendants.

**ARGUMENT**

**I.    PLAINTIFF FAILS TO PLEAD A § 1983 MONELL CLAIM.**

In response to the City and BPD Defendants showing that Plaintiff fails to state a claim for municipal liability under Monell v. Dept. of Soc. Serv. of the City of N. Y., 436 U.S. 658, 694 (1978), Plaintiff argues that the Complaint sufficiently alleges municipal liability based on the actions of Chief Zikuski and Captain Minor as "final policymakers" for the City. See Pltf.'s Br. at 78. Simply labeling Chief Zikuski and Captain Minor as "policymakers," however, is insufficient

---

[1] Capitalized terms set forth herein have the same meaning as previously defined in the City and BPD Defendant's moving submission. See Dkt. No. 40-1.

to survive a motion to dismiss. See Schwab v. Smalls, 435 Fed. App'x, 37, 40 (2d Cir. 2011) (affirming dismissal of municipal liability claim where plaintiff offered only a "vague assertion" that a particular defendant was a final policymaker with respect to the conduct at issue); Canner v. City of Long Beach, 2014 WL2862791, at * 11 (E.D.N.Y. June 23, 2014) (dismissing Monell claim because plaintiff failed to "reference any state law supporting" claim that defendant was a final policymaker).

Municipal liability based on a policymaker's decision can attach "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). That alone, however, is not enough to establish municipal liability: "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, *without more*, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing *final government policy* respecting such activity before the municipality can be held liable." Id. at 482 (emphasis added); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988) ("Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy"). Law enforcement officials enjoy wide discretion in carrying out their functions, including determining how to conduct a criminal investigation. Harrington v. County of Suffolk, 607 F. 3d 31, 35 (2d Cir. 2010); see also Castle Rock v. Gonzales, 545 U.S. 748, 760 (2005).

As an initial matter, the Complaint forecloses any finding that Captain Minor was a final policymaker, given Plaintiff's allegations that he reported to and was supervised by Chief Zikuski. Compl., ¶ 70; see Duffelmeyer v. Marshall, 2008 WL 11517823, at *4, n. 3 (S.D.N.Y. March 28,

2

2008) (finding that defendant could not be a final policymaker where complaint alleged that defendant took action at the direction of his supervisor). Setting that aside, Plaintiff fails to allege that any of the BPD Defendants[2] were responsible for establishing final policy with respect to the allegedly unconstitutional conduct at issue, and instead raises conclusory and insufficient allegations that Chief Zikuski and Captain Minor had "final authority" regarding the BPD's functions, including the investigation of criminal cases. Such alleged conduct was within the discretionary authority of individual law enforcement officials and, with respect to Plaintiff's prosecution, the County Defendants. Nor does Plaintiff allege that Chief Zikuski and Captain Minor undertook any specific acts that gave rise to any of the constitutional injuries alleged in the complaint, as Plaintiff must to sustain a Monell claim under the policymaker theory. See, e.g., Agosto v. New York City Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020). Plaintiff must plausibly establish that the unconstitutional actions were "*taken or caused* by an official." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (emphasis added). Plaintiff's bare-bones allegations against Chief Zikuski and Captain Minor (i.e., that Chief Zikuski allegedly advised against the filing of criminal charges [see Compl., ¶ 92] and that Captain Minor attended meetings where the criminal case was discussed and helped execute one search warrant at an office [see Compl., ¶¶ 106, 82]) have nothing to do with their claims. Plaintiff does not allege that Chief Zikuski or Captain Minor made a single relevant decision or undertook a single relevant action with respect to any of the events or circumstances underlying this case.

Plaintiff now argues in his memorandum of law that Chief Zikuski and Captain Minor were policymakers who knew "that high exculpatory, readily-available information was not being gathered and/or not being provided to others, including prosecutors, courts, defense attorneys, and

---

[2] Plaintiff does not appear to allege or argue that Detective Miller is a final policymaker.

3

the Grand Jury." Pltf.'s Br. at 78. That extraordinary accusation is both unsupported and contradicted by the allegations in the Complaint, including Plaintiff's allegation that the BPD Defendants repeatedly sought (and were refused) data from the victims' phones and that they turned over the data as soon as they had access to it. See, e.g., Compl., ¶ 111 (alleging that the victims met with Detective Miller and refused to consent to an extraction of their phone data on December 14, 2021); ¶ 117 (alleging that on January 14, 2022, Thomas Saitta informed Defendant Congdon [not the BPD] that he had a folder with data from the victims' phones; ¶¶ 164-165 (alleging that the BPD conducted imaging of the victims' phones and provided a hard drive of data to the BCDAO [who then provided access to Plaintiffs' counsel] in November 2022).

To the extent Plaintiff premises his municipal liability claims on a theory of ratification (see Pltf.'s Br. at 79), the claims still fail because Plaintiff fails to allege that Chief Zikuski and Captain Minor "approved a subordinate's decision and the basis for it." Praprotnik, 485 U.S. at 127. In fact, according to the Complaint, Chief Zikuski expressly disagreed with the decision and told his subordinates as much (see Compl., ¶ 92). Further, Plaintiff's ratification-based claim fails because the Complaint includes no allegations even remotely suggesting ratification (including, critically, which official allegedly ratified which actions), and there are no allegations that any purportedly ratified conduct was part of a pattern of misconduct. There is simply nothing in the Complaint to support "the inference that the City employed a policy of ratifying the unlawful conduct of its officers." Ocasio v. City of Canandaigua, 513 F. Supp. 3d 310, 325 (W.D.N.Y. 2021) (citations omitted).

The City and BPD Defendants also established in their moving submission that any failure to train theory fails and Plaintiff fails to show any causal link between the alleged constitutional violation and a municipal policy or custom. Plaintiff's opposition does not meaningfully address

4

these arguments, which provide a further basis for dismissal of his claims. See, e.g., Dorsainvil v. City of New York, 2020 WL 64882348, at * 5 (E.D.N.Y. Nov. 4, 2020) (granting motion to dismiss municipal liability false arrest claim because "Plaintiff cannot plausibly allege that the City was deliberately indifferent merely by stating—based on plaintiff's individual interaction with two NYPD detectives—that the City must not have trained or supervised its NYPD detectives with respect to basic concepts like truthfulness"). Because Plaintiff has failed to adequately allege the City and BPD Defendant's liability under Monell, all of Plaintiff's claims premised on a theory of municipal liability, including his third, sixth, and seventh, causes of action, should be dismissed.

## II. PLAINTIFF'S § 1983 CLAIMS FAIL TO ADEQUATELY PLEAD PERSONAL INVOLVEMENT OF ANY BPD DEFENDANTS.

In response to the BPD Defendants' showing that the Complaint fails to adequately plead their personal involvement in the alleged deprivation of Plaintiff's constitutional rights, Plaintiff invokes an outdated standard for establishing personal involvement that the Second Circuit has expressly abrogated. See Whitfield v. City of New York, 96 F. 4th 504, 511 (2d Cir. 2024) (noting that Colon v. Coughlin, 58 F.3d 858 [2d Cir. 1995][3] was abrogated by Tangreti v. Bachmann, 983 F.3d 609 [2d Cir. 2020]). Contrary to Plaintiff's suggestion that the Court wait until facts are fleshed out at summary judgment or trial to assess the defendants' alleged personal involvement (see Pltf.'s Br. at 20), after Tangreti, courts in this District routinely dismiss claims like Plaintiff's at the motion to dismiss stage for failing to adequately allege personal involvement. See Defs.' Br. at 21-22. As Tangreti makes clear, Plaintiff must allege that each BPD Defendant, through their "own individual actions," violated Plaintiff's constitutional rights. 983 F. 3d at 618 (citation

---

[3] Although Plaintiff does not directly cite to Colon, he relies on pre-Tangreti case law in setting out the supposed standard for personal involvement. See, e.g., Pltf.'s Br. at 20, citing a 2024 W.D.N.Y. case that cites only pre-Tangreti cases to support the proposition that "Personal involvement need not be active participation"); 21 (citing a portion of Grullon v. City of New Haven, 720 F.3d 133, 138-139 [2d Cir. 2013] which sets out the five Colon factors the Second Circuit rejected in Tangreti.

5

omitted). Because Plaintiff's Complaint fails this simple test, his federal claims against the BPD Defendants individually should be dismissed.

To support his claims against supervisory defendants Chief Zikuski and Captain Minor, Plaintiff again misstates the law on personal involvement under Tangreti. Contrary to Plaintiff's argument, Tangreti did not "reaffirm that supervisors who are aware of unconstitutional conduct and fail to act may still be liable where the allegations are specific and plausible." Pltf.'s Br. at 70. Rather, a "supervisor's mere knowledge of his subordinate's" misconduct is not sufficient to establish personal involvement and the requisite facts that must be pleaded to demonstrate a defendant's personal involvement in a § 1983 claim "*will vary with the constitutional provision at issue*." Tangreti, 983 F.3d at 616 -18. (emphasis added).In Tangreti, the Second Circuit examined whether a supervisory defendant failed to act in response to a subordinate's alleged misconduct precisely due to the nature of the plaintiff's claim: Eighth Amendment deliberate indifference arising from alleged sexual abuse by the subordinate.  An essential substantive element of any Eighth Amendment deliberate indifference claim is that the defendant "personally knew of and disregarded an excessive risk" to Plaintiff's safety; that is not the case here.

Here, for example, to the extent Plaintiff's denial of due process and fair trial claim is based on alleged fabrication of evidence against him—not Eighth Amendment deliberate indifference—it is not enough for Plaintiff to merely allege that Chief Zikuski and Captain Minor were aware of and ignored such conduct; "deliberate indifference…is not an element of a fair trial claim based on alleged fabrication of evidence." Moran v. Town of Greenwich, 2025 WL 579995, at *11 (D. Conn.). Rather, to survive a motion to dismiss, Plaintiff's factual allegations must plausibly allege that Chief Zikuski and Captain Minor were, *themselves*, directly involved in the alleged fabrication of evidence. See id. at 12. Plaintiff's Complaint makes no such allegations.

6

Rather, the complaint allegations cited by Plaintiff in his opposition brief are either non-existent or contradict Plaintiff's arguments. See, e.g., Pltf.'s Br. at 21-, 22 (arguing that Chief Zikuski and Captain Minor's personal involvement is properly plead through allegations that they "intentionally ignored exculpatory evidence," and citing to four paragraphs of the Complaint which make no mention whatsoever of any allegedly exculpatory evidence in BPD's possession); 22 (arguing that the John Doe Defendants were "acting under instructions coordinated by Captain Minor and prosecutors" in allegedly unlawfully arresting Plaintiff and citing to ¶¶ 129-132 of the Complaint, which do not mention Captain Minor and allege that the decision to arrest Plaintiff was made by Defendant Congdon "under the supervision of Defendants Korchak and Loughran").

Plaintiff's allegations against Detective Miller fare no better. Plaintiff argues that he sufficiently pled her personal involvement through factual allegations that she knew, based on a communication between a private attorney and the prosecutor's office (not BPD), that Defendants Herceg and Demkovich (the complaining witnesses) were deliberately withholding exculpatory phone data, but she "intentionally failed to compel production or review this critical evidence" (Pltf.'s Br. at 22). As support for this assertion, Plaintiff cites to a string of more than a dozen paragraphs in the Complaint, of which only a single paragraph even mentions Detective Miller, and which alleges only that Detective Miller met with the complaining witnesses on December 14, 2021, a *month before* their attorney allegedly emailed Defendant Congdon (not Detective Miller) about the allegedly exculpatory evidence at issue. See Compl. at ¶¶ 111, 117.

Finally, with respect to the John Doe Defendants, Plaintiff again fails to include specific, individualized allegations that would establish the personal involvement of any Doe Defendant. Plaintiff argues that his Complaint "identifies the John Doe Defendants with adequate detail by explicitly describing their functional roles," asserting that they "were directly involved in

7

unlawfully arresting Plaintiff, knowing probable cause did not exist and acting under instructions coordinated by Captain Minor and prosecutors," and that they "actively participated in investigative misconduct, specifically failing to preserve clearly exculpatory video surveillance from multiple locations, and deliberately neglecting to gather electronic communications they knew would contradict the allegations made against" Plaintiff. Pltf.'s Br. at 22-23. To support his assertions, Plaintiff cites to a string of paragraphs in the Complaint which describe, in largely non-specific language, steps BPD allegedly took during the investigation of Plaintiff, such as conducting a search (with a warrant) of Plaintiff's office and obtaining security footage (which footage was allegedly introduced at Plaintiff's trial, contradicting Plaintiff's allegation that any of the John Doe Defendant failed to preserve it). Even at the motion to dismiss stage, these general factual allegations, to the extent they could even be construed to refer to the John Doe Defendants, are insufficient because they fail to "allege facts which plausibly suggest both who was involved in the alleged constitutional violations and how they were involved." Little v. Soulia, 2019 WL 13378467, at *10 (N.D.N.Y. Apr. 17, 2019) (dismissing claim alleged against John Doe defendants because allegations "failed to plausibly suggest that any one of" them "was personally involved" in violating plaintiff's constitutional rights); see also Ying Li v. City of New York, 246 F. Supp. 3d 578, 598-600 (E.D.N.Y. 2017) (dismissing claims against individual police officer defendants who were alleged to have taken specific actions during investigation because officers' alleged involvement in investigation "is simply not enough to allege their direct involvement in the *unlawful* conduct at issue in this case, as opposed to their incidental involvement in some of the events related to Plaintiff's arrest and detention") (emphasis in original). Because Plaintiff fails to adequately allege any of the BPD Defendants' personal involvement in the alleged Constitutional violations, a prerequisite to Plaintiff's recovery on his § 1983 claims against the BPD Defendants'

in their individual capacities, all such claims should be dismissed.

### III. THE COMPLAINT FAILS TO STATE ANY COGNIZABLE CLAIM AGAINST THE CITY OR BPD DEFENDANTS UNDER FEDERAL OR NEW YORK STATE LAW.

The City and BPD Defendants demonstrated in their opening memorandum of law that the Complaint fails to sufficiently plead any of eleven causes of action alleged against the City and BPD Defendants. Plaintiff's opposition largely focuses his false arrest and malicious prosecution claims, as well as his broader assertions that he was arrested and prosecuted without probable cause. Plaintiff's arguments fail.

"Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006). Because he was indicted by a grand jury (see Compl.¶ 157), Plaintiff can only overcome the presumption of probable cause by showing that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015) (internal quotation marks and citations omitted). Further, Plaintiff must overcome the principle that probable cause exists "when information is received from a putative victim or an eyewitness…unless the circumstances raise doubt as to the person's veracity." Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). The Court must "consider the facts *available to the officer at the time of the arrest.*" Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (emphasis supplied). "Before making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted." Indeed, "the arresting officer does not have to prove plaintiff's version wrong before arresting him." Curley, 268 F.3d at 70.

In this case, Plaintiff is unable to rebut the presumption of probable cause created by the

9

grand jury's indictment (which indictment Plaintiff does not specifically allege the BPD Defendants played any particular role in [see Compl., at ¶¶ 153-157]). Plaintiff fails to point to any facts which allege suppression of evidence or other bad faith conduct on the part of the City or BPD Defendants. Rather, Plaintiff appears to take issue with the way the BPD Defendants conducted their investigation *before* he was arrested. However, "[i]t is well-established that failure to follow 'best practices' does not vitiate the existence of probable cause." Ortiz v. County of Nassau, 2025 WL 590706, at *8 (E.D.N.Y. Feb. 24, 2025). Accordingly, Plaintiff's claims, to the extent they are premised on the absence of probable cause, fail and should be dismissed.[4]

## CONCLUSION

Based on the foregoing and the City and BPD Defendants' opening memorandum of law, the City and BPD Defendants respectfully request an order dismissing the complaint in its entirety with prejudice and granting such other and further relief as this Court deeps proper and just.

Dated: May 2, 2025
      Albany, New York

WHITEMAN OSTERMAN & HANNA LLP

BY:   *s/ Gabriella R. Levine*
William S. Nolan, Esq. (BR No. 512108)
Gabriella R. Levine, Esq. (BR No. 700080)
Christina F. Vitolo, Esq. (BR No. 704738)
*Attorneys for the City and BPD Defendants*
One Commerce Plaza
Albany, New York 12260
(518) 487-7600
wnolan@woh.com
glevine@woh.com
cvitolo@woh.com

---

[4] In the interest of judicial economy, the City and BPD Defendants respectfully refer their Court to their initial briefing, which sets forth in great detail why each of Plaintiff's other claims fail.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

YARON KWELLER,

        Plaintiff,

- against -

THE COUNTY OF BROOME, THE CITY OF BINGHAMTON, THE BROOME COUNTY DISTRICT ATTORNEY'S OFFICE, DISTRICT ATTORNEY MICHAEL A. KORCHAK, CHIEF ASSISTANT DISTRICT ATTORNEY MARK LOUGHRAN, ASSISTANT DISTRICT ATTORNEY ALYSSA CONGDON, ASSISTANT DISTRICT ATTORNEY AMANDA CRONIN, DISTRICT ATTORNEY INVESTIGATOR JEFF J. WAGNER, BINGHAMTON POLICE DEPARTMENT CHIEF JOSEPH ZIKUSKI, BINGHAMTON POLICE DEPARTMENT CAPTAIN CORY MINOR, BINGHAMTON POLICE DEPARTMENT INVESTIGATOR AMANDA MILLER, all in their individual capacities, and JOHN DOES 1-10, representing Broome County District Attorney's Office and Police Department Employees Whose Names Are Currently Unknown, HAILEY DEMKOVICH, and SAMANTHA HERCEG,

        Defendants.

**CERTIFICATE OF SERVICE**

Case No. 3:24-cv-01328-ECC-ML

---

    I hereby Gabriella R. Levine certify that on May 2, 2025, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system which sent notification of such filing to the following:

1. Elena Fast, Esq. (elena@fastlawpc.com)
   *Attorney for Plaintiff*

2. Oscar Michelen, Esq. (omichelen@cuomollc.com)
   *Attorney for Plaintiff*

3. Karen A. Newirth, Esq. (karen@newirthlinehan.com)
   *Attorney for Plaintiff*

4. Christopher J. Baiamonte, Esq. (cbaiamonte@wladislawfirm.com)*Attorneys for Defendants County of Broome and Broome County District Attorney's Office*

5. Timothy J. Lambrecht, Esq. (tlambrecht@wladislawfirm.com)
   *Attorneys for Defendants County of Broome and Broome County District Attorney's Office*

6. Robert A. Barrer, Esq. (rbarrer@barclaydamon.com)
   *Attorney for Defendants District Attorney Michael A. Korchak and Chief Assistant District Attorney Mark Loughran*

7. Nicholas Constantino, Esq. (nconstantino@barclaydamon.com)
   *Attorney for Defendants District Attorney Michael A. Korchak and Chief Assistant District Attorney Mark Loughran*

8. Erin M. Tyreman, Esq. (etyreman@barclaydamon.com)
   *Attorneys for Defendants County of Broome and Broome County District Attorney's Office*

9. James C. Knox, Esq. (jknox@hackermurphy.com)
   *Attorneys for Defendant Assistant District Attorney Alyssa Congdon*

10. Alishah Bhimani, Esq. (abhimani@hackermurphy.com)
    *Attorneys for Defendant Assistant District Attorney Alyssa Congdon*

11. Julie A. Nociolo, Esq. (jnocioloi@hackermurphy.com)
    *Attorneys for Defendant Assistant District Attorney Alyssa Congdon*

12. Benjamin W. Hill, Esq. (ben@capezzahill.com)
    *Attorneys for Defendant Assistant District Attorney Amanda Cronin*

13. Alexandra N. von Stackelberg, Esq. (allee@capezzahill.com)
    *Attorneys for Defendant Assistant District Attorney Amanda Cronin*

14. Edward E. Kopko, Esq. (office@kopko.law)
    *Attorney for Defendant Hailey Demkovich*

15. Kavitha Janardhan, Esq. (kjanardhan@bhlawpllc.com)
    *Attorney for Defendant Samantha Herceg*

16. Lawrence M. Ordway, Jr., Esq. (lordway@bhlawpllc.com)
    *Attorney for Defendant Samantha Herceg*

             *s/ Gabriella R. Levine*
             Gabriella R. Levine, Esq. (BR No. 700080)

4902-0267-8844