UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

YARON KWELLER,

                Plaintiff,

                                                                     3:24-CV-1328 (AJB/ML)

        -v-

The COUNTY OF BROOME, *et al.*,

                Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

**I.    INTRODUCTION**

On October 30, 2024, plaintiff Yaron Kweller ("plaintiff") filed this 42 U.S.C. § 1983 action against defendants Hailey Demkovich, Samantha Herceg, the City of Binghamton, City Police Chief Joseph Zikuski, City Police Captain Cory Minor, City Police Investigator Amanda Miller, the County of Broome, the Broome County District Attorney's Office, Broome County District Attorney Michael Korchak, Broome County Chief Assistant District Attorney Mark Loughran, Broome County Assistant District Attorneys Alyssa Congdon and Amanda Cronin, Broome County District Attorney Investigator Jeff Wagner, and unidentified Broome County District Attorney's Office and Binghamton Police Department employees # 1–10.  Dkt. No. 1.

In short, plaintiff alleges that Hailey Demkovich and Samantha Herceg falsely accused him of rape, the Binghamton Police Department ("BPD") inadequately investigated those false allegations, and the Broome County District Attorney's Office (the "BCDA") deliberately disregarded exculpatory evidence and chose to prosecute him anyway.  *See generally* Dkt. No. 1.  Plaintiff was acquitted of all charges after a jury trial.

The twelve-count complaint asserts 42 U.S.C. § 1983 claims for "False Arrest and Malicious Prosecution" (Count I); "Due Process and Denial of the Right to a Fair Trial" (Count II), "Failure to Intervene" (Count III), "Supervisory Liability" (Count IV), "*Monell* Liability" (Counts V & VI), "Civil Rights Conspiracy" (Count VII), as well as related state law claims for "False Arrest and Malicious Prosecution" (Count VIII), "Intentional, Reckless, or Negligent Infliction of Emotional Distress" (Count IX), violations of Article I, Sections 6 and 12 of the New York State Constitution (Count X), "*Respondeat Superior*" (Count XI), and "Abuse of Process" (Count XII).  Dkt. No. 1, ¶¶ 191–302.[1]

Defendants Hailey Demkovich and Samantha Herceg answered the complaint.  Dkt. Nos. 37, 39.  All other defendants, apart from BCDA Investigator Wagner ("Wagner"), moved to dismiss the pleading pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dkt. Nos. 40, 57, 65, 67, 74.  The Court granted those motions in part, and denied those motions in part, on September 29, 2025.  Dkt. No. 106.  Thereafter, the County of Broome (the "County") moved for partial reconsideration of the Court's decision pursuant to Federal Rule of Civil Procedure 54 and Local Rule 60.1.  Dkt. No. 107.

Wagner originally defaulted.  Dkt. No. 76.  After the entry of default was vacated, Dkt. No. 94, he, too, moved to dismiss plaintiff's claims pursuant to Rule 12(b)(6).  Dkt. No. 101.  The Court did not address Wagner's motion in its earlier decision because of this delay.

Wagner's motion to dismiss and the County's motion for partial reconsideration have been fully briefed, Dkt. Nos. 101, 104–05, 107, 110, and will be considered on the basis of the submissions without oral argument.

---

[1] The complaint is sequentially numbered by line.  Accordingly, citations to the pleading correspond with that document's internal pagination.

## II. BACKGROUND

The Court incorporates the factual background from the earlier decision and order on defendants' motions to dismiss. Dkt. No. 106 (the "September 29 Order") at 3–15.

## III. LEGAL STANDARD

### A. Motion to Dismiss

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) ("[T]he '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## B. Motion for Reconsideration

Under this District's Local Rules, "a party may file and serve a motion for reconsideration or reargument no later than fourteen days after the entry of the challenged . . . order." N.D.N.Y. L.R. 60.1. Similarly, "Rule 54(b) [of the Federal Rules of Civil Procedure] provides, in relevant part, that, prior to entry of a final judgment, an interlocutory 'order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.'" *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Fed. R. Civ. P. 54(b)).

However, the availability of reconsideration under Rule 54(b) is limited, and "gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Off. Comm. of Unsecured Creditors of Color Tile, Inc.*, 322 F.3d at 167 (quoting *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir. 1964)).

In other words, "the standard for granting a motion for reconsideration is 'strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters . . . that might reasonably be expected to alter the conclusion reached by the court.'" *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)), *cert. denied*, 145 S. Ct. 279 (2024).

## IV.   DISCUSSION

The Court will address Wagner's motion to dismiss before reaching the County's motion for partial reconsideration.

### A. BCDA Investigator Wagner's Motion to Dismiss

Plaintiff has asserted § 1983 claims against Wagner for false arrest, Dkt. No. 1 ("Compl.") ¶¶ 191–97; malicious prosecution, *id.*; deprivation of liberty without due process and denial of the right to a fair trial, *id.* at ¶¶198–205; failure to intervene, *id.* at ¶¶ 206–10; and civil rights conspiracy, *id.* at 263–66.  He also brings related state law claims against Wagner for false arrest, *id.* ¶¶ 267–80; malicious prosecution, *id.*; intentional, reckless, or negligent infliction of emotional distress, *id.* at ¶¶ 281–85; and violations of Article I, sections 6 and 12 of the New York State Constitution, *id.* at ¶¶ 286–89.

Wagner has moved to dismiss all of the claims asserted against him, arguing that "[n]one of [p]laintiff's causes of action allege[ ]a legally viable claim against [him]."  Dkt. No. 101-1 ("Wagner Mem.") at 10.  In opposition, plaintiff maintains that he has plausibly alleged that Wagner's conduct "materially contributed to the violation of [his] constitutional rights."  Dkt. No. 104 ("Pl.'s Opp.") at 5.

#### 1. Section 1983 Claims

Wagner argues that plaintiff's § 1983 claims must be dismissed because (1) plaintiff has not plausibly alleged that he was "personally involved" in any constitutional deprivation, *see* Wagner Mem. at 10–13; (2) the complaint does not plausibly allege all elements of plaintiff's § 1983 claims against him, *id.* at 15–24; and (3) regardless, he is entitled to qualified immunity for any allegedly violative conduct, *id.* at 13–15.  Plaintiff disagrees.  *See* Pl.'s Opp. at 10–27.

##### i. Personal Involvement

Because "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir. 1991), the Court addresses it first.  "[I]n order to establish a defendant's individual

liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

Wagner argues that plaintiff's § 1983 claims must be dismissed because plaintiff has stated "exactly one factual allegation against [him]," and that allegation does not plausibly suggest that he was personally involved in violating plaintiff's constitutional rights. Wagner Mem. at 10–13. In opposition, plaintiff argues that the complaint plausibly alleges Wagner's personal involvement at this stage. Pl.'s Opp. at 10–14.

As an initial matter, plaintiff misstates the governing legal standard for personal involvement. Pl.'s Second Opp. at 10–11. Plaintiff states that personal involvement does not require active participation and can be found "'when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act.'" *Id.* (quoting *Nolan v. W. Re'l Off Track Betting Corp.*, 2024 WL 4555115, at *11 (W.D.N.Y. Oct. 23, 2024) quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)). But that is no longer the rule.

In *Tangreti v. Bachmann*, the Second Circuit held that, "[f]ollowing *Ashcroft v. Iqbal*, . . . [a] plaintiff must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Since *Tangreti*, the Second Circuit has reiterated that, "[a] defendant is culpable only if his *own* conduct amounted to a constitutional violation." *Calix v. United States*, 2024 WL 3263361, at *2 (2d Cir. July 2, 2024) (citing *Tangreti*, 983 F.3d at 619) (emphasis in original); *see also Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023); *Wiggins v. Griffin*, 86 F.4th 987 (2d Cir. 2023).

As Wagner points out, plaintiff alleges only that Assistant District Attorney Alyssa Congdon ("ADA Congdon") directed him to retrieve the Saitta folder, but that he failed to do so. Compl. ¶¶ 118–19. Notably, the pleading does not allege that Wagner had any other involvement in plaintiff's investigation or prosecution. *See generally id.*

Absent additional non-conclusory factual allegations tending to establish that Wagner knew that the contents of the Saitta folder were exculpatory and intentionally suppressed them, plaintiff has not plausibly alleged Wagner's "personal involvement" in any of the constitutional violations. Accordingly, plaintiff's § 1983 claims against Wagner must be dismissed, and the Court need not reach Wagner's qualified immunity arguments.

2. **State Law Claims**

Wagner argues that plaintiff's state law claims must also be dismissed, because (1) he has failed to plausibly allege the elements of any state law cause of action, Wagner Mem. at 15–19; (2) plaintiff's intentional, reckless, or negligent infliction of emotional distress claim is improperly brought, *id.* at 24–27; and (3) plaintiff has no private right of action under the New York State Constitution under these circumstances, *id.* at 27–28.

Plaintiff has voluntarily withdrawn his claim for intentional, negligent, or reckless infliction of emotional distress, *see* Pl.'s Opp. at 27 n.4, but rejects Wagner's arguments as to his remaining state law claims, *id.* at 15–20, 27–28.

i. **False Arrest**

Plaintiff's eighth cause of action is identified as a state law claim for "false arrest and malicious prosecution." Compl. ¶¶ 267–80. But false arrest and malicious prosecution are distinct causes of action under state law. *See Broughton v. State*, 335 N.E.2d 310, 313 (N.Y. 1975) ("Although [false imprisonment and malicious prosecution] are kindred actions, each

protects a different personal interest and is composed of different elements."). Accordingly, they will be addressed separately.

"Under New York law, the elements of a false arrest [or] false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (*McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)).

Wagner argues that this claim must be dismissed, in part, because "the complaint lacks any allegations that Wagner played any role in [p]laintiff's arrest." Wagner Mem. at 15. Plaintiff concedes that the complaint "does not allege that Wagner physically arrested him," arguing instead that Wagner's failure to retrieve the Saitta folder "caused [p]laintiff's arrest and prosecution to proceed based on an incomplete and misleading evidentiary record." Wagner Mem. at 11–12.

Although the complaint alleges that plaintiff was arrested, Compl. ¶ 134, plaintiff's only factual allegation against Wagner is that he failed to retrieve the Saitta folder at ADA Congdon's direction. *Id.* ¶¶ 118–19. This is not enough.

A plaintiff cannot sustain a false arrest claim under New York law where there is "no allegation that the defendant personally participated in the arrest or detention of the plaintiff." *Levy v. Chasnoff*, 245 A.D. 607, 610 (1st Dep't 1935); *see also Barr v. Albany Cnty.*, 69 A.D.2d 914, 915 (3d Dep't 1979) (affirming dismissal of false arrest claim against sheriff where he "neither ordered the raid resulting in the arrests, nor participated in the raid"), *aff'd as modified*, 406 N.E.2d 481 (N.Y. 1980); *Du Chateau v. Metro-N. Commuter R. Co.*, 253 A.D.2d 128, 132 (N.Y. App. Div. 1st Dep't 1999) ("It is not enough that the defendant's words or actions caused

a police officer to confine him; plaintiff must [allege] that the defendant 'directed an officer to take [him] into custody.'" (quoting *Vernes v. Phillips*, 194 N.E. 762, 76 (N.Y. 1935)).

Plaintiff has alleged that *ADA Congdon* held "ultimate decision-making authority over the investigation," and that *she* "met . . . and decided with BPD to file criminal charges against [p]laintiff." Compl. ¶¶ 127, 133. Because plaintiff has not plausibly alleged that Wagner participated in or directed his arrest, *see generally* Compl., his state law false arrest claim must be dismissed.

### ii. Malicious Prosecution

Under state law, "[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983).

Wagner argues that plaintiff's state law malicious prosecution claim must be dismissed because plaintiff has not plausibly alleged the elements as to him. Wagner Mem. at 16–19. Plaintiff maintains that, at this stage, his allegations sufficiently state a malicious prosecution claim against Wagner. Pl.'s Opp. at 11–12, 18–20.

New York courts have held that the initiation element may be satisfied through allegations that a defendant filed a charging instrument, *Bonfante v. Golub Corp.*, 186 A.D.2d 343, 344 (N.Y. App. Div. 3d Dep't 1992), falsified or withheld information, *id.*, or "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Viza v. Town of Greece*, 94 A.D.2d 965, 965 (N.Y. App. Div. 4th Dep't 1983).

Again, plaintiff has only alleged that ADA Congdon directed Wagner to retrieve the Saitta folder, but he did not. Compl. ¶¶ 118–19. Absent any other non-conclusory factual allegations, plaintiff has not plausibly stated that Wagner "initiated" plaintiff's prosecution.

Accordingly, plaintiff's state law malicious prosecution claim against Wagner must be dismissed.

### iii. New York State Constitutional Violations

Plaintiff's tenth cause of action alleges violations of Article I, sections 6 and 12 of the New York State Constitution. Compl. ¶¶ 286–89.

Wagner argues that this claim must be dismissed because the New York State Constitution does not provide a right of action where there are adequate alternative remedies available, and regardless, plaintiff has not plausibly alleged that Wagner violated his rights under the New York State Constitution. Wagner Mem. at 27–28. Plaintiff argues that his state constitutional claims are "are asserted in the alternative in the event the Court . . . conclude[s] that [p]laintiff lacks a viable federal claim against Wagner." Pl.'s Opp. at 28.

In *Brown v. State*, the Court of Appeals "recognized a private right of action to recover damages against the State for violations of the Equal Protection and Search and Seizure Clauses . . . Finding neither injunctive, declaratory, nor exclusionary relief adequate to protect against the invasion of personal liberty interests suffered by the claimants." *Martinez v. City of Schenectady*, 276 A.D.2d 993, 996 (N.Y. App. Div. 3d Dep't 2000) (citing *Brown v. State*, 674 N.E.2d 1129, 1140–41 (N.Y. 1996)), *aff'd* 761 N.E.2d 560 (N.Y. 2001).

"[H]owever, the Court of Appeals made it clear that th[is] 'narrow remedy'. . . was not 'boundless.'" *Lyles v. State*, 2 A.D.3d 694, 695 (N.Y. App. Div. 2d Dep't 2003) (quoting *Martinez v. City of Schenectady*, 761 N.E.2d 560, 563 (N.Y. 2001)), *aff'd*, 820 N.E.2d 860 (N.Y. 2004). For example, in *Lyles*, the Appellate Division for the Second Department held that:

> recognition of the claimant's State constitutional claims was neither necessary nor appropriate to ensure the full realization of his rights, because the alleged wrongs could have been redressed by an alternative remedy, namely, timely interposed common-law tort claims for assault and battery, false imprisonment, and the intentional and negligent injury to his property.

*Lyles*, 2 A.D.3d at 695.

Wagner argues that, here, a private right of action to vindicate any alleged violations of plaintiff's state constitutional rights is unnecessary, because plaintiff's alleged harms could be redressed by § 1983 claims for "false arrest, malicious prosecution, and denial of fair trial," or state law tort claims for false arrest and malicious prosecution—both of which permit a damages remedy.  Wagner Mem. at 28.  The Court agrees.

Plaintiff alleges that Wagner's failure to retrieve exculpatory evidence—*i.e.*, the Saitta folder—caused him to be arrested and prosecuted without probable cause, in violation of his rights under the New York State Constitution.  *See* Compl. ¶¶ 118–19, 193, 201.  State tort law and § 1983 both provide a damages remedy for this alleged harm, thereby vitiating the need for a private right of action under the New York State Constitution.

Even if a private right of action were appropriate here, Wagner is correct that any such claim would "fail for the same reasons set forth above in connection with Plaintiff's Section 1983 and other state-law claims."  Wagner Mem. at 28.  Accordingly, plaintiff's tenth cause of action is dismissed.

### 3. Leave to Amend

Finally, the Court must address plaintiff's request for leave to amend his complaint.  Plaintiff sought leave to amend through a single sentence in the "Conclusion" paragraph of his opposition brief.  Pl.'s Opp. at 28.  Wagner argues that plaintiff's request should be denied, because "any request to amend must be made by motion."  Wagner's Mem. at 14.  The Court agrees.

Under this District's Local Rules of Practice, "[a] party moving to amend a pleading . . . must attach an unsigned copy of the proposed amended pleading to its motion papers."  L.R.

15.1(a).  "[T]he proposed amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects." *Id.*  A motion to amend "must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading." *Id.*

Plaintiff has not complied with this Local Rule.  His failure to attach a proposed amended pleading is particularly frustrating, "as it precludes the Court from 'examin[ing] the exact amendment that it is being asked to permit[;] ... ensur[ing] that all of the allegations asserted . . . are contained in a single document[;] ... [and] eliminat[ing] the confusing nature of piecemeal amended pleadings.'" *Wynn v. Lee*, 2019 WL 13546213, at *1 (N.D.N.Y. May 1, 2019) (quoting *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 508 (N.D.N.Y. 2009)).

Plaintiff's obvious non-compliance with the Local Rules is a sufficient basis on which to deny his motion to amend.  *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123 (N.D.N.Y. 2022) (denying motion for leave to amend where plaintiffs requested leave in a brief paragraph of their opposition papers and failed to comply with the Local Rules); *Webb v. Mentor Worldwide LLC*, 453 F. Supp. 3d 550 (N.D.N.Y. 2020) (denying plaintiff's motion for leave to amend, in part, for noncompliance with the Local Rules); *Braxton v. Bell*, 2020 WL 13908846, at *1 (N.D.N.Y. July 7, 2020) (denying "motion to amend for failure to comply with the Local Rules for the Northern District of New York and Federal Rules of Civil Procedure.").

While plaintiff is correct that leave to amend should be freely given when justice so requires, Pl.'s Opp. at 28 (citing Fed. R. Civ. P. 15(a)(2)), "a court need not always allow a party to replead simply because it asked.  In particular, denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (internal quotation omitted); *Murphy Med. Assocs.,*

*LLC v. Yale Univ.*, 120 F.4th 1107, 1114 (2d Cir. 2024) (affirming denial of plaintiff's request for leave to amend where plaintiff failed to make formal motion or submit proposed amended complaint); *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025) (affirming denial of request for leave to amend where plaintiff "waited until her opposition to the motion to dismiss to request leave . . . and . . . did so only in a single footnote on the final page of her brief").

Plaintiff was given extra time, Dkt. No. 102, to respond to Wagner's motion to dismiss—which raised the same or substantially similar legal issues as the earlier-filed motions in this case—but the Court finds no indication anywhere in plaintiff's briefing of what new or additional, non-conclusory factual allegations he would raise to cure the deficiencies in his complaint. *See generally* Pl.'s Opp.

Accordingly, plaintiff's request for leave to amend his complaint is denied.

### B. County's Motion for Reconsideration

The County has moved for partial reconsideration of the September 29 Order, arguing that (1) the Court erroneously permitted plaintiff's state law false arrest and malicious prosecution claims to proceed against the County under a theory of *respondeat superior* liability; and (2) regardless, the Court should have dismissed plaintiff's state law false arrest claim because, based on the facts alleged, any claim for his unlawful detention "must be pursued as malicious prosecution, not false arrest." *See* Dkt. No. 107 ("County Mem.") at 5–9.

In opposition, plaintiff argues that the County's motion must be denied, because it is "merely an attempt to relitigate issues the Court has already carefully considered and decided," and "the County identifie[d] no circumstances that establish either an error of law or the risk of manifest injustice." Dkt. No. 110 ("Pl.'s Opp. Recons.") at 4.

As plaintiff correctly notes, "[r]econsideration under Local Rule 60.1 and Rule 60(b) is an extraordinary remedy, available only to account for an intervening change in controlling law,

address newly discovered evidence that could not previously have been presented, or to correct a clear error of law or prevent manifest injustice." Pl.'s Opp. Recons. At 4. The County has failed to demonstrate entitlement to reconsideration on any permissible basis.

First, the County argues that plaintiff's state false arrest and malicious prosecution claims must be dismissed, because ADA Congdon was acting on behalf of the State, rather than the County, when the alleged misconduct occurred. County's Mem. at 5–8.

The County is correct that:

> [U]nder Second Circuit precedent, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county," *Baez v. Hennessy*, 853 F.2d [73, 77 (2d Cir. 1988)], and therefore, a "county c[annot] be held legally responsible for injuries that the prosecutor had caused" in the context of a § 1983 *Monell* claim, *see Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019).

*Broadwater v. Cnty. of Onondaga*, 2024 WL 1053351, at *7 (N.D.N.Y. Mar. 11, 2024) (Sannes, C.J.). But the Court already dismissed plaintiff's § 1983 *Monell* claims, and only plaintiff's state law false arrest and malicious prosecution claims remain against the County.

Thus, "[t]he proper inquiry . . . is whether a county may be held liable for a state-law claim under the theory of *respondeat superior* where its prosecutor faces liability for conduct 'outside his quasi-judicial role'—that is, conduct that does not entitle the prosecutor to absolute immunity." *Broadwater*, 2024 WL 1053351, at *7 (quoting *Claude H. v. Cnty. of Oneida*, 214 A.D.2d 964, 965 (1995)).

"Under New York law, '[i]t is well established that a District Attorney is a local officer of the county rather than of the State.'" *Broadwater*, 2024 WL 1053351, at *7 (quoting *Claude H.*, 214 A.D.2d at 966). "And under New York law, where a county prosecutor is potentially liable—that is, where a prosecutor does not enjoy absolute immunity—'the County may be held

vicariously liable.'" *Broadwater*, 2024 WL 1053351, at *7 (quoting *Claude H.*, 214 A.D.2d at 966).

The Court has already determined that, at this stage, ADA Congdon is not absolutely immune from liability as a matter of law. *See* September 29 Order at 24–27. Because ADA Congdon may be held liable under state law for her alleged conduct, the County may be held vicariously liable. *See Claude H.*, 214 A.D.2d at 966 ("Because of the District Attorney's potential liability, the County may be held vicariously liable."). Accordingly, the County's motion for reconsideration is denied on this ground.

Second, the County argues that plaintiff's false arrest claim should have been dismissed, because plaintiff "admits that he was produced by counsel and charged and arraigned . . . on the same date," therefore, "any claim for unlawful detention must be pursued as malicious prosecution, not false arrest." County Mem. at 8–9 (citing *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007)).

At the outset, "a party may not advance new arguments or requests for relief in a motion for reconsideration if they were 'not previously presented to the Court.'" *In re Furstenberg Fin. SAS*, 785 F. App'x 882, 886 (2d Cir. 2019) (summary order) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001)). As plaintiff points out, the County could have, but "did not raise this issue in its motion to dismiss or its reply." Pl.'s Opp. Recons. At 9. Even setting that aside, the County's late-breaking argument fails.

In *Wallace v. Kato*, the Supreme Court held that an unlawful imprisonment ends and a § 1983 false arrest claim accrues when an arrestee becomes held pursuant to legal process— "when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389. "From that point on, any damages recoverable must be based on a malicious

prosecution claim and on the wrongful use of judicial process rather than detention itself." *Id.* at 390 (internal quotation omitted).

Contrary to the County's contentions, the Court in *Wallace* did not hold that someone who was unlawfully arrested but subsequently held pursuant to legal process could not bring a claim for false arrest, rather, it held that an unlawful arrest ends upon arraignment, and damages incurred after that point must be recovered through a malicious prosecution action, rather than a false arrest action. *Wallace*, 549 U.S. at 389.

Regardless, *Wallace* is inapplicable here, because only state law claims remain against the County, and *Wallace* concerned "the accrual date of a § 1983 cause of action," which "is a question of federal law that is *not* resolved by reference to state law." *Id.* at 388 (emphasis in original).

Lastly, to the extent the County argues that plaintiff did not plausibly allege his state law false arrest claim because he was arrested pursuant to legal process, that argument is rejected, because "[a] motion for reconsideration is not an opportunity . . . to 'relitigate an issue already decided' or present arguments that could have been made" previously. *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022).[2]

In sum, the County has failed to demonstrate that reconsideration of the Court's September 29 Order is warranted.

## V.    CONCLUSION

Therefore, it is

---

[2] In any event, plaintiff has plausibly alleged that (1) ADA Congdon directed complainant Herceg to destroy exculpatory electronic data during the investigation, Compl. ¶¶ 66, 171, (2) ADA Congdon "decided that [p]laintiff . . . should be arrested," *id.* ¶ 130; (3) "no probable cause existed to arrest plaintiff," *id.* ¶ 132; (4) "BPD notified [p]laintiff's attorney that [he] would have to appear to be arrested," *id.* ¶ 134; and (5) plaintiff's attorney "produced him on the same date," *id.*  Together these allegations state a plausible false arrest claim against ADA Congdon, for which the County may be held vicariously liable.

- 17 -

ORDERED that

1. Wagner's motion to dismiss (Dkt. No. 101) is granted; and

2. The County's motion for reconsideration (Dkt. No. 107) is denied.

The Clerk of the Court is directed to:

    a. Terminate BCDA Investigator Jeff Wagner from the docket report; and

    b. Terminate moving defendants' pending motions (Dkt. Nos. 101 & 107).

**IT IS SO ORDERED.**

Dated:  November 25, 2025
          Utica, New York.

Anthony J. Brindisi
U.S. District Judge